**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES                              *

vs.                                        *      Case No.: 22-cr-15-APM

THOMAS E. CALDWELL                         *
(U.S. v. Elmer Stewart Rhodes)             *

*      *      *      *      *      *      *      *      *      *      *

**Motion for Judgment of Acquittal Pursuant to Rule 29**

Comes Now the Defendant, Thomas E. Caldwell, by and through counsel, and provides the Court with legal arguments in support of his request for Motion for Judgment of Acquittal.  Additional legal arguments will be made in open court on the record.

**Count 1**

***As used in Section 2384, the word "execution" is unambiguously synonymous with "enforcement."***

Title 18 U.S.C. § 2384 criminalizes conspiracies to forcibly prevent, hinder or delay the "execution of any law of the United States."  In denying Caldwell's original motion to dismiss as to the crime of seditious conspiracy, the Court ruled that when the 19th century Congress enacted the original seditious conspiracy statute, the term "execution" "meant 'the completion of an act or proceeding, by which it is rendered operative or effectual; a following out or carrying into effect.'"  (ECF 176) (*citing* 1 Alexander M. Burrill, A LAW DICTIONARY AND GLOSSARY 584 (2d ed. 1860)).  Based

1

upon the definition of "execution" in Burrill's and other contemporaneous dictionaries, the Court held that Congress "executed" the election laws on J6, because "the Vice-President and members of Congress do 'carry[] into effect' the 'laws governing the transfer of power.'" (ECF 176 at 14). To the Court, "execution of the laws" was equivalent to "carrying out" the laws, which the Vice-President and Congress did on J6 by participating in a legislatively-choreographed Electoral College certification process, opening and counting ballots, making and ruling on objections, and other "mandated constitutional and statutory acts." *Id*. at 15. Respectfully, the Court's understanding of the term "execution" as used in Section 2384 is incorrect. The instant Indictment ("SSI") does not allege the crime of seditious conspiracy. Caldwell respectfully requests that the Court reconsider its ruling and sets forth below substantial arguments as to why the defendants should be acquitted as a matter of law of seditious conspiracy.

### **In 1861, "execution" of law was synonymous with "enforcement" of law**

In making its prior ruling, the Court relied upon an incomplete definition of "execution" from Burrill's Dictionary. The complete definition fully supports Caldwell's position that, in the 19th century, the term "execution" was synonymous with "enforcement":

> EXECUTION. [Lat. *executio*; L. Fr. *execucyon*]. The completion of an act or proceeding, by which it is rendered operative or effectual; a following out or carrying into effect; ***an enforcement***.

1 ALEXANDER M. BURRILL, A LAW DICTIONARY AND GLOSSARY 584 (2d ed. 1860) (emphasis added).  Accordingly, Burrill's Dictionary confirms that one common usage of the term "execution" in antebellum America was "an enforcement," which supports Caldwell's interpretation.[1]  Likewise, Noah Webster's 1828 Dictionary, which the Court also relied upon, also supports Caldwell's interpretation of "execution" as synonymous with "enforcement."  Webster defined "enforcement" as: "*A putting in execution*; as the *enforcement* of law."[2]  In fact, multiple dictionaries and thesauruses seem to agree that the words "execution" or "execute" are synonymous with "enforcement."[3]

Caldwell agrees with the Court that "carrying into effect" is an alternative definition for "execution."  The Court's embrace of this definition in denying Caldwell's

---

[1] Burrill's Dictionary listed three separate definitions of "execution."  The first definition—"The completion of an act or proceeding, by which it is rendered operative or effectual"—clearly does not apply to Section 2384, as that statute outlaws attempts to thwart the "execution" of an *existing* law.  *See* 18 U.S.C. § 2384 (punishing conspiracies aimed at the execution of "*any* law of the United States"); *see also Baldwin v. Franks*, 120 U.S. 678, 693 (1887) (noting that a seditious conspiracy is in opposition to officials "endeavoring to carry *the* laws into execution.") (emphasis added).  By contrast, Burrill's first definition relates to acts that render legal obligations or laws "operative or effectual."

[2] WEBSTER'S AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828 ed.) https://webstersdictionary1828.com/Dictionary/enforcement (emphasis original).

[3] See, e.g., COLLIN'S DICTIONARY (online version) https://www.collinsdictionary.com/us/dictionary/english-thesaurus/enforcement#enforcement__1 (listing "execution" as a synonym for "enforcement"); MERRIAM-WEBSTER'S THESAURUS (online version) https://www.merriam-webster.com/thesaurus/enforcement (listing "execute" as a synonym for "enforcement"); ROGET'S II NEW THESAURUS (3d. ed. 1995) (listing prepositional phrase "to execute" as a synonym for "enforce," and "execution" as synonym for "prosecution").

original motion to dismiss is substantially flawed, however, because when used in relation to executing *an existing law*, to "carry into effect" *literally translates to "enforce the law*."[4]  In other words, the phrase "carry *the laws* into effect" is exclusively tied to enforcement actions by the executive branch of government.  Webster's 1828 Dictionary, for example, defined "Executive" as:

> **EXEC'UTIVE**, *adjective* egzec'utive. Having the quality of executing or performing; as *executive* power or authority; an *executive* officer. Hence, ***in government***[] . . . the body or person **who carries the laws into effect,** or superintends the enforcement of them, is *executive*.[5]

According to Black's 1891 Law Dictionary, the "executive department" is "that [department] which is charged with the detail of *carrying the laws into effect* and securing their due observance."  BLACK'S LAW DICTIONARY (1st ed. 1891) (emphasis added).

---

[4] Additionally, other portions of Burrill's Dictionary back up Caldwell's position that the term "execution" means "to enforce."  Burrill, for example, in describing the step-by-step process of an "action" (in modern terms, a "lawsuit"), explained:

> "[T]he parties must properly appear in court, and the case itself must be presented in proper form; and to attain the last effectually, the case presented must be made out by proof or argument, and the judgement of the court when obtained, *must be carried into execution*[] . . . by which the judgment *is actually and specifically enforced*."

1 ALEXANDER M. BURRILL, A LAW DICTIONARY AND GLOSSARY 38 (1st ed. 1850) (emphasis added).  The way a "judgment" of a court is "actually and specifically enforced"—that is, "executed"-- is by the sheriff, marshal, or other executive branch official seizing property, assets, money or other things subject to the judgment.  *See* FED. R. CIV. PROC. 69 (authorizing district courts to issue a "writ of execution," an order issued directing the U.S. Marshal to enforce and satisfy a judgment for payment of money).

[5] https://webstersdictionary1828.com/Dictionary/executive (emphasis added).

Accordingly, the seminal English language dictionary (Webster's 1828 edition) and legal dictionary (Black's 1891 edition) of 19th century America confirm that the executive branch alone "carries *the laws* into effect."  Tellingly, in *Baldwin v. Franks*, the Supreme Court ruled that the defendant did not engage in a seditious conspiracy because his actions did not target government officials "while [they were] endeavoring to *carry the laws into execution*" or "in their efforts *to carry the treaty into effect*."  *Baldwin v. Franks*, 120 U.S. 678, 693 (1887) (emphasis added).  The *Baldwin* Court defined the phrase "the execution of any law" as meaning "carry[ing] the laws into execution" or "to carry the [law] into effect," which, according Webster's 1828 Dictionary and Black's 1891 Dictionary, are phrases inextricably tied to law enforcement actions[6] by the executive branch.[7]  To "execute," enforce," "carry into execution" or "carry into effect" *a*

_____

[6] By "law enforcement," Caldwell does not mean exclusively "the police arresting criminals."  Enforcement, or execution, of the laws is done in a number of non-police contexts, such as property seizures, writs of execution, tax audits, administrative regulations, Attorney General opinions and legal actions, etc.  The Federal Trade Commission, for example, "enforces federal consumer protection laws that prevent fraud, deception and unfair business practices." www.ftc.gov.  The Office for Civil Rights, as a second example, "enforces certain laws and regulations that prohibit discrimination [but does] not enforce laws and regulations that apply to housing, police or law enforcement[.]"  www.hhs.gov.

[7]The Court's reliance on Bouvier's 1867 Dictionary, which the Court noted defined "execution" to mean "[t]he act of carrying into effect the final judgment of a court, or other jurisdiction," *see* (ECF 176 at 14), is, similarly, flawed.  Bouvier's complete definition of "execution" fully supports Caldwell's position:

> EXECUTION, practice. The act of carrying into effect the final judgment of a court, or other jurisdiction. The writ which authorizes *the officer so to carry into effect such judgment* is also called an execution.

*law* unambiguously denoted the enforcement of laws by executive branch officials, and it still does today. *See, e.g.*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("**Enforcement**. The act of putting something such as a law *into effect*; the execution of a law[,]"; "**Enforce**. To put *into execution*; to cause to *take effect*; as to enforce a particular law[.]") (emphasis added).[8]

Additionally, other contemporaneous evidence supports Caldwell's position that "the execution of laws" was synonymous in the 19th century with the enforcement of laws by the executive branch. Chief Justice Marshall, for example, in explaining the argument set forth by the State of Ohio regarding whether federal or state law controlled the ability to tax the Bank of the United States, observed:

> It asserts, that the agents of a State, alleging the authority of a law void in itself, because repugnant to the constitution, may *arrest the execution of any law* in the United States. It maintains, that [ ] a State shall impose a fine or penalty on any person *employed* in *the execution of any law* of the United States, [such as]  . . .  [t]he carrier of the mail, the collector of the

---

1 JOHN BOUVIER, LAW DICTIONARY 387 (2d. ed. 1867).  Importantly, the "final judgment of a court" is "carr[ied] into effect" by an "officer," i.e., the U.S. Marshal or local sheriff. In other words, an executive branch officer, pursuant to a court order ("writ of execution"), *see* FED. R. CIV. PROC. 69, is the person responsible for executing, or "carrying into effect," a final judgment of the court.  Accordingly, Bouvier's Dictionary supports Caldwell's position, as executive branch officials "execute" or "enforce" judgments of the courts.

8 President Jefferson, in answering an inquiry regarding a recently enacted bill, wrote:  "It is further to be considered that the Constitution gives the Executive a general power to carry the laws into execution."  (Letter from President Thomas Jefferson to William Cabell, Aug. 11, 1807)  https://founders.archives.gov/documents/Jefferson/99-01-02-6144

revenue, the marshal of a district, the recruiting officer, [etc.] . . . for the
performance of their respective duties[.]

*Osborn v. President, Dirs. & Co. of Bank*, 22 U.S. (9 Wheat.) 738, 847-48 (1824)

(emphasis added).  "The question," Chief Justice Marshal wrote, "is[] whether the

constitution of the United States has provided a tribunal which can peacefully and

rightfully protect those who are employed in *carrying into execution the laws of the

Union*, from the attempts of a particular State to resist the execution of those laws."  *Id*. at

849 (emphasis added).  Marshall clearly viewed the term "execution" as synonymous

with "enforcement"[9] and executive branch officers (postal, revenue, marshals, and

military) as those "employed in carrying the laws into execution."  *See also Elk v. United

States*, 177 U.S. 529, 535 (1900) ("Marshals and their deputies have in each State . . . the

same powers in *executing the laws* of the United States as sheriffs and their deputies in

such State may have by law *in executing the laws thereof*.") (emphasis added).

That Congress in the 19th century viewed the terms "execution" and

"enforcement" as synonymous is confirmed by its legislation involving slavery.  In 1850,

Congress ignited a firestorm when it enacted the Fugitive Slave Act, which required,

upon being "commanded" by federal authorities, that private citizens be conscripted into

the *posse comitatus* and "aid and assist in the prompt and efficient *execution of this

law*[.]"  Fugitive Slave Act of 1850, § 5, *reprinted at*

https://avalon.law.yale.edu/19th_century/fugitive.asp (emphasis added).  The quoted

---

[9] Chief Justice Marshall characterized a court's ability to enjoin the enforcement of an
unconstitutional law as the power to "arrest the execution of any law."

provision of the Fugitive Slave Act that required deputized citizens, including Abolitionists, to aid federal marshals in their enforcement of federal law by hunting down runaway slaves, spurred massive opposition in the North.[10]  In other words, Congress, *in the most highly publicized and debated statute in antebellum America*, clearly used the term "execution" to mean "enforcement."

In its opinion on Caldwell's Motion to Dismiss, (ECF 176 at 13-14), the instant Court cited the Supreme Court for the proposition that courts "normally interpret[] a statute in accord with the ordinary public meaning of its term at the time of its enactment[.]" *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020).  Under this standard, there can be no doubt that the "ordinary public meaning" in the 19th century of the term "execution," when used in the context of the execution of an existing law, was "enforcement."

The Court should reconsider its ruling on the meaning of the term "execution" as used in Section 2384.  The dictionaries cited by the Court, on closer review, fully support Caldwell's position that "execution," or "carrying" the laws into "effect" or "execution," is exclusively tied to the enforcement of laws by the executive branch.  As Congress and the Vice-President have never in the annals of American history ever "enforced" the law and, in fact, have no constitutional authority to enforce the law, it was legally impossible for the *Rhodes* defendants to have conspired to thwart the "execution" by these officials

---

[10] https://www.nps.gov/articles/000/the-bill-of-rights-and-the-fugitive-slave-laws.htm (National Park Service historical outline as to public reaction involving the Fugitive Slave Act).

of the 12th and 20th Amendments and 3 U.S.C. § 15.  Accordingly, Caldwell and his co-defendants should be acquitted as a matter of law, as they never attempted to stop the execution (enforcement) of a law by the Executive Branch.

### A. *Baldwin v. Franks* **supports Caldwell's position.**

In its opinion, the Court ruled that the Supreme Court's decision in *Baldwin v. Franks* and two circuit court opinions, *Anderson v. United States* and *Haywood v. United States,* "are better read to emphasize that the seditious conspiracy must be directed at government officials . . . as opposed to nongovernment actors, to effect 'a forcible resistance of the authority of the United States while endeavoring to carry the laws into execution.'"  (ECF 176 at 12) (quoting *Baldwin*).  Respectfully, the Court misconstrued the holdings in *Baldwin*, *Haywood*, and *Anderson*.

As the Court correctly noted, in *Baldwin* the Supreme Court "read two of the seditious conspiracy statute's clauses in tandem—(1) "opposition" by force to the authority of the United States and (2) preventing, hindering, or delaying the "execution of any law of the United States."  (ECF 176 at 12).  The *Baldwin* Court stated:

> This evidently implies force against the government as a government. To constitute an offence under the first clause, the authority of the government must be opposed; that is to say, force must be brought to resist *some positive assertion of authority* by the government. A mere violation of law is not enough; there must be an attempt *to prevent the actual exercise of authority*.  . . .
>
> *So, too*, as to the second clause, the offence consists in preventing, hindering, or delaying the government of the United States in the execution of its laws. This, *as well as the other*, means something more than setting the laws themselves at defiance. There must be a *forcible resistance of the*

> *authority of the United States while endeavoring to carry the laws into*
> *execution.*

*Baldwin v. Franks*, 120 U.S. 678, 693-94 (1887) (emphasis added).

A flaw in the Court's opinion is that it overlooked that, under *Baldwin*, the seditious conspiracy must be forcibly "brought to *resist* some *positive assertion of authority* by the government." *Baldwin*, 120 U.S. at 693 (emphasis added). This language suggests that government officials are undertaking some proactive, specific enforcement action which is subsequently resisted. ***The key word is "resist."*** To "forcibly resist" governmental authority clearly means to stand against or oppose *an enforcement action* by government officials:

> **RESISTANCE**. The act of resisting opposition; the
> employment of forcible means to prevent the execution of an
> endeavor *in which force is employed.*

BLACK'S LAW DICTIONARY (1st ed. 1891) (emphasis added). Likewise, Bouvier's Dictionary defined "resistance" as: "The opposition of force to force." BOUVIER'S DICTIONARY, supra, (defining "resistance"); *see also State v. Welch*, 37 Wis. 196, 201 (1875) (noting that "Bouvier defines ["resistance"] to be the opposition of force to force."). One cannot "forcibly resist" a passive opponent. Instead, a "forcible resistance" can only occur in response to government officials *using physical force, compulsion, an assertion of authority,* or some other "force.*"*

A perfect example of "resisting the authority of the United States while endeavoring to carry the laws into execution" was when Confederate sympathizers skirmished with, i.e., "resisted," Union soldiers in their attempt to impose martial law.

Another example would be forcible resistance to the National Guard ("a positive assertion of authority" or the "authority of the United States") when called up to protect students entering desegregated schools in the 1950s ("carry into execution" federal law)."[11]  By contrast, a perfect example of conduct which is *not* a seditious conspiracy is the instant case, where the central allegation is that the *Rhodes* defendants, instead of allegedly plotting "forcible resistance" to a proactive attempt by authorities to enforce federal law, *attacked* the Capitol to stop a perfunctory, nonassertive quadrennial counting of votes.

The SSI is defective, as it does not allege that the *Rhodes* defendants conspired to engage in "forcible *resistance.*"  An alleged "attack" on the Capitol to stop a vote count involves neither "a forcible *resistance*" to, nor the assertion of, "the authority of the United States."  In fact, had the *Rhodes* defendants conspired to retain a Kamikazi pilot to crash into the Capitol on J6, they would have violated neither portion of Section 2384 alleged in Count 1 of the SSI, as such an action would not constitute "resistance"—i.e., force against force or enforcement (legal compulsion) -- to the exercise of "authority."[12]

---

[11] Another example is stated in *Baldwin*, where the Court noted that had the defendant conspired to forcibly resist federal authorities while they made "efforts" to protect the Chinese, a seditious conspiracy would have occurred.  *Baldwin*, 120 U.S. at 693.  In other words, had federal marshals or the military in a show of force been sent out to affirmatively protect Chinese immigrants ("carry the laws into execution"), pursuant to the treaty ("any law of the United States"), had made a show of authority ("the authority of the United States"), and were forcibly opposed by Baldwin and others ("forcible resistance to [  ] authority"), a seditious conspiracy would have taken place.

[12] By contrast, such an "attack" would likely constitute a conspiracy to "overthrow," "put down," or "levy war" against the government.  18 U.S.C. § 2384.

A seditious conspiracy must be aimed at "some person who has authority to execute and who is immediately engaged in executing a law of the United States." *Haywood*, 268 F. at 800.  In other words, to be a seditious conspiracy, the force must be aimed towards at least one human, who has authority to enforce the law in question, "*while* [that authorized person is] endeavoring to carry the laws into execution." *Baldwin*, 120 U.S. at 693 (emphasis added).  Congress was not "endeavoring to carry the laws into execution" on J6 because Congress has never, in its existence, carried a law into execution.

**The Rule of Lenity should be applied to resolve any ambiguity**.

While Caldwell believes that the term "execution," as used in § 2384, is synonymous with "enforcement," at a minimum the term is ambiguous.  As such, the Court should apply the rule of lenity to resolve any ambiguity and hold that the term "execution of any law of the United States" in § 2384 is synonymous with "enforcement of any law of the United States."

The Supreme Court has "repeatedly emphasized that the 'touchstone' of the rule of lenity is statutory ambiguity." *Bifulco* v. *United States*, 447 U.S. 381, 387 (1980) (quoting *Lewis* v. *United States*, 445 U.S. 55, 65 (1980)).  Lenity is "reserved . . . for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 107-08 (1990) (internal quotations omitted).

The Court is presented with two interpretations of § 2384 as they apply to the "execution of laws" portion of the statute.  The evidence against the Government's position and in support of Caldwell's position is compelling:

1. The historical evidence is clear that "the motivating policies" behind the enactment of the original seditious conspiracy statute in 1861 was to counter the armed resistance by Confederate sympathizers against the Union and to use the law as a hammer to detain allegedly disloyal citizens indefinitely.  President Lincoln, in fact, used his power to call forth the militia "to cause the laws to be duly executed," i.e., enforced, in rebellious southern states.  In short, the main policy behind the seditious conspiracy was to use executive branch authority through the military and federalized militia to quash a rebellion.

2. The Government has failed to produce one iota of case law, learned authority, or historical evidence that Congress has ever been described as "executing a law" in any sense of that phrase.

3. The most publicized, circulated, and debated statute passed by Congress in antebellum America, the Fugitive Slave Act, specifically used the term "execution" as synonymous with the enforcement of that law.

4. Chief Justice Marshall used the phrase "arrest the execution of the law" in describing the Court's authority to stop the enforcement of an unconstitutional state statute.

5. Burrill's 1860 Dictionary defined "execution" as "an enforcement."

6. Noah Webster's 1828 Dictionary, relied upon by the Government, defined "enforcement" as "[a] putting into execution; as the *enforcement* of law."

7. Bouvier's Dictionary defined "executive" as "that power in the government which causes the laws to be executed and obeyed."

8. Dictionaries from the 19th century cited by Caldwell demonstrate that the phrases "carrying the laws into execution" or "carry the treaty [(law)] *into effect*," which

were used by the *Baldwin* Court, are tied to the executive branch of government. *See, e.g.*, NOAH WEBSTER'S DICTIONARY (1828 ed.) ("**Executive**: . . . [I]n government, . . .[the] person who carries the laws into effect[.]"); BLACK'S LAW DICTIONARY (1st ed. 1891) (defining the "**Executive department**" as "that [department] which is charged with the detail of *carrying the laws into effect* and securing their due observance.") (emphasis added); *see also* Black's Law Dictionary (1990 ed.) (The "**Executive department**" is [t]hat branch of government charged with carrying out the laws enacted by the legislature.").

9.  Section 2384 specifically lists the "government" as the targeted victim in *five* sections of the statute ("overthrow . . . the government"; "put down . . . the government"; "destroy by force[] the government"; "levy war against . . . [the government]"; "oppose by force the authority [of the government]"). 18 U.S.C. § 2384.  By contrast, Congress did not specify the "government" as the target of the "execution of the laws" portion of Section 2384, suggesting that a subset of the "government"—the executive branch—must be the target of a seditious conspiracy.

10. Two federal circuits in the 1920s implicitly interpreted *Baldwin* as applying to actions aimed at the executive branch's enforcement of laws.  *See Anderson v. United States*, 273 F. 20, 26 (8th Cir. 1921) (holding that a seditious conspiracy must be aimed at "those charged with the duty of executing the laws of the United States"); *Haywood v. United States*, 268 F. 795, 800 (7th Cir. 1920) (holding that a seditious conspiracy must be aimed at "some person who has authority to execute and who is immediately engaged in executing a law of the United States.").

11. As previously noted, the *Baldwin* Court's term "forcible resistance" suggests that defendants must aim their force at force, i.e., a proactive enforcement action by the government.

Respectfully, Caldwell has presented compelling proof that the word "execution" is unambiguously synonymous with "enforcement."  However, if the Court detects ambiguity in Section 2384, the rule of lenity dictates that the Court should accept Caldwell's interpretation of the term "execution."  Accordingly, the Court should grant Caldwell's request for judgment of acquittal.

14

**<u>The Rhodes defendants, including Caldwell, did not "oppose by force" the</u>**
**<u>"authority" of the Government at any time stated in the SSI.</u>**

Count 1 also includes the separate allegation that the *Rhodes* defendants

"knowingly conspire[d] . . . to oppose by force the authority of the Government of the

United States[.]"  (ECF 167, ¶15).  The purpose of the conspiracy, according to the SSI,

"was to oppose the lawful transfer of presidential power[.]"  (ECF 167, ¶16).  Again, the

Government's SSI fails to allege a seditious conspiracy and, accordingly, Caldwell and

his co-defendants should be acquitted of seditious conspiracy.

Section 2384 criminalizes, *inter alia*, "[Any] conspir[acy] to overthrow, put down,

or to destroy by force the Government of the United States, or to levy war against them,

*or to oppose by force the authority thereof*[.]"  18 U.S.C. § 2384 (emphasis added).  The

Supreme Court's ruling in *Baldwin*, respectfully, requires the defendants' acquittals.  The

*Baldwin* Court stated:

> All, therefore, depends on that part of the section which provides a
> punishment for 'opposing' by force the authority of the United States[ ].  . . .
> This evidently implies force against the government as a government.  To
> constitute an offence under the first clause, the authority of the government
> *must be opposed*; that is to say, force must be brought *to resist some*
> *positive assertion of authority by the government*. A mere violation of law
> is not enough; there must be an attempt *to prevent the actual exercise of*
> *authority*.

*Baldwin,* 120 U.S. at 693 (emphasis added).  In *Baldwin*, "the Supreme Court made clear

that to be convicted of seditious conspiracy, one must specifically oppose by force the

government of the United States *while it is exerting its authority*."  *United States v. Stone*,

2012 U.S. Dist. LEXIS 41434, at *11 (E.D. Mich. 2012) (emphasis added).  "[A]

conspiracy to do something other than forcibly *resist a positive show of authority* by the Federal Government is not enough to sustain a charge of seditious conspiracy." *Id.* at *14 (emphasis added). Accordingly, the SSI must allege that the *purpose* of the *Rhodes* defendants' conspiracy was to "resist," by force, "some positive assertion" or "actual exercise" of authority by the government. *Baldwin*, 120 U.S. at 693. The SSI indictment makes no such claim.

In fact, "the purpose of the conspiracy" according to the SSI, "was to oppose the lawful transfer of presidential power[.]" The SSI lays out in detail "the procedures and dates governing the transfer of presidential power in the United States," including the 12th and 20th Amendments, 3 U.S.C. § 15, and the J6 Electoral College certification itinerary. (ECF 167, ¶1). The "lawful transfer of presidential power" process set forth in the SSI, however, is clearly not a "positive assertion of authority by the government." Instead, it is a perfunctory, nonassertive quadrennial process outlined in the Constitution.

The Electoral College certification process itself on J6 was not a "positive assertion of authority" by the federal government. Congress was not exercising "authority" on J6 let alone engaging in a separate and distinct "positive assertion of authority"; instead, it was simply following its constitutional obligations under the 12th Amendment. *Baldwin*, moreover, requires that seditious conspirators intend to "resist" some "positive assertion of authority," whereas the SSI characterizes the actions of the *Rhodes* defendants as a pre-planned *attack* on the United States Capitol. (ECF 167, ¶5). An premeditated "attack" is not a "forcible resistance" to a "positive assertion of

authority."  Additionally, once Congress certified Joseph R. Biden as the President-elect on J6, the "lawful transfer of presidential power" could not have been stopped by anyone because the 20th Amendment, as the Court has acknowledged, is self-executing. (ECF 176 at 20-21).  In other words, it was legally impossible for the *Rhodes* defendants to have stopped the lawful transfer of presidential power *after* J6.

In short, the Government's SSI alleges a non-crime as to the "oppose the authority" provision of Section 2384, as it fails to allege "some positive assertion of authority" made by the United States government, which the *Rhodes* defendants specifically conspired to forcibly "resist."  Instead, the SSI specifically sets forth the purpose of the alleged conspiracy as the forcible opposition to "the lawful transfer of presidential power[.]"  *Baldwin* confirms that Count 1 fails to state the offense of seditious conspiracy.

### The 12th Amendment is incapable of being "executed" without Congress.

The Government in a previous filing argued that if Congress doesn't "execute" the 12th Amendment, than nobody does.  Not so.  The 12th Amendment can be "executed" by a number of officials who hold executive power.  If, for example, states fail to comply with the requirements of the 12th Amendment, the Attorney Generals in the non-compliant states can execute the Amendment by issuing legal advice and guidance to the non-compliant actors and, if necessary, file lawsuits to compel compliance.[13]

---

[13] Alternatively, President Trump or candidate Joseph Biden and their campaigns could file lawsuits to compel compliance with the 12th Amendment.  These lawsuits would not

Alternatively, if on J6 Congress, the Senate President, or both had failed to fulfill their constitutional obligations, Attorney General Barr could have issued legal advice and guidance to Congress and, if necessary, filed a lawsuit to compel compliance with the 12th Amendment.  By so doing, the Attorney General would "carry the 12th Amendment into execution."

Respectfully, the Government and the Court have confused the "execution" of a law with "compliance" with a law.  There are hundreds of laws, e.g., workers compensation, securities, campaign finance, zoning and others which require businesses, government officials, and citizens to take affirmative steps to comply with statutory dictates.  No one would seriously suggest that a business owner is "executing" a law by purchasing legally required workers compensation insurance, or that a citizen is "executing" the Affordable Care Act by purchasing mandated health insurance.  A business owner who installs a mandated handicapped-accessible ramp, likewise, is not "executing" the Americans with Disabilities Act.  Similarly, when Members of Congress, pursuant to a 2019 law they passed, mandatorily report incidents of sexual harassment within their offices, they are not "executing" that law.[14]  Congress has <u>never</u> executed a law.

---

be the "execution" of the 12th Amendment.  However, if the courts ruled in their favor, the courts could order the non-compliant states or Congress to comply with the 12th Amendment.  In turn, this court order, if disobeyed, would then be "executed" by the executive branch of the applicable state or the federal government.

[14] https://www.crowell.com/NewsEvents/AlertsNewsletters/all/Newly-Passed-Congressional-Sexual-Harassment-Bill-Aims-to-Set-a-Positive-Example-for-Nation

Congress was not executing, i.e., enforcing, the 12th or 20th Amendments or 3 U.S.C. § 15 on J6 for two reasons.  First, Congress is constitutionally prohibited from enforcing laws.  *Bowsher v. Synar*, 478 U.S. 714, 726-27 ("The structure of the Constitution does not permit Congress to execute the laws[.]").  Second, Congress's compliance with the 12th Amendment is a judicial-like function and not law-execution. *Buckley v. Valeo*, 424 U.S. 1, 134 (1976) (striking down election statute that authorized Congressional appointees on the FEC to enforce its provision through lawsuits and penalties, i.e., execute the law; holding, *inter alia*, that the 12th Amendment did not provide Congress with authority to enforce laws as it sets forth a "judicial in character" duty).

Contrary to the Court's conclusion in denying his motion to dismiss the seditious conspiracy count months ago, Caldwell does not "urge the court to abandon the ordinary meaning of 'execution' in favor of a constitutional one.'  (ECF 176 at 15).  Caldwell is manifestly not making some cutting-edge, theoretical "separation of powers" argument regarding the term "execution."  The phrase "execution of the laws," in fact, predates the Constitution.  That is, the Constitution did not *create* a new definition of the word "execution" or the phrase "execution of the laws."  As demonstrated *supra*, one does not have to "look to the Constitution" for the definition of "execution."  Rather, the Constitution specifically set forth which branch of the government has plenary authority to "execute" the law (the executive branch) and which branches had no such authority (the legislative and judicial branches).

In sum, Caldwell and his co-defendants should be acquitted of the seditious conspiracy count lodged against them as the SSI has failed to allege a seditious conspiracy as to either section of § 2384.

### The QRFs Were not Purposed to Attack the Capitol

Additionally, Caldwell should be acquitted of Count 1 because the Government has failed to adduce proof that the QRFs were specifically purposed to attack the Capitol. According to Special Agent Sylvia Hilgeman, the QRF was specifically tasked to "occupy D.C." *See* Caldwell Exh. 123. Every witness who has testified for the Government has confirmed that the QRFs were not intended to attack or breach the Capitol. And an Assistant U.S. Attorney for the Government advised the Court that the QRF's purpose was *not* to attack the Capitol. *See* Caldwell Exh. No. 123. Simply put, "occupying D.C." or being prepared to confront Antifa in a worst-case scenario are not forcible attempts aimed at *the government*. Caldwell has no connection to a seditious conspiracy unless he coordinated a QRF whose purpose was to attack the Capitol.

Caldwell's alleged role in the seditious conspiracy was to "coordinate" the QRFs. (Indictment at 13(i)). The Government's evidence that Caldwell "coordinated" a QRF is thin. Caldwell was never a member of the Oath Keepers and had no conversations or contacts with QRF personnel from Florida and Arizona. Also, as Paul Stamey, the alleged North Carolina Oath Keeper and QRF person, did not testify, the evidence did not establish that Mr. Stamey actually acted as a QRF on J6. Moreover, Caldwell did not participate in any Oath Keepers leadership Signal chats. The QRF was never activated.

Caldwell, moreover, could not have "coordinated" any QRF on J6, as he was with his wife all day per the uncontested testimony.

The Government's proof demonstrates that the QRF was not specifically designed to attack the Capitol. How could Caldwell have conspired to use "force" to stop the election when even the Government has stated that the QRF was not intended to specifically stop the Electoral College certification? How could Caldwell have knowledge that the QRF was intended to stop the Electoral College certification when the Government has conceded that attacking Congress was not its purpose? *The Government has represented to this Court for nearly 20 months that the QRF was a force specifically designed to attack the Capitol and now it has completely abandoned this argument.* The QRF appears 36 times in the Indictment with Caldwell as its alleged coordinator. Simply put, the Government's bold statements regarding the QRF have not come close to matching its evidence. Accordingly, Caldwell should be acquitted of seditious conspiracy.

The Government claims that advocacy for invoking the Insurrection Act constitutes a seditious conspiracy. Not so. There is no such thing as a conspiracy to request that an elected official invoke a statute. Additionally, the uncontested testimony was that Caldwell had no communications with co-defendant Rhodes since mid-November of 2020. Caldwell was not a member of the Oath Keepers and had no "duty" to follow Rhodes's orders or directives. Ironically, Caldwell has connections to the

North Carolina Oath Keepers, who specifically rebuffed Rhodes's request to engage in "entrapment." Respectfully, Caldwell should be acquitted of Count 1.

## Count 2

Caldwell is charged in Count 2 with Conspiracy to Obstruct and Official Proceeding pursuant to 18 U.S.C. 1512(k). Caldwell should be acquitted of Count 2 for numerous reasons. First, Caldwell reasserts his prior legal arguments set for in two motions to dismiss in *U.S. v. Caldwell* and the instant case (*see* Order denying Motions to Dismiss, *Caldwell* at ECF 558 and *Rhodes* at ECF 176) wherein he argued that the Electoral College process is not an "official proceeding" as that term is used in the statute and that § 1512(c)(2) deals only with obstructive conduct involving documents and other tangible items, not congressional business.

Next, as the Government's evidence establishes that the QRF was not specifically purposed to attack the Capitol, there is no evidence that Caldwell conspired with anyone to obstruct the Electoral College certification. The Government has provided no proof that Caldwell conspired with anyone to specifically stop the certification in an unlawful manner. In fact, Caldwell did not enter arguably restricted Capitol grounds until after Congress had evacuated and recessed. The Government's allegation could survive MJOA if the QRF was intended to further lawless behavior *at the Capitol*. The Government's proof has not matched its claims. According to Special Agent Sylvia Hilgeman, who led the investigation into the QRFs, the purpose of the QRF was to "occupy D.C."

The Government can point to no specific plan of action for Caldwell to join with others to corruptly stop the Electoral College certification.  Without the QRF anchor, any claim that Caldwell conspired with anyone to specifically stop the Electoral College certification is pure speculation.  Accordingly, Caldwell should be acquitted as a matter of law as to Count 2 pursuant to Rule 29.

## Count 3

Caldwell is next charged with Obstruction of an Official Proceeding and Aiding and Abetting pursuant to 18 U.S.C. § 1512(c)(2), 2.  Caldwell should be acquitted of Count 3 for multiple reasons.  Notably, Caldwell reasserts his argument set forth in two prior motions to dismiss that 18 U.S.C. § 1512 does not apply to scenarios that do not involve evidence tampering and that the Electoral College certification is not an "official proceeding" under the statute.  *See* (Orders of the Court in *Caldwell* at ECF 558 and *Rhodes* at ECF 176).

Next, if the Court accepts Caldwell's QRF argument as sketched out above, the evidence that Caldwell violated § 1512 is insufficient to convict.  Caldwell was not on restricted Capitol grounds at the time Congress was evacuated and recessed.  Accordingly, the alleged "official proceeding" was not even "proceeding" when Caldwell set foot on the Capitol grounds.  Additionally, Captain Ortega of the Capitol Police and Parliamentarian Thomas Wickham have both established that Congress could not proceed with business for several hours after it was evacuated.  How could Caldwell "obstruct, influence, or impede" the Electoral College certification in the brief time he was on the

23

Inaugural balcony?  Caldwell did not enter the Capitol, and there is no evidence that he ever attempted to enter.

Likewise, Caldwell did not "attempt" to commit a violation of § 1512 because Congress had already recessed the certification process and evacuated from the building before Caldwell even entered arguably restricted grounds.  Finally, Caldwell did not aid and abet anyone.  As the Court noted, Caldwell's actions on J6 did not align with his words.  Caldwell, per the Government's own CCTV video and exhibits, was on unrestricted grounds at the tail-end of a crowd of thousands who were packed on the Capitol lawn.  Caldwell did not cause the crowd to move forward and, even if he did, there were literally thousands of humans between him and the Capitol.  Accordingly, judgment of acquittal should be granted as to Count 3.

## Count Four

Caldwell is charged with Conspiracy to Prevent an Officer from Discharging Any Duties pursuant to 18 U.S.C. § 372.  As the evidence is insufficient to convict Caldwell at this time, judgment of acquittal should be granted on this count.

First, Caldwell reasserts his prior legal arguments set forth in a prior motion to Dismiss filed wherein he outlined why Members of Congress are not "officers" and "officers of the United States" within the meaning of § 372.  (*See* Court Order, ECF 176). Accordingly, as Members of Congress are the alleged victims in Count 4, the Government has failed to charge a crime, which requires Caldwell's acquittal.

Second, Count 4 is limited to a conspiracy among *the named defendants*.  In other words, Caldwell cannot be convicted under § 372 for conspiring with a non-charged defendant.  *See* Indictment, ¶¶140-41.  The Government has established that Caldwell was on non-restricted grounds by the Peace Monument on 1st Street at 2:19 p.m. on J6.  By stipulation, Congress was ordered to be evacuated from the Capitol Building at 2:20 p.m.  If the Court accepts the QRF argument laid out above regrading Caldwell, then the Government has presented no evidence that Caldwell conspired with any of the named defendants to, by "force, intimidation, or threat," chase Members of Congress from the Capitol.  The few Members of Congress who had not evacuated the Capitol were ordered evacuated well before Caldwell ever set foot on arguably restricted grounds.  And Caldwell was not with any of the Defendants at that time.

Respectfully, judgment of acquittal pursuant to Rule 29 should be granted for Caldwell as to Count 4.

## Count 13

Count 13 charges Caldwell with Tampering with Documents or Proceedings under 18 U.S.C. § 1512(c)(1).  Count 13 makes two specific allegations of evidence tampering: First, Caldwell is alleged to have sent a "video" on January 8, 2021 to (presumably) Donovan Crowl, and then subsequently "unsent" that same video on January 14, 2021.  Second, Caldwell is alleged to have "deleted"—between J6 and January 19, 2021— "photographs" that depicted his participation on the attack on the Capitol.  The

Government has failed to meet its burden of proof as to both allegations and, accordingly, Caldwell should be acquitted as a matter of law.

First, Caldwell established at trial that the alleged "video" that was "unsent" was actually not a "video" but, instead, a "link" to an open source news media outlet called News2Share.[15]  Accordingly, this "link" does not constitute "a record, document, [or] other object" within the meaning of 1512(c)(1).  Additionally, as the News2Share news segment is "open source," it was by definition "availab[le] for use in an official proceeding."  Respectfully, judgment of acquittal should be granted as to this section of Count 13.

Second, the Government has provided no proof that Caldwell "deleted" any "photographs" from his Facebook account that "documented his participation in the attack on the Captiol on January 6, 2021."  The evidence uniformly suggests that Caldwell "unsent" messages; he did not "delete" messages as alleged in Count 13.  More problematic, the Government's witnesses have confirmed, without contradiction, that it is impossible to know for sure what the content of Caldwell's allegedly "unsent" messages was without actually locating the messages on another person's digital device. (Tr. At 6779) (testimony of Special Agent John Moore).  Even if the jury could speculate that some of the "unsent" messages referenced by the Government contained photographs, they would have to further speculate that these photographs "documented [Caldwell's}

---

[15] It should be noted that Caldwell was charged with the exact same conduct regarding the "unsent" video in the first superseding indictment filed in *U.S. vs. Caldwell* on February 19, 2021.  ECF No. 27.

participation in the attack on the Capitol[.]"  The Government has presented no such evidence that could lead a reasonable finder of fact to conclude beyond a reasonable doubt that Caldwell is guilty of 18 U.S.C. § 1512(c)(1) as alleged in the Indictment. Ironically, the Government's assumption that Caldwell "unsent" a video has been debunked, which highlights the dangers of allowing the jury to speculate.

## Conclusion

The defendant, Thomas Caldwell, respectfully requests that he be acquitted of all charges pursuant to Rule 29.

Respectfully submitted:

_____
         /s/
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite 300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of November 3, 2022, a copy of the foregoing Defendant Caldwell's Motion to for Judgment of Acquittal was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:      Office of the United States Attorney
Kathryn Rakoczy, AUSA
555 4th Street, NW
Washington, DC 20001


_____/s/_____
David W. Fischer, Esq.