"Let this be filed"
Signed by
Judge Amit P. Mehta
on 12/22/2022

**From:** fischer and putzi fischer <fischerandputzi@hotmail.com>
**Sent:** Sunday, October 30, 2022 2:48 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Sher, Justin (NSD) <Justin.Sher@usdoj.gov>; Alexandra.Hughes@usdoj.gov <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Juli Haller <hallerjulia@outlook.com>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>
**Subject:** Follow-up on jury instructions

CAUTION - EXTERNAL:

Judge Mehta:

In regards to our in-court discussion regarding jury instructions:

## 1st & 2nd Amendment advisements

On behalf of Caldwell, I believe that the First and Second Amendment advisories are acceptable as is.

### Unanimity as to underlying election provisions

The Court was skeptical about whether the jury was required to find unanimity as to a specific election law that the defendants conspired to thwart. The defense believes that thwarting the constitutional provisions and statute specifically set forth in the Indictment (e.g., the Twelfth Amendment, the Twentieth Amendment, 3 U.S.C. § 15), are essential elements of proof. The defense asserts that the jury must unanimously find that the Defendants intended to

thwart <u>all</u> three provisions.

The Grand Jury returned an Indictment setting forth the above-referenced statute and constitutional amendments under a heading "The Transfer of Presidential Power in the United States." <u>See</u> Indictment (¶1). The Indictment further states that the "purpose of the [seditious] conspiracy was to oppose the lawful transfer of presidential power" and cites the above-reference provisions. (¶16). Notably, paragraph 16 of the Indictment states that the "purpose of the conspiracy was" accomplished by "preventing, hindering, or delaying by force the execution of the *laws* governing the transfer of power, including the Twelfth and Twentieth Amendments . . . and Title 3, Section 15 of the United States Code." (¶16) (emphasis added). Respectfully, the Government must prove that the cited provisions were all targeted by the defendants.

Caldwell directs the Court's attention to *Stirone v. United States*. In *Stirone*, which dealt with Hobbs Act extortion, the Supreme Court held that the Government could not rely on proof that *Stirone* interfered with interstate shipments of steel to prove its case where the indictment only charged that the defendant interfered with interstate shipments of sand. *Stirone v. United States*, 361 U.S. 212, 213 (1960). The Court wrote:

"The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference. It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, *even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened*."

*Id.* at 214 (emphasis added). While *Stirone* dealt with the issue of a constructively amended indictment, it does stand for the proposition that when the Government makes specific allegations in an indictment, it cannot rely on more general allegations to prove its case. In other words, the "laws" cited in the Indictment are not surplusage and, as such, are essential elements to the seditious conspiracy sketched out by the Grand Jury. Accordingly, the defense asserts that the jury must unanimously find that all three provisions listed in the Indictment were targeted by the defendants' alleged conspiracy.

<u>**"Pending proceeding" language**</u>

The defense objects to "pending proceeding" language in the definitions section of "official proceeding." As currently written, the definition of "official proceeding" reads:

"The term "official proceeding" includes a proceeding before the Congress. **The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant**. As used in Count Three, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote."

Title 18 U.S.C. § 1512 specifically eliminated the "pending proceeding requirement" contained in §§ 1503 and 1505:

"That judicial proceedings be pending at the time of defendant's conduct is thus a *sine qua non* of a charge under Section 1503. In the present case, there is no dispute that at the time of the defendant's actions, no criminal charges had been filed, and no grand jury investigation or proceeding was pending."

*United States v. Smith*, 729 F.Supp. 1380, 1385 (D.D.C. 1990).   An official proceeding is pending once the judicial system has been activated. *United States v. Gonzalez-Mares*, 752 F.2d 1485, 1488 (9th Cir.) (while a complaint had not been filed at time of the interview with the probation officer, the proceeding was pending because the defendant was in custody and had signed a waiver of her right to trial and sentencing by the court).

      The instant disputed language is unnecessary and confusing.  None of the defendants have disputed that the Electoral College certification was underway at 1 p.m. on J6 or that the proceeding was recessed, i.e., indefinitely postponed.  Accordingly, it is undisputed that the "proceeding" <u>was</u> pending.  The jury instructions, by contrast, suggest that the Electoral College certification was <u>not</u> pending.  Cross-examination by the defendants on this issue was for the purpose of showing 1) lack of intent to obstruct the Electoral College certification; and 2) that the defendants did not actually obstruct or impede the proceeding.  No defendant has suggested lack of knowledge of the pendency of the proceeding.  Accordingly, the bolded language above should be stricken from the jury's instruction.

### Seditious Conspiracy

      Undersigned counsel will file a written Rule 29 motion at the appropriate time setting forth disputes with the current seditious conspiracy jury instruction.

Thank you for your consideration.

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
(443) 603-3363

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



From: Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
Sent: Sunday, October 30, 2022 5:07 PM
To: David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
Cc: phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net
<edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller
<HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com
<jcrisp@crisplegal.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; Rakoczy, Kathryn (USADC)
<Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC)
<Troy.Edwards@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
<jlbrightlaw@gmail.com>
Subject: RE: US v Rhodes - jury instructions

**CAUTION - EXTERNAL:**

Judge Mehta,

We edited the jury instructions and verdict form consistent with the Court's rulings at our conference on Oct.
26.  Attached is the updated draft of the instructions, in both redline and clean versions.  Also attached is the updated
draft of the verdict form.

We left the open questions in highlighting.  We removed the citations.  We also made a couple of other cosmetic
changes, like removing masculine pronouns to account for Ms. Watkins.

Notably, we added, in each aiding and abetting section, the concept of aiding and abetting an attempt.  We also
included, at the Court's suggestion, a sentence that the jurors can consider each method of committing each offense in
any order they choose.

For the four tampering counts, we removed the concept of a special interrogatory. We have elected to proceed on a sole theory of culpability for each defendant, mooting the need for the jurors to specify unanimity on a particular theory. Specifically, for each count:

- o   In Count Seven, Stewart Rhodes is charged with encouraging others to delete media, files, and communications that showed their involvement in the conduct being investigated by the grand jury.

- o   In Count Eight, Kelly Meggs is charged with deleting from his cellular telephone certain media, files, and communications that showed his involvement in the conduct being investigated by the grand jury.

- o   In Count Nine, Kenneth Harrelson is charged with deleting from his cellular telephone certain media, files, and communications that showed his involvement in the conduct being investigated by the grand jury.

- o   In Count Ten, Thomas Caldwell is charged with deleting from his Facebook account certain media, files, and communications that showed his involvement in the conduct being investigated by the grand jury.

We removed the informer's instruction and summary witness instruction. We left those numbers (16 and 22) intentionally blank for the time being, to avoid the need for repeated renumbering as we approach the end of trial.

Finally, this version corrects for the error in failing to define the "official proceeding" for Counts 7 – 10.

Thank you,
Jeff Nestler


**From:** Nestler, Jeffrey (USADC) <JNestler1@usa.doj.gov>
**Sent:** Friday, October 28, 2022 11:02 AM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
**Subject:** US v Rhodes - jury instructions

Judge Mehta,

We respectfully provide the following information in light of the discussion on October 26 during the conference regarding jury instructions:

- **Existence of a conspiracy (pages 13-14)**
  - o   We submit that government's proposed language, reprinted below, is a correct statement of the law and would be helpful for the jury.

- In determining whether there has been an unlawful agreement as alleged in the indictment, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose. The only evidence that may be available with respect to the existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, you may conclude—or may not, as your good judgment dictates—that this evidence warrants the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement. To prove the existence of a conspiracy, the government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all the details. Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to unexpressed understanding. It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

  o The proposed language is drawn from the following sources:

    ▪ *United States v. Abdel Rahman* (S.D.N.Y. 1993), page 13 (attached for reference):

      • A conspiracy has sometimes been called a partnership for criminal purposes in which each partner becomes the agent of every other partner, and has the authority to act and speak on behalf of every other partner. However, to establish the existence of a conspiracy, the government is not required to show that two or more people sat around a table and entered into a formal contract, orally or in writing, stating that they have formed a conspiracy to violate the law and setting forth the means by which it was to be carried out or the part to be played by each conspirator. Indeed, it would be extraordinary if there were such a formal document or specific agreement. It is enough if two or more persons, in any manner, whether they say so directly or not, come to a common understanding to violate the law. Express language or specific words are not required to indicate agreement to, or membership in, a conspiracy.

    ▪ *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Cir. 1985):

      • Although the government in order to prove an agreement need not show that the conspirators agreed on the details of their criminal scheme, it is required to show the "essential nature of the plan."

- *Thompson v. Trump*, No. 21-cv-400 (APM), 2022 WL 503384, at *33 (D.D.C. Feb. 18, 2022) (citations omitted):

  - Recall, a civil conspiracy need not involve an express agreement; so, the fact that President Trump is not alleged to have ever met, let alone sat down with, a Proud Boy or an Oath Keeper to hatch a plan is not dispositive. A tacit agreement—one that is "implied or indicated ... but not actually expressed"—is enough. The key is that the conspirators share the same general conspiratorial objective, or a single plan the essential nature and general scope of which is known to all conspirators.

- *United States v. Gayle*, No. 7:16-cr-361 (CS), ECF No. 158 (S.D.N.Y. Aug. 7, 2017), pages 11-12 (attached for reference):

  - To show the existence of a conspiracy, the Government is not required to show that two or more persons sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all the details. Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left to an unexpressed understanding. It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

    In order to show that a conspiracy existed, the evidence must show that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

    In determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose. The old adage, "actions speak louder than words," applies here. Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, that conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement.

- *United States v. Maxwell*, No. 1:20-cr-330 (AJN), ECF No. 562 (S.D.N.Y. Dec. 17, 2021), pages 42-43 (attached for reference):

- To show that a conspiracy existed, the Government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all of the details. Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left to the unexpressed understanding. It is rare that a conspiracy can be proven by direct evidence of an explicit agreement. Conspirators do not usually reduce their agreements to writing or acknowledge them before a notary public, nor do they publicly broadcast their plans.

  In determining whether such an agreement existed, you may consider direct as well as circumstantial evidence. The old adage, "Actions speak louder than words," applies here. Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. When taken altogether and considered as whole, however, these acts and conduct may warrant the inference that a conspiracy existed as conclusively as would direct proof, such as evidence of an express agreement.

- Third Circuit Model Criminal Jury Instructions 6.18.371C (Conspiracy – Existence of an Agreement):

  - The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does not have to prove that all the members of the conspiracy directly met, or discussed between themselves their unlawful objective(s), or agreed to all the details, or agreed to what the means were by which the objective(s) would be accomplished. The government is not even required to prove that all the people named in the indictment were, in fact, parties to the agreement, or that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

- Seventh Circuit Federal Criminal Jury Instruction 5.08(A), comment (c):
  - To prove that a conspiracy existed, the government must prove beyond a reasonable doubt that the defendant had an agreement or mutual understanding with at least one other person to [fill in description of the substantive offense, e.g., distribute heroin].

- **Success of conspiracy is irrelevant (page 15):**
  - Initially, the government proposed the following paragraph:
    - Of course, proof concerning the accomplishment of the object of a conspiracy may be the most persuasive evidence of the existence of the conspiracy itself. In other words, success in carrying out an act, if you believe it was carried out, is often the best proof of the agreement—but as I just said, it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed.
  - To address the Court's concerns, the government is amenable to modifying the instruction to omit the value words *most* and *best*, as follows:
    - Of course, proof concerning the accomplishment of the object of a conspiracy may be evidence of the existence of the conspiracy itself. In other words, success in carrying out an act, if you believe it was carried out, may be proof of the agreement itself—but as I just said, it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed.
  - The proposed instruction is drawn from the following sources:
    - *Abdel Rahman*, page 13:
      - Of course, proof concerning the accomplishment of the object of a conspiracy may be the most persuasive evidence of the existence of the conspiracy itself. In other words, success of the venture in carrying out an act, if you believe it was carried out, is often the best proof of the venture or the agreement. But as I just said, it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed.
    - *United States v. Gibbons*, 602 F.2d 1044, 1047 (2d Cir. 1979):
      - The sentence challenged reads: "Proof concerning the accomplishment of the objects of a conspiracy may be the most persuasive evidence of the existence of the conspiracy itself: Success of the venture, if you believe that it was successful, may be the best proof of the existence of a conspiracy."... The Judge refused to

6

amend his charge, which we note is a charge commonly used. Actually the Judge

simply charged that success of the venture "may be" the best proof of the

existence of the conspiracy, which, indeed, it may be.

- *United States v. Buck*, No. 84 CR. 220-CSH, 1987 WL 6411, at *3 (S.D.N.Y. Feb. 5, 1987)

  (citations omitted):

  - However, the existence of a conspiracy may be inferred from circumstantial

    evidence, and juries are often instructed that "'[p]roof concerning the

    accomplishment of the objects of a conspiracy may be the most persuasive

    evidence of the existence of the conspiracy itself.'

- **Definition of seditious conspiracy (pages 20-21):**

  o The parties jointly proposed the following language:

  - A conspiracy to oppose the authority of the United States requires an agreement to

    commit an act that would adversely affect the ability of the United States government

    to govern or perform one of its proper functions.  The agreement must be to resist some

    positive assertion or actual exercise of authority by the government.

  o We understand Mr. Fischer intends to submit a brief challenging the jointly proposed language,

    and we will respond in due course.  But we note the language is drawn from the following

    sources:

  - 18 U.S.C. 2384:

    - If two or more persons in any State or Territory . . . conspire to overthrow, put

      down, or to destroy by force the Government of the United States, or to levy war

      against them, or to oppose by force the authority thereof . . .

  - *Abdel Rahman*, page 15:

    - An act opposes the authority of the United States if, when successfully carried

      out, it would adversely affect the ability of the United States government to

      govern the country or to perform one of its proper functions.

  - *Baldwin v. Franks*, 120 U.S. 678, 693 (1887)

    - To constitute an offense under the first clause, the authority of the government

      must be opposed; that is to say, force must be brought to resist some positive

      assertion of authority by the government. A mere violation of law is not enough;

      there must be an attempt to prevent the actual exercise of authority.

7

- *United States v. Stone*, 2:10-cr-20123-VAR-PJK, ECF No. 767 (E.D. Mich. Mar. 27, 2012), at page 8:
  - The law is clear that seditious conspiracy requires an agreement to oppose by force the authority of the United States itself. It must be an offense against the Nation, not local units of government.

- **Definition of seditious conspiracy (pages 22-23):**
  - The government proposes the following sentence:
    - Indeed, just as participants in a legitimate business venture may be unaware of details or may disagree about details, and still be working together to make a profit, so too participants in a criminal venture may be unaware of details or disagree about details and still be working together to further an unlawful purpose.
  - The proposed instruction is drawn from the following sources:
    - *Abdel Rahman*, page 16:
      - Indeed, just as participants in a legitimate business venture may be unaware of details or may disagree about details, and still be working together to make a profit, so too participants in a criminal venture may be unaware of details or disagree about details and still be working together to further a criminal purpose.
    - *United States v. Brockenborrugh*, 575 F.3d 726 (D.C. Cir. 2009) (in the context of Rule 801(d)(2)(E)):
      - despite its use of the word "conspiracy," Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise.
    - Third Circuit Model Criminal Jury Instructions 6.18.371C (Conspiracy – Existence of an Agreement):
      - The government also does not have to prove that all the members of the conspiracy directly met, or discussed between themselves their unlawful objective(s), or agreed to all the details, or agreed to what the means were by which the objective(s) would be accomplished.

- **Definition of "official proceeding" (page 25):**
  - The parties jointly proposed the following sentence:
    - As used in Count Three, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote.

○ During the conference, the Court questioned whether to instruct the jury as a matter of law that Congress's Joint Session to certify the Electoral College vote was an "official proceeding" as used in 18 USC 1512(c)(2) and 1515(a)(1)(B).  The answer is yes.

- Every judge in this District in a January 6-related case with a 1512(c)(2) charge has provided this same instruction.  *See:*

  - *United States v. Reffitt*, No. 21-cr-32 (DLF), ECF No. 119 (D.D.C. Mar. 7, 2022)
  - *United States v. Robertson*, No. 21-cr-34 (CRC), ECF No. 86 (D.D.C. Apr. 8, 2022)
  - *United States v. Thompson*, No. 21-cr-161 (RBW), ECF No. 83 (D.D.C. Apr. 14, 2022)
  - *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM), ECF No. 84 (D.D.C. May 27, 2022)
  - *United States v. Williams*, No. 21-cr-377 (BAH), ECF No. 112 (D.D.C. June 30, 2022)
  - *United States v. Bledsoe*, No. 21-cr-204 (BAH), ECF No. 215 (D.D.C. July 21, 2022)
  - *United States v. Herrera*, No. 21-cr-619 (BAH), ECF No. 65 (D.D.C. Aug. 18, 2022)
  - *United States v. Jensen*, No. 21-cr-6 (TJK), ECF No. 95 (D.D.C. Sept. 22, 2022)
  - *United States v. Strand*, No. 21-cr-85 (CRC), ECF No. 112 (D.D.C. Sept. 27, 2022)

- Because the status of a particular proceeding is a question of law for the Court rather than a question of fact for the jury, the Court can—and should—instruct the jury as such. *See:*

  - Third Circuit Model Criminal Jury Instruction 6.18.1512A2, comment (instructing that under 18 U.S.C. § 1512, "[t]he question of whether the proceeding alleged and proved by the government is an official proceeding is for the judge").
  - Seventh Circuit Model Criminal Jury Instruction at §§ 1512 & 1515(a)(1) ("The term 'official proceeding' as used in Count[s] — means [name official proceeding].").

- The Court can instruct the jury on a question of law.  *See:*

  - *United States v. Gaudin*, 515 U.S. 506, 513 (1995) (noting that a jury can "be deprived of the power to determine . . . *pure questions of law* in a criminal case").

- There should be symmetry between the instructions for 1512(c)(2) and 1512(c)(1).

- Consistent with the model instructions for the Third and Seventh Circuits, the Court should instruct the jury that "official proceeding" means "the grand jury's investigation into the role of Stewart Rhodes, Kelly Meggs, Kenneth Harrelson, Jessica Watkins, Thomas Caldwell, and others in the attack on the United States Capitol on January 6, 2021."

- There is an error on page 41 in the parties' joint proposed instructions. The parties proposed defining "official proceeding" with reference to the earlier definition. But the "official proceeding" for the tampering counts (7-10) is different than the official proceeding for counts 2 and 3. Thus, the Court should define the official proceeding as this particular grand jury investigation.

- For both the 1512(c)(2) and 1512(c)(1) counts, the Court should instruct the jury in the "definitions" section about the meaning of the particular "official proceeding."

We are available to further discuss any of these issues at the Court's convenience.

Jeffrey S. Nestler

Assistant United States Attorney

601 D Street NW, Washington, DC 20530

Room 5-1501

Email: Jeffrey.Nestler@usdoj.gov

Office: 202-252-7277

Cell: 202-815-8672

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



From: fischer and putzi fischer <fischerandputzi@hotmail.com>
Sent: Wednesday, November 9, 2022 11:15 PM
To: David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
Cc: phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; jcrisp_crisplegal.com
<jcrisp@crisplegal.com>; Juli Haller <hallerjulia@outlook.com>; Stanley Woodward
<stanley@brandwoodwardlaw.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>
Subject: Jury Instruction request

**CAUTION - EXTERNAL:**

Judge Mehta:

Attached is a request for changes in the jury instruction regarding seditious conspiracy.  Be advised that I will be arguing for the attached changes at the jury instructions conference tomorrow.  Thank you for your consideration.  Finally, I apologize for the informal nature of this submission.

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
(443) 603-3363

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Under the "Definitions" section for seditious conspiracy (Count 1), the defense requests significant changes consistent with *Baldwin v. Franks*. In *Baldwin*, the Supreme Court stated:

> This evidently implies force against the government as a government. To constitute an offence under the first clause, ***the authority of the government must be opposed***; that is to say, force must be brought ***to resist some positive assertion of authority*** by the government. A mere violation of law is not enough; there must be an attempt to prevent the actual exercise of authority. That is not pretended in this case. The force was exerted in opposition to a class of persons who had the right to look to the government for protection against such wrongs, not in opposition to the government ***while actually engaged*** in an attempt to afford that protection.
>
> So, too, as to ***the second clause***, the offence consists in preventing, hindering, or delaying the government of the United States ***in the execution of its laws***. This, as well as the other, means something more than setting the laws themselves at defiance. There must be a ***forcible resistance of the authority of the United States while endeavoring to carry the laws into execution***.

*Baldwin v. Franks*, 120 U.S. 678, 693 (1887).

Under *Baldwin*, ***both*** portions 18 U.S.C. § 2384 charged in the instant case ("oppose the authority") and (prevent, hinder, or delay "the execution of [federal] laws") have, as essential elements, "resistance" to the "authority" of the government. As noted in Caldwell's written Motion for Judgment of Acquittal filing, the terms "resist" and "authority" are crucial elements to the crime of seditious conspiracy. The elements of resistance and authority require that, to violate the statute, the defendants must have conspired to forcibly resist, i.e., employ forcible means to prevent the execution of an endeavor in which force is employed, the federal government's "positive assertion of authority." To resist means to use force against the use of force.[1] When used as a noun,

---

[1] *See* BLACK'S LAW DICTIONARY (1st ed. 1891):

> **RESISTANCE.** The act of resisting *opposition*; the employment of forcible means to prevent the execution of an endeavor *in which force is employed*.

*See also* BOUVIER'S LAW DICTIONARY (1856) (Resistance: "The opposition of force to force.") (https://wzukusers.storage.googleapis.com/user-32960741/documents/5ad525c314331myoR8FY/1856_bouvier_6.pdf)

to assert "authority" means to require obedience.[2]  In short, a seditious conspiracy occurs when forcible resistance is intended to be used against a proactive use of force (or compulsion) by the government to compel obedience to a command or law.

Accordingly, Caldwell requests that the "Definitions" section of the seditious conspiracy count be replaced with the following language:

<u>Definitions</u>

The two goals of the conspiracy charged in the indictment—(1) to oppose by force the authority of the Government of the United States, and (2) to prevent, hinder, or delay the execution of any law of the United States by force—both have as a common ingredient [**common ingredients**] the intent to use force to oppose the United States [**by resisting by force a positive assertion or show of authority by federal government authorities**].  I will now explain these concepts.

To determine whether a defendant conspired to "oppose by force the authority of the United States," you must consider whether the defendant agreed to oppose the authority of the United States and whether that agreement was to do so by force. [Caldwell seeks to delete the following language--*A conspiracy to oppose the authority of the United States requires an agreement to commit an act that would adversely affect the ability of the United States government to govern or perform one of its proper functions.*]  The agreement must be to resist some positive assertion or actual exercise of authority by the government.  [Add--**To "resist" means the employment of forcible means to prevent the execution of an endeavor in which force is employed.  The term "positive assertion or actual exercise of authority" means to compel obedience to lawful commands of a government official.**]  An agreement to merely violate the law is not sufficient.  [Caldwell seeks to delete the following language--*Affecting the ability of the United States government to govern or to perform one of its proper functions must be a principal purpose of the member of the conspiracy who intends to commit the act and not merely an incidental effect of an act that is planned or carried out for another purpose*].

To determine whether the defendants conspired to prevent, hinder, or delay the execution of any law of the United States by force, you should determine whether they

---

[2] BOUVIER'S LAW DICTIONARY (1856):

**AUTHORITY**, government. The right and power which an officer has in the exercise of a public function *to compel obedience to his lawful commands* . . .

agreed to engage in conduct for the purpose of preventing, hindering, or delaying the execution of the laws governing the transfer of presidential power[] **[by resisting a positive assertion or show of authority by federal government authorities as those terms are defined above]**. .. . .

Respectfully submitted,

David W. Fischer, Esq.



for iOS

**From:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
**Sent:** Saturday, November 12, 2022 2:11 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net
<edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller
<HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com
<jcrisp@crisplegal.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; Rakoczy, Kathryn (USADC)
<Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC)
<Troy.Edwards@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
<jlbrightlaw@gmail.com>
**Subject:** RE: US v Rhodes - jury instructions

**CAUTION - EXTERNAL:**

Dear chambers,

As requested, attached please find a revised version of the jury instructions.  We have attached both a redline (from the
10/30/22 version) and clean version.

With one exception, we oppose Mr. Fischer's proposed edits to the seditious conspiracy instruction.  He continues to
press the concept that seditious conspiracy requires proof of an agreement to use force *against the government's use of
force*, and that the government's use of force must to be attempt to compel obedience to a command or law.  The Court
has already rejected that concept.  *See* June 28, 2022 Mem. Op. [ECF No. 176] at 11-13.

Mr. Fischer's reliance on *Baldwin v. Franks*, 120 U.S. 678 (1887)—a decision this Court fully considered (*see* ECF 176)—
does not militate in favor of a different instruction.  As this Court noted, the Supreme Court in *Baldwin* vacated a
seditious conspiracy conviction where the defendant agreed to (and did) use force against non-governmental
actors.  *See Baldwin*, 120 U.S. at 694 (noting that the defendant exerted his force "against the Chinese people, and not
against the government in its efforts to protect them"); *see also Anderson v. United States*, 273 F. 20, 26-27 (8th Cir.
1921) (overturning seditious conspiracy conviction where defendants targeted industrial interests, not the government
itself); *Haywood v. United States*, 268 F. 795, 800 (7th Cir. 1920) (same).  The language from *Baldwin* to which Mr.
Fischer refers underscores the point that individuals do not violate Section 2384 if they conspire to use force against

1

non-governmental actors. That language—such as references to "positive assertion or actual exercise of authority"—does not imply that liability under Section 2384 arises *only* where individuals intend "forcible resistance" against a "proactive use of force (or compulsion) by the government to compel obedience to a command of law." Indeed, in *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), in which the defendants were convicted of violating Section 2384 under both prongs at issue here (as well as the levy-war prong), neither the instructions nor the evidence required the showing Mr. Fischer advocates. *See id.* at 104-05 (describing evidence, which involved an assassination attempt on the Egyptian president and bombing various buildings around New York City, including the World Trade Center); *see also Abdel Rahman* instructions (previously submitted to the Court).

We respectfully submit that the current iteration of the seditious conspiracy instruction, which the parties jointly proposed as part of the pretrial statement, is an accurate and clear statement of the law. It is drawn directly from *Baldwin*, *Abdel Rahman*, *Stone*, and the Court's own decision denying the defendants' motion to dismiss. At the defense's request, however, we are amenable to deleting the following sentence:

> Affecting the ability of the United States government to govern or to perform one of its proper functions must be a principal purpose of the member of the conspiracy who intends to commit the act and not merely an incidental effect of an act that is planned or carried out for another purpose.

Thank you.

**From:** Nestler, Jeffrey (USADC)
**Sent:** Sunday, October 30, 2022 5:07 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
**Subject:** RE: US v Rhodes - jury instructions

Judge Mehta,

We edited the jury instructions and verdict form consistent with the Court's rulings at our conference on Oct. 26. Attached is the updated draft of the instructions, in both redline and clean versions. Also attached is the updated draft of the verdict form.

We left the open questions in highlighting. We removed the citations. We also made a couple of other cosmetic changes, like removing masculine pronouns to account for Ms. Watkins.

Notably, we added, in each aiding and abetting section, the concept of aiding and abetting an attempt. We also included, at the Court's suggestion, a sentence that the jurors can consider each method of committing each offense in any order they choose.



**From:** fischer and putzi fischer <fischerandputzi@hotmail.com>
**Sent:** Sunday, November 13, 2022 10:04 AM
**To:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; David Alpert
<David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>;
edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward
<stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer
<bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy,
Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD)
<Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo, Louis
(CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
**Subject:** Re: US v Rhodes - jury instructions

**CAUTION - EXTERNAL:**

Judge Mehta:

In reply to the Government's arguments (see email below) regarding the proper language to
include in the jury instruction relating to seditious conspiracy, please consider the following:

1) The Government's reliance on *United States v. Rahman* is misplaced. In *Rahman*, the
defendants were convicted in the first World Trade Center attack which, according to the
indictment, was part of a long-running "Jihad" campaign against the enemies of Islam,
including the United States. The Second Circuit opined:

"To support a conviction for seditious conspiracy under 18 U.S.C. § 2384, the Government
must demonstrate that: (1) in a State, or Territory, or place subject to the jurisdiction of the
United States, (2) two or more persons conspired to "levy war against" or "oppose by force the
authority of" the United States government, and (3) that the defendant was a member of the
conspiracy. 18 U.S.C. § 2384.
First, we find ample evidence in the record to support the jury's finding that there was indeed a
conspiracy to "levy war" against the United States."

*United States v. Rahman*, 189 F.3d 88, 123 (2d Cir. 1999). The *Rahman* Court did not discuss

the "oppose by force the authority of" section of 18 U.S.C. sec. 2384, and the defendants were not charged under the "execution of [law]" section of the seditious conspiracy statute. In fact, Rahman did not even cite the Supreme Court's decision in *Baldwin v. Franks*. Respectfully, *Rahman* provides no guidance for a seditious conspiracy jury instruction in the instant case.

2) "The elements of [seditious conspiracy] are definitely stated in Baldwin v. Franks[.]" *Anderson v. United States*, 273 F. 20, 25 (8th Cir. 1921).

3) Contrary to the Government's suggestion, the language relied upon by Caldwell in *Baldwin* is not dicta. *Baldwin* sets forth the elements necessary for the government to prove a seditious conspiracy as to both sections 18 U.S.C. sec. 2384 that are at issue in the instant case. Notably, the conspirators must "forcibly resist," which means to engage in force to fight off force. The target of the forcible resistance must be a "positive assertion of authority" or "actual exercise of authority" by the Government. *Baldwin*, 120 U.S. at 693.

In *United States v. Stone*, the U.S. District Court for the Eastern District of Michigan examined a factual scenario that is a perfect contrast to the instant case. In Stone, members of the "Huatree" were charged with seditious conspiracy for their plot to kill a local law enforcement officer for the purpose of provoking a response by federal law enforcement, which would, they hoped, lead to an armed conflict with the "feds." *United States v. Stone*, 2011 U.S. Dist. LEXIS 115530, at 16-17 (E.D. Mich. 2011). The Court determined that the Government had alleged a seditious conspiracy to "oppose the authority" of the government, because the defendants conspired to provoke "a positive assertion of authority" by federal law enforcement to which they would resist:

"Defendants fault the Government for not indicating what "positive assertion of authority by the Government," *Baldwin*, 120 U.S. at 693, they conspired to oppose through these actions. However, this information can be gleaned, and the necessary inferences made, by reviewing the allegations of the indictment. For example, certainly conducting operations against the Government at rally points, with explosive devices and firearms (a force brought to resist the Government), **after a response by law enforcement has been provoked by some violent action (a positive assertion of authority)**, meets the requirements of the statute."

*Id.* (emphasis added). In other words, the "positive assertion of authority" that met with planned resistance was federal law enforcement proactively seeking out the Huatree for arrest (i.e., an "actual exercise of authority"). Unlike *Stone*, the *Rhodes* defendants' alleged aim was not to thwart a "positive assertion of authority." In fact, the indictment alleges that the purpose of the seditious conspiracy was "to oppose the lawful transfer of presidential power by force[.]" ECF No. 167, para. 14. Respectfully, the instant indictment fails to allege a seditious conspiracy, and the government has failed to prove a seditious conspiracy. At a minimum, the jury instruction as to seditious conspiracy should contain and define the elements of seditious conspiracy as set forth in *Baldwin*.

4) The Court has not considered Caldwell's argument regarding Baldwin's requirement that, to forcibly thwart the "execution" of a federal law, "[t]here must be a forcible resistance of the authority of the United States *while endeavoring to carry the laws into execution.*" *Baldwin*, 120 U.S. at 693 (emphasis added). As noted previously, the very 19th century dictionaries relied upon by the Government and the Court in prior rulings, e.g., Webster's 1828 Dictionary, define the "executive branch" as the branch of government that "carry the laws into

execution." *See also* Black's 1891 Dictionary ("**Executive**. As distinguished from the legislative and judicial departments[,] . . . the executive department is that which is charged with the detail of carrying the laws into effect and securing their due observance. . . . Executive officer means an officer in whom resides the power to execute the laws.").

Thank you for your consideration. Respectfully submitted.

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
(443) 603-3363

---

**From:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
**Sent:** Saturday, November 12, 2022 2:10 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com <jlbrightlaw@gmail.com>
**Subject:** RE: US v Rhodes - jury instructions

Dear chambers,

As requested, attached please find a revised version of the jury instructions. We have attached both a redline (from the 10/30/22 version) and clean version.

With one exception, we oppose Mr. Fischer's proposed edits to the seditious conspiracy instruction. He continues to press the concept that seditious conspiracy requires proof of an agreement to use force *against the government's use of force*, and that the government's use of force must be an attempt to compel obedience to a command or law. The Court has already rejected that concept. *See* June 28, 2022 Mem. Op. [ECF No. 176] at 11-13.

Mr. Fischer's reliance on *Baldwin v. Franks*, 120 U.S. 678 (1887)—a decision this Court fully considered (*see* ECF 176)—does not militate in favor of a different instruction. As this Court noted, the Supreme Court in *Baldwin* vacated a seditious conspiracy conviction where the defendant agreed to (and did) use force against non-governmental actors. *See Baldwin*, 120 U.S. at 694 (noting that the defendant exerted his force "against the Chinese people, and not against the government in its efforts to protect them"); *see also Anderson v. United States*, 273 F. 20, 26-27 (8th Cir. 1921)

(overturning seditious conspiracy conviction where defendants targeted industrial interests, not the government itself); *Haywood v. United States*, 268 F. 795, 800 (7th Cir. 1920) (same). The language from *Baldwin* to which Mr. Fischer refers underscores the point that individuals do not violate Section 2384 if they conspire to use force against non-governmental actors. That language—such as references to "positive assertion or actual exercise of authority"—does not imply that liability under Section 2384 arises *only* where individuals intend "forcible resistance" against a "proactive use of force (or compulsion) by the government to compel obedience to a command of law." Indeed, in *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), in which the defendants were convicted of violating Section 2384 under both prongs at issue here (as well as the levy-war prong), neither the instructions nor the evidence required the showing Mr. Fischer advocates. *See id.* at 104-05 (describing evidence, which involved an assassination attempt on the Egyptian president and bombing various buildings around New York City, including the World Trade Center); *see also Abdel Rahman* instructions (previously submitted to the Court).

We respectfully submit that the current iteration of the seditious conspiracy instruction, which the parties jointly proposed as part of the pretrial statement, is an accurate and clear statement of the law. It is drawn directly from *Baldwin*, *Abdel Rahman*, *Stone*, and the Court's own decision denying the defendants' motion to dismiss. At the defense's request, however, we are amenable to deleting the following sentence:

> Affecting the ability of the United States government to govern or to perform one of its proper functions must be a principal purpose of the member of the conspiracy who intends to commit the act and not merely an incidental effect of an act that is planned or carried out for another purpose.

Thank you.

---

**From:** Nestler, Jeffrey (USADC)
**Sent:** Sunday, October 30, 2022 5:07 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
**Subject:** RE: US v Rhodes - jury instructions

Judge Mehta,

We edited the jury instructions and verdict form consistent with the Court's rulings at our



**From:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
**Sent:** Sunday, November 13, 2022 8:29 PM
**To:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; fischer and putzi fischer <fischerandputzi@hotmail.com>; David Alpert <David_Alpert@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
**Subject:** RE: US v Rhodes - jury instructions

CAUTION - EXTERNAL:

Thank you, JC. The government is amenable to the Court's proposal, with the exception that we object to this single sentence: "Or, put differently, you should determine whether the defendants conspired to exert force against those charged with the duty of executing the laws of the United States." In its place, we propose: "Or, put differently, you should determine whether the defendants conspired to exert force against the government of the United States in its execution of the laws of the United States." We can explain our position in court tomorrow.

Also, please be aware that we intend to object to two of Defendant Meggs' proposed witnesses – Michael Nichols and Rico La Starza – on relevance grounds. We understand that these two men will be the first – and apparently only – witnesses for Defendant Meggs, so we may need to address this prior to 9:30am.

Thank you.

**From:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Sent:** Sunday, November 13, 2022 4:29 PM
**To:** fischer and putzi fischer <fischerandputzi@hotmail.com>; Nestler, Jeffrey (USADC)
<JNestler1@usa.doj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>;
edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward
<stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer
<bradford.geyer@formerfedsgroup.com>; jcrisp_crispfeds.com <jcrisp@crisplegal.com>; Rakoczy,
Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Hughes, Alexandra (NSD)
<Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Manzo, Louis
(CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com
**Subject:** RE: US v Rhodes - jury instructions

Good afternoon all –

The court has considered the parties' competing positions with respect to the seditious conspiracy
instruction.  The court is proposing the attached instruction, which is redlined against the version
presented by the government.  Also attached are excerpts from a Webster's dictionary from 1856
defining the terms "authority" and "resist."  The court believes that those terms as used in *Baldwin*
should carry their ordinary meanings as of the time of the statute's enactment.


Best,
JC

Jean-Claude Douyon
Courtroom Deputy to the Honorable Amit P. Mehta
U.S. District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001
(202) 354-3164


**From:** fischer and putzi fischer <fischerandputzi@hotmail.com>
**Sent:** Sunday, November 13, 2022 10:04 AM
**To:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; David Alpert
<David_Alpert@dcd.uscourts.gov>; Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Cc:** phillip linder <attorneylinder@gmail.com>; Lee Bright <jlbright@gmail.com>;
edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward
<stanley@brandwoodwardlaw.com>; Juli Haller <HallerJulia@outlook.com>; Brad Geyer
<bradford.geyer@formerfedsgroup.com>; jcrisp_crispfeds.com <jcrisp@crisplegal.com>; Rakoczy,
Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD)
<Alexandra.Hughes@usdoj.gov>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Manzo, Louis
(CRM) <Louis.Manzo@usdoj.gov>; jlbrightlaw@gmail.com

The two goals of the conspiracy charged in the indictment—(1) to oppose by force the authority of the Government of the United States, and (2) to prevent, hinder, or delay the execution of any law of the United States by force—both have as a common ingredient the intent to use force against the United States, functioning through its government. I will now explain these concepts.

To determine whether a defendant conspired to "oppose by force the authority of the United States," you must consider whether the defendant agreed to oppose the authority of the United States and whether that agreement was to do so by force. The agreement must be to resist some positive assertion or actual exercise of authority by the government. "Resist" means to act in opposition to; to endeavor to counteract, defeat, or frustrate.[1] "Authority" for purposes of this offense means the legal or rightful power of the United States government.[2] An agreement to merely violate the law is not sufficient.

To determine whether the defendants conspired to "prevent, hinder, or delay the execution of any law of the United States" by force, you should determine whether they agreed to forcibly resist the authority of the United States while it endeavored to carry the laws into execution.[3] Or, put differently, you should determine whether the defendants conspired to exert force against those charged with the duty of executing the laws of the United States.[4] "Authority" and "resist" carry the same definitions as above. The "laws" for purposes of this goal are those governing the transfer of presidential power, including: the United States Constitution (specifically Article II and the Twelfth Amendment) and Title 3, Section 15 of the United States Code. The Twelfth Amendment to the Constitution provides that the Vice President, as the President of Senate, must in the presence of the Senate and House of Representatives open all the certificates for presidential election sent

---

[1] Webster's, A Dictionary of the English Language 385 (1856)
[2] *Id.* at 32.
[3] *Baldwin v. Franks*, 120 U.S. 678, 693 (1887).
[4] *Anderson v. United States*, 273 F. 20, 26 (7th Cir. 1921)

by the Electors to Congress. Title 3, Section 15 of the United States Code further provides that the Senate and House of Representatives must meet for that purpose at 1 pm on January 6 following a presidential election. Finally, Article II to the United States Constitution, as amended by the Twelfth and Twentieth Amendments, provides that the person with the greatest number of votes, after that person takes the required oath, shall become president on January 20. An agreement to merely violate the law is not sufficient.[5]

Both goals of the seditious conspiracy require an agreement that physical force would be used. An agreement to accomplish the goals of the conspiracy by litigation, advocacy, protest, or deceit is insufficient. Force is defined in the conventional or ordinary sense. An act involves force if it threatens or results in violence or if it threatens or results in harming or destroying property or harming or killing people. It is not necessary for the government to show that force was actually used by the conspirators. Nor is it necessary for the government to prove that the conspirators agreed as to every detail of how force was to be used, or as to the specific targets of the use of force. However, the government must prove at least that the conspirators intended that force would be used.

---

[5] *Baldwin*, 120 U.S. at 693.

A

# PRONOUNCING AND DEFINING

# DICTIONARY

OF

# THE ENGLISH LANGUAGE,

ABRIDGED FROM

## WEBSTER'S AMERICAN DICTIONARY;

WITH NUMEROUS SYNONYMS, CAREFULLY DISCRIMINATED.

BY CHAUNCEY A. GOODRICH, D.D.,

Professor in Yale College.

TO WHICH ARE ADDED,

## WALKER'S KEY

TO THE

PRONUNCIATION OF CLASSICAL AND SCRIPTURE PROPER NAMES;

A VOCABULARY OF

MODERN GEOGRAPHICAL NAMES; PHRASES AND QUOTATIONS FROM THE ANCIENT AND
MODERN LANGUAGES; ABBREVIATIONS USED IN WRITING, PRINTING, &c., &c.

## J. B. LIPPINCOTT & CO.,

No. 20 NORTH FOURTH STREET,

PHILADELPHIA.

1856.

Digitized by Google

Original from
HARVARD UNIVERSITY

Case 1:22-cr-00015-APM   Document 429   Filed 12/22/22   Page 34 of 69

sense; bold effrontery.—Syn. Hardihood; boldness; impudence.—*Hardihood* and *boldness* may be used either in a good or bad sense, the former indicating a disregard of consequences, the latter more of spirit and enterprise. *Effrontery* is stronger than *impudence*, and *audacity* than either, when used in a bad sense.

AUDI-BLE, *a.* That may be heard.                    [ble.
AUD'I-BLE-NESS, *n.* The quality of being audible.
AUD'I-BLY, *ad.* In a manner to be heard.
AUD'I-ENCE, *n.* The act of hearing; admittance to a hearing; an auditory or an assembly of hearers.                    [thority.
AU'DIT, *n.* An examination of accounts under authority.
AUD'IT, *v. t.* To examine and adjust accounts by persons authorized.
AUD'IT-OR, *n.* A hearer; a person authorized to examine and adjust accounts.
AUD'IT-OR-SHIP, *n.* The office of auditor.
AUD'IT-O-RY, *n.* An assembly of hearers.
AUD'IT-O-RY, *a.* Able to hear; pertaining to the sense of hearing.
AUD'IT-RESS, *n.* A female hearer.
AU-GE'AN, *a.* Belonging to Augeas or his stable; hence filthy; dirty.
AU'GER, *n.* A carpenter's tool to bore holes with.
AUGHT (awt), *n.* Any thing.
AUG-MENT', *v. t.* To increase; to make or become large; *v. i.* to increase; to grow larger, as a stream augments by rain.                    [of vowel quantity.
AUG'MENT, *n.* An increase; a prefix or increase
AUG-MENT-A'TION, *n.* The act or state of increasing; enlargement.                    [augmenting.
AUG-MENT'A-TIVE, *a.* Having the quality of
AU'GUR, *n.* Among the Romans, one whose office it was to foretell events by omens, such as those derived from birds, prodigies, &c.
AU'GUR, *n. t. or f.* To judge by augury; to prognosticate; to foretell.
AU'GU-RAL, *a.* Pertaining to augurs or augury.
AU-GU-RA'TION, *n.* The act or practice of augury or foretelling events.
AU'GU-RI-AL, *a.* Of or relating to augury.
AU'GU-RY, *n.* Originally, divination by the flight, &c., of birds; prognostication by signs of any kind; an omen.
AU'GUST, *n.* The eighth month of the year, named from Augustus Cæsar.
AU-GUST', *a.* Inspiring reverence or awe.—Syn. Grand; imposing; majestic.
AU-GUS'TAN, *a.* Pertaining to Augustus.
AU-GUS'TINS, } *n. pl.* An order of monks,
AU-GUST-IN'I-ANS,} so called from St. Augustin.
AU-GUST'NESS, *n.* Dignity; majesty; grandeur.
AU'LIC, *a.* Pertaining to a royal court.
AUNT (änt), *n.* A father's or mother's sister.
AU'RA, *n.; pl.* Au'ræ. A gentle current of air; a stream of fine particles flowing from a body.
AU'RA-TED, *a.* Resembling gold.
AU-RE'LI-A, *n.* The nymph or chrysalis of an insect, in form of a maggot.
†AU-RE'O-LA, *n.* [L.] A circle of rays representing glory, placed round the head of saints, &c., in paintings.                    [of the heart.
AU'RI-CLE (au′ro-kl), *n.* The external ear; a part
AU-RIC'U-LA, *n.* A beautiful species of primrose.
AU-RIC'U-LAR, *a.* Of or spoken in the ear; private.
AU-RIC'U-LATE, *a.* Shaped like an ear.
AU-RIC'U-LA-TED, *a.* Having appendages like
AU-RIF'ER-OUS, *a.* Containing gold.
AU'RI-FORM, *a.* Ear-shaped.
AU'RIST, *n.* One skilled in disorders of the ear.
AU-RO'RA, *n.* The dawning light; the morning; a species of crowfoot.
AU-RO'RA BO-RE-A'LIS, *n.* The northern lights.
AU-RO'RAL, *a.* Belonging to the aurora; resembling the twilight.
AUS-CUL-TA'TION, *n.* The act of listening; es-

pecially to the action of the lungs through the stethoscope.                    [show.
AUS'PI-CATE, *v. t.* To render auspicious; to foreAUS'PICE, *n.* Omens; patronage; protecAUS'PI-CES, *n. pl.* } tion.
AUS-PI'CIOUS (aus-pish′us), *a.* Having omens of success or of happy results.—Syn. Prosperous; favorable; lucky; propitious.
AUS-PI'CIOUS-LY (-pish′us-lỹ), *ad.* With favorable tokens; prosperously; happily.
AUS-TERE', *a.* Harsh to the taste; harsh and forbidding in manner or life.—Syn. Severe; rigid; harsh; rough; stern.
AUS-TERE'LY, *ad.* Severely; rigidly; sternly.
AUS-TERE'NESS,} *n.* Severity of manners or livAUS-TER'I-TY,} ing; strictness; roughness.
AUS'TRAL, *a.* Of or tending to the south; southern; being in the south.
AUS-TRA-LA'SIA, *n.* Countries lying southeast of Asia, including New Holland, New Zealand, &c.
AUS-TRA'LI-A, *n.* The continent of New Holland.
AU-THEN'TIC, *a.* Of approved authority; to be relied on.—Syn. True; certain; faithful; credible; reliable; genuine. — A distinction is now made between *authentic* and *genuine*, the former being opposed to *false*, and the latter to *spurious*, as an *authentic* history, a *genuine* manuscript.                    [lidity.
AU-THEN'TIC-AL-LY, *ad.* With marks of crediAU-THEN'TIC-AL-NESS,} *n.* Quality of being
AU-THEN-TIC'I-TY,} authentic; reliability; genuineness.
AU-THEN'TIC-ATE, *v. t.* To establish by proof; to render authentic; to establish as genuine.
AU-THEN-TI-CA'TION, *n.* The act of authenticating; confirmation.
AU'THOR, *n.* One who makes or causes; a beginner or first mover; a writer or composer of literary productions.
AU'THOR-ESS, *n.* A female author or writer.
AU-THOR'I-TA-TIVE, *a.* Having authority; positive.                    [positively.
AU-THOR'I-TA-TIVE-LY, *ad.* With authority;
AU-THOR'I-TY, *n.* Legal or rightful power; power derived from office, character, connections, &c.; weight of testimony, precedent, &c.; government, or the body exercising power, the last chiefly in the plural.—Syn. Force; rule; sway; command; dominion; control; influence; warrant.                    [thority.
AU-THOR-I-ZA'TION, *n.* Establishment by auAU'THOR-IZE, *v. t.* To give authority for; to justify.
AU'THOR-SHIP, *n.* The state of being an author.
AU-TO-BI-OG'RA-PHER, *n.* One who writes a life of himself.
AU-TO-BI-O-GRAPH'IC-AL, *a.* Pertaining to, or containing autobiography.
AU-TO-BI-OG'RA-PHY, *n.* A memoir or biography of a person written by himself.
AU-TOC'RA-CY, *n.* Supreme independent power; self-rule.
AU'TO-CRAT, *n.* An absolute sovereign.
AU-TO-CRAT'IC,} *a.* Absolute; independent
AU-TO-CRAT'IC-AL,} in power.
AU'TO-DA-FE' (aw′to-da-fā′), *n.* [Sp.] The punishment of a heretic by burning; also the sentence then read.                    [an original manuscript.
AU'TO-GRAPH, *n.* A person's own handwriting;
AU-TO-GRAPH'IC, *a.* Consisting in, or pertaining to one's own handwriting.
AU-TOG'RA-PHY, *n.* A person's own writing; a process in lithography for transferring writing.
AU-TO-MAT'IC, *a.* Belonging to an automaton; self-moving; acting involuntarily.
AU-TOM'A-TON, *n.; pl.* Automata, or Automatons. A machine moved by interior machinery which imitates the actions of men or animals; any self-moving machine.
AU'TOP-SY, *n.* Ocular demonstration.

Digitized by Google                    Original from                    HARVARD UNIVERSITY

Case 1:22-cr-00015-APM   Document 429   Filed 12/22/22   Page 35 of 69

present use or for an exigency; something withheld from disclosure; habit of keeping thoughts or feelings to one's self; caution in behavior; reservation; exception; backwardness. *In reserve*, in store.

RE-SERVE', *v. t.* To keep back or in one's own power; to retain in store for other or future use.—Syn. To withhold; retain; keep.

RE-SERV'ED' (re-zervd'), *a.* Backward in conversation; not free; cold.

RE-SERV'ED-LY, *ad.* With reserve; cautiously.

RE-SERV'ED-NESS, *n.* Want of frankness; backwardness.

RES-E-VOIR' (rez-er-vwor'), *n.* [*Fr.*] A place where something is kept in store, as water for fountains or other uses; a cistern; a basin.

RE-SET', *v. t.* To set again, as a jewel or a plant.

RE-SET'TLE, *v. t. or v. i.* To settle a second time.

RE-SET'TLE-MENT, *n.* Act of composing or settling again; the state of settling or subsiding again; a second settlement in the ministry.

RE-SHIP', *v. t.* To ship what has been imported.

RE-SHIP'MENT, *n.* Re-exportation; the act of shipping a second time; that which is reshipped.

RE-SIDE' (-zīde'), *v. i.* *Literally*, to settle, as in a seat; hence, to have a settled abode for some time or permanently.—Syn. To dwell; abide; sojourn.

RES'I-DENCE, | *n.* A place of abode; abode;
RES'I-DEN-CY,| the act of abiding or dwelling in a place for some continuance of time.

RES'I-DENT, *a.* Having an abode in a place for a continuance of time, but not definite; dwelling; living.

RES'I-DENT, *n.* One who dwells or resides in a place for some time; a public minister at a foreign court.

RES-I-DEN'TIAL (-dēn'shal), *a.* Residing.

RES-I-DEN'TIA-RY, *a.* Having residence; *n.* an ecclesiastic who keeps a certain residence.

RE-SID'U-AL (-zid'yu-al), *a.* Left after a part is taken.

RE-SID'U-A-RY, *a.* Pertaining to the residue or part remaining. A *residuary legatee*, the legatee to whom is bequeathed the part of an estate which remains after the debts and legacies are paid.

RES'I-DUE (rēz'e-dū), *n.* Remainder; that which is left.

RE-SID'U-UM, *n.* Residue; that which remains, as after some process in chemistry or the arts.

RE-SIGN' (re-zīne'), *v. t.* To give up in a formal manner, as an office or commission; to yield or submit.—Syn. To relinquish.—To *resign* (from *re* and *signo*) is to give up, as if breaking a seal and yielding all it had secured; hence, it marks a formal and deliberate surrender. To *relinquish* is less formal, but always implies that the thing given up has been long an object of pursuit, and, usually, that it has been prized and desired.

RE-SIGN' (-sīne), *v. t.* To sign again.

RES-IG-NA'TION, *n.* A resigning or formal giving up, as a claim or office; quiet submission to the will of Providence; unresisting acquiescence; surrender; relinquishment. *See* PATIENCE.

RE-SIGN'ED-LY, *ad.* With submission.

RE-SIL'I-ENCE, | *n.* A leaping back or rebound-
RE-SIL'I-EN-CY,| ing; recoil, as the *resilience* of a ball.

RE-SIL'I-ENT (-sīl'e-ent), *a.* Leaping back; rebounding.

RES-I-LI"TION (-lish'un), *n.* A springing back.

RES'IN (rēz'in), *n.* An inflammable substance which exudes from trees and becomes hard.

RES-IN-IF'ER-OUS, *a.* Producing resin.

RES'IN-OUS (rēz'in-us), *a.* Containing or like resin.

RE-SIST' (-zist'), *v. t.* *Literally*, to stand against; hence, to act in opposition to; to endeavor to

counteract, defeat, or frustrate.—Syn. To withstand; oppose.

RE-SIST'ANCE (-zist'-), *n.* Act of resisting; quality of not yielding to a force, or of opposing the action or passage of any thing; opposition.

RE-SIST'ANT, *n.* He or that which resists.

RE-SIST-I-BIL'I-TY, *n.* The quality of resisting.

RE-SIST'I-BLE (-zist'-), *a.* That may be resisted.

RE-SIST'IVE (-zist'-), *a.* Having power to resist.

RE-SIST'LESS (-zist'-), *a.* That can not be withstood; irresistible; that can not resist; helpless.

RE-SIST'LESS-NESS, *n.* State of being irresistible.

RES'O-LU-BLE (rēz'-), *a.* That may be dissolved; resolvable.

RES'O-LUTE (rēz'-), *a.* Firm to one's purpose; constant in pursuing a purpose.—Syn. Bold; firm; determined; steady.

RES'O-LUTE-LY, *ad.* With steady courage or perseverance; boldly; firmly; steadily.

RES'O-LUTE-NESS, *n.* Fixed determination or purpose; unshaken firmness.

RES-O-LU'TION, *n.* The act of resolving or process of analyzing or unfolding something complex or difficult, as of a problem or a compound; determination of mind; fixed purpose; formal declaration passed by a public body or offered for determination.—Syn. Firmness; constancy; *determination*, which see.

RE-SOLV'A-BLE (-zŏlv'a-bl), *a.* That may be resolved.

RE-SOLVE' (-zŏlv'), *v. t. or v. i.* To separate things combined or near together; to unfold or disentangle any thing difficult or complex; to clear of doubt; to analyze; to dissolve; to determine in mind; to determine by resolution or vote; to settle in an opinion.

RE-SOLVE' (-zŏlv'), *n.* A resolution; determination.

RE-SOLV'ED-NESS (-zŏlv'ed-ness), *n.* Fixedness of purpose.

RE-SOLV'ENT (-zŏlv'-), *n.* That which causes solution; in *medicine*, that which has power to prevent the suppuration of humors.

RE-SOLV'ER (-zŏlv'-), *n.* One that resolves or forms a firm purpose.

RES'O-NANCE, *n.* A returning of sound; reverberation.

RES'O-NANT, *a.* Resounding; returning sound.

RE-SORB'ENT, *a.* Swallowing up; imbibing.

RE-SORT' (re-zŏrt'), *v. i.* To have recourse; to apply; to repair.

RE-SORT' (re-zŏrt'), *n.* Act of going or having recourse; place of habitual assembling; concourse; act of visiting. *Last resort*, ultimate means of relief.

RE-SORT'ER, *n.* One that resorts or frequents.

RE-SOUND' (re-zound'), *v. t.* To send back sound; to echo; to sound; to celebrate or praise with the voice or instruments; to spread the fame of; *v. i.* to be echoed; to be sent back, as sound; to be much and loudly mentioned; to reverberate.

RE-SOUND', *v. t.* To sound again.

RE-SOURCE' (-sōrce'), *n.* Source of aid or support; an expedient to which a person may resort for aid. *Resources*, in the plural, pecuniary means; funds; means of raising money or supplies.

RE-SPECT', *v. t.* To regard or have regard or relation to; to view with some degree of reverence.—Syn. To esteem; honor; revere.

RE-SPECT', *n.* Regard to worth; esteem; honor. In respect to (not *of*) is now the expression used.—Syn. Regard.—The phrases *in respect to* and *in regard to* may, in most or all cases, be interchanged for the sake of variety. Some have endeavored to introduce the expression "in that *regard*," corresponding to "in that *respect*," but this has not been sanctioned by general usage. *See also* DEFERENCE.

Digitized by Google

Original from
HARVARD UNIVERSITY



**From:** Jonathan Crisp <jcrisp@crisplegal.com>
**Sent:** Tuesday, November 15, 2022 5:32 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>
**Cc:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
**Subject:** Watkins law abidingness

**CAUTION - EXTERNAL:**

Mr. Alpert,

Kindly forward this instruction/research to Judge Mehta.

Thank you,
Jonathan Crisp

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

<u>Law Abiding Character:</u>

**You have heard** *(reputation)(opinion)(reputation and opinion)* **evidence about whether the defendant has a character trait for** *(name trait, such as truthfulness, peacefulness, honesty, being a law-abiding citizen, etc.).*

**You should consider this character evidence together with and in the same way as all the other evidence in the case in deciding whether the government has proved the charge***(s)* **beyond a reasonable doubt.**

▼Comment

*See* Sixth Circuit § 7.09, Seventh Circuit § 3.06, and Ninth Circuit § 4.4. For variations, *see* O'Malley et al., supra, § 15.15; Sand et al., supra, 5-14 and 5-15; Fifth Circuit § 1.09; Eighth Circuit § 4.03; and Eleventh Circuit § 12.

This instruction should be included in the final charge to the jury when the defendant has introduced evidence of good character under <u>Rule 404(a)(1) of the Federal Rules of Evidence.</u> *See <u>United States v. Spangler</u>, <u>838 F.2d 85, 87 (3d Cir.)</u>, cert. denied, <u>487 U.S. 1224 (1988)</u>.* Under Rule 404, the government is precluded from introducing evidence of the defendant's bad character unless the defendant first introduces evidence of good character. Rule 404(a)(2) allows a defendant to introduce evidence of a pertinent character trait to establish action in conformity therewith. Rule 405 allows character witnesses to testify either to the defendant's reputation or to their own opinions as to defendant's character. The defendant's character evidence "constitutes substantive evidence which, under certain circumstances, can raise a reasonable doubt as to his guilt, even though it does not relate to the specific criminal act of which he is accused." <u>United States v. Logan</u>, 717 F.2d 84, 88 (3d Cir. 1983)</u>. Under Rule 405, character witnesses are not permitted to testify to good acts. *See* Instruction 2.17 (Impeachment of Defendant's Character Witness).

There is disagreement concerning whether the jury should be instructed that proof of defendant's good character, standing alone, may be sufficient to create a reasonable doubt. In <u>*Edgington v. United States*, 164 U.S. 361, 364 (1896)</u>, the Court held that the trial court committed error by instructing the jury that evidence of good character played a role only when the "commission of the crime was doubtful" and further noted that evidence of good character could raise a reasonable doubt. <u>*Id.* at 366</u>; *see also <u>Michelson v. United States</u>, 335 U.S. 469, 476 (1948)*. However, the Court has never held that the jury must be instructed that character evidence may raise a reasonable doubt, although *Michelson* includes dictum to that effect. <u>355 U.S. at 476</u>. The views of the various circuits range from the position that the defendant is entitled to the instruction to the view that the instruction is improper. *See <u>Spangler v. United States</u>, 487 U.S. 1224 (1988)* (White, J., dissenting from denial of certiorari) (summarizing division of authority). In <u>*United States v. Spangler*, 838 F.2d 85 (3d Cir.)</u>, *cert. denied*, <u>487 U.S. 1224 (1988)</u>, the Third Circuit held that the trial court may decline to give the "standing alone" instruction provided the court gives an instruction that "calls the jury's attention to its duty to take character evidence into account with all of the other evidence in deciding whether the government has proved its charge beyond a reasonable doubt." <u>*Id.* at 87</u>.

Most recently, the Third Circuit addressed the character evidence instruction in a non-precedential opinion, *United States v. Long Fei Lin*, 104 F. App'x. 241 (3d Cir. 2004). The court stated that *Spangler* is dispositive on the question of the "standing alone" instruction and held that the following instruction, which "largely mirrored" the instruction approved in *Spangler*, was not clearly erroneous:

You have heard testimony that a defendant has a good reputation in his community for being honest and law-abiding. You may consider such evidence, along with all other evidence in the case, in reaching your verdict. Evaluate such character evidence, along with all of the other evidence in this case, in deciding whether the government has proved the crime charged beyond a reasonable doubt.

*See also United States v. Morrow*, 351 F. App'x. 649, 651 (3d Cir. 2009) (non-precedential) (holding defendant not entitled to instruction that character evidence alone was sufficient to create reasonable doubt).

(Revised 11/2010)



**From:** fischer and putzi fischer <fischerandputzi@hotmail.com>
**Sent:** Tuesday, November 15, 2022 9:13 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jlbrightlaw <jlbrightlaw@gmail.com>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** Re: Rhodes: Updated Jury Instructions

**CAUTION - EXTERNAL:**

Judge Mehta:

As I argued in court this afternoon, the jury instruction for Count 13, which charges Mr. Caldwell with evidence tampering pursuant to 18 U.S.C. Sec. 1512(c)(1), should be changed to specify that in order to convict Caldwell, the jury must find that the items specified in the Indictment must have been targeted.  In reviewing the Indictment, Counts 7-12 allege violations against the other defendants of Section 1512(c)(1) based upon the more general wording regarding tampering with "certain media, files, and communications that showed his involvement in the conduct herein."  By contrast, the Grand Jury specifically alleged that Caldwell sent a "video" on November 8, 2022, and then subsequently unsent that same "video."  Second, the Grand Jury charged that Caldwell "deleted" from his Facebook account "photographs that documented his attack on the Capitol on January 6."  Respectfully, *Stirone v. United States* is controlling on this issue.

In *Stirone*, the Supreme Court reversed a conviction wherein the trial court authorized a jury instruction that would have allowed the Government to convict the defendant of Hobbs Act extortion based upon interstate shipments of steel, whereas the interstate commerce nexus alleged in the indictment was interference with shipments of sand:

"The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete." Stirone v. United States, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960)

Thank you for your consideration.

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
(443) 603-3363

---

**From:** David Alpert <David_Alpert@dcd.uscourts.gov>
**Sent:** Tuesday, November 15, 2022 7:40 PM
**To:** Jlbrightlaw <jlbrightlaw@gmail.com>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; fischer and putzi fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** Rhodes: Updated Jury Instructions

Good evening, Counsel:

Attached please find the latest version of the jury instructions capturing today's edits and flagging some of what is left to be resolved.

Please let me know if you have any questions.

Thanks,
David

David Alpert
Law Clerk to the Honorable Amit Mehta
United States District Court for the District of Columbia
(202) 354-3206

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**From:** Stanley Woodward <stanley@brandwoodwardlaw.com>
**Sent:** Tuesday, November 15, 2022 1:46 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>
**Cc:** fischer and putzi fischer <fischerandputzi@hotmail.com>; Nestler, Jeffrey (USADC)
<Jeffrey.Nestler@usdoj.gov>; Lee Bright <jlbright@gmail.com>; edwardtarpley_att.net
<edwardtarpley@att.net>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC)
<Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>;
jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC)
<Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo,
Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>;
Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** Re: Rhodes Draft Jury Instructions

**CAUTION - EXTERNAL:**

Chambers and counsel, attached please find the two additional instructions proposed by defense
counsel.

Thanks,

Stanley

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution
when opening attachments or clicking on links.

Sent from my iPad

On Nov 14, 2022, at 7:04 PM, David Alpert <David_Alpert@dcd.uscourts.gov> wrote:

Good evening, Counsel:

Attached please find the near-final draft of the jury instructions.  These have been
fleshed out with standard Redbook instructions and reordered per the court's standard
practice.  There are a number of comments in the document for your review and/or
response.  Please let me know if you have any questions.

Thanks,
David

David Alpert
Law Clerk to the Honorable Amit Mehta
United States District Court for the District of Columbia
(202) 354-3206

<Completed Jury Instructions - 11-14-22_v2.docx>

### 6.18.371H    Conspiracy – Single or Multiple Conspiracies

The indictment charges that *(The Defendants)* and the other alleged co-conspirators were all members of one single conspiracy *[to oppose by force the lawful transfer of Presidential power following the 2020 U.S. Presidential election]. (The Defendants)* have argued that there were really two *[or more]* separate conspiracies *[as between one or more of the alleged conspiracies]*.  Whether a single conspiracy or multiple conspiracies exist is a question of fact that you must decide.

In order to find *(the Defendants)* guilty of the conspiracy charged in the indictment, you must find that the government proved beyond a reasonable doubt that *(each Defendant)* was a member of that conspiracy.  If the government failed to prove that *(each Defendant)* was a member of the conspiracy charged in the indictment, then you must find *(that Defendant)* not guilty of conspiracy, even if you find that there were multiple conspiracies and that *(that Defendant)* was a member of a separate conspiracy other than the one charged.  However, proof that *(a Defendant)* was a member of some other conspiracy would not prevent you from also finding *(him) (her)* guilty of the conspiracy charged in the indictment, if you find that the government proved beyond a reasonable doubt that *(that Defendant)* was a member of the conspiracy charged.

In deciding whether there was one single conspiracy or more than one conspiracy, you should concentrate on the nature of the agreement proved by the evidence.  To prove a single conspiracy, the government must prove beyond a reasonable doubt that each of the alleged members or conspirators agreed to

participate in what *(he) (she)* knew or should have known was a single group activity directed toward *(a)* common objective*(s)*. The government must prove that there was a single agreement on *(an)* overall objective*(s)*.

Multiple conspiracies are separate agreements operating independently of each other. However, a finding of a master conspiracy that includes other, sub-schemes does not constitute a finding of multiple, unrelated conspiracies. A single conspiracy may exist when there is a continuing core agreement that attracts different members at different times and which involves different sub-groups committing acts in furtherance of an overall objective.

In determining whether a series of events constitutes a single conspiracy or separate and unrelated conspiracies, you should consider whether there was a common goal among the alleged conspirators; whether there existed common or similar methods; whether and to what extent alleged participants overlapped in their various dealings; whether and to what extent the activities of the alleged conspirators were related and interdependent; how helpful each alleged coconspirator's contributions were to the goals of the others; and whether the scheme contemplated a continuing objective that would not be achieved without the ongoing cooperation of the conspirators.

A single conspiracy may exist even if all the members did not know each other, or never sat down together, or did not know what roles all the other members would play. A single conspiracy may exist even if different members joined at different times, or the membership of the conspiracy changed over time. Similarly,

there may be a single conspiracy even though there were different sub-groups

operating in different places, or many acts or transactions committed over a long

period of time.  You may consider these things in deciding whether there was one

single conspiracy or more than one conspiracy, but they are not necessarily

controlling.  What is controlling is whether the government has proved beyond a

reasonable doubt that there was one overall agreement on *(a)* common objective*(s)*.

DEFENSE STATEMENT OF THE CASE

The Defendants in this case have been accused of conspiring to oppose by force the lawful transfer of Presidential power following the 2020 U.S. Presidential election.

The Defendants specifically refute that the Government has proven beyond any reasonable doubt the existence of any agreement to oppose by force the authority of the Government of the United States; to prevent, hinder, or delay the execution of any law of the United States by force; to obstruct an official proceeding, or to prevent a Member of Congress from discharging a duty as a Member of Congress or to induce a Member of Congress to leave the place where the Member's duties are required to be performed.

To the extent the Government has proven any planning occurred in advance of the events of January 6, 2021, the Defense theory of the case is that the Defendants were present in Washington, DC generally to provide security and with a specific plan to provide personal security details for various speakers and other attendees at the events being held that day.

In addition, Mr. Rhodes submits that the evidence has shown he and others engaged in planning for the purpose of responding to then President Trump's potential invocation of the Insurrection Act.

If you find that any evidence of planning by the Defendants was for providing security and/or in preparation for then President Trump's invocation of the Insurrection Act *and not* in furtherance of the agreements as alleged by the Government, you must acquit as to Counts One, Two, and Four of the Indictment.

In addition, each of the Defendants have separately been accused of obstructing or impeding an "official proceeding," as that term has been defined by my instructions. Each of the Defendants dispute that the Government has proven beyond a reasonable doubt any individual Defendant's intent with respect to their actions on January 6, 2021. Additionally, the Defendants refute that the Government has proven beyond any reasonable doubt that their actions in fact caused the obstructing and/or impeding of any official proceeding beyond any reasonable doubt. If you find the Government has failed to prove beyond a reasonable doubt the Defendants' intent, or that their actions caused the obstruction and/or impeding of an official proceeding consistent with my instructions you must acquit the Defendants as to Count Three of the Indictment.

Each of the Defendants has also been accused of willfully injuring, damaging, or destroying property of the United States, which they respectfully refute the Government having proved beyond any reasonable doubt. Specifically, the Defendants refute that the Government presented any evidence that the Defendants injured, damaged or destroyed any property, or that the Government has proven beyond any reasonable doubt that the Defendants attempted, aided, or abetted the destruction of any property. If you agree, you must acquit as to Count Five of the Indictment.

In addition, four of the five Defendants have been accused of tampering with documents or proceedings, specifically evidence of conduct being investigated by the grand jury. Mr. Rhodes

has been accused of encouraging others to delete media files, and communications that showed their involvement in conduct being investigated by a grand jury, while Messrs. Meggs, Harrelson, and Caldwell have been accused of deleting records from their mobile phones or their facebook accounts.  The Defendants refute that the Government has proven beyond any reasonable doubt these allegations.  Messrs. Meggs, Harrelson, and Caldwell further refute that to the extent you find the Government has proven any records were deleted, that any such deletion was not done corruptly.  If you find that the Government has failed to prove beyond any reasonable doubt these allegations, you must acquit as to Counts



Troy (USADC) <Troy.Edwards@usdoj.gov>
**Sent:** Tuesday, November 15, 2022 11:36 PM
**To:** fischer and putzi fischer <fischerandputzi@hotmail.com>; David Alpert <David_Alpert@dcd.uscourts.gov>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>; Lee Bright <jlbright@gmail.com>; phillip linder <attorneylinder@gmail.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** RE: Rhodes: Updated Jury Instructions

**CAUTION - EXTERNAL:**

Chambers and counsel,

The government emails with responses to certain issues that arose during today's conference and in light of the Court's latest version of the jury instructions circulated to the parties.

\*\*\*

**State of Mind Instruction:** Previously, the parties jointly submitted an agreed-upon instruction and supplement regarding State of Mind, pursuant to Redbook Instruction 3.101. Two sentences appear to have been dropped from the latest version: First, the parties agreed to include the following sentence at the start of the second paragraph: "You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts s/he intentionally did or intentionally did not do." Second, the parties agreed to add a third paragraph at the end: "While a defendant must act with the intent as I describe below for each charged crime, this need not be the defendant's sole purpose. A defendant's unlawful intent is not negated by the simultaneous presence of another purpose for the defendant's conduct." (*United States v. Erik Herrera*, 21-cr-619-BAH, ECF No. 65 (D.D.C. Aug. 18, 2022) (dual-purpose intent)). The government requests that these both be readded.

1

**Unanimity Instruction for Theories of Liability:** The Court suggested it was inclined to require the jury to be unanimous as to which theory of liability they may find a defendant guilty for any particular charge. Respectfully, that is not required. For authority:

*United States v. Ferguson*, 676 F.3d 260, 279-80 (2d Cir. 2011): The jurors were presented with four theories of liability: principal, aiding and abetting, willfully causing, and *Pinkerton*. The district court denied the defendants' request for a "specific unanimity" instruction, which would have ensured that, as to each defendant, the jurors unanimously agreed on the theory for conviction. . . . In dicta, we have suggested that a jury is unanimous even if some jurors convicted on a theory of principal liability and others on aiding and abetting. *United States v. Peterson*, 768 F.2d 64, 67 (2d Cir.1985); *accord, e.g., United States v. Garcia*, 400 F.3d 816, 820 (9th Cir.2005) ("It does not matter whether some jurors found that [the defendant] performed these acts himself, and others that he intended to help someone else who did, because either way, [his] liability is the same...."). Just as there is "no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict," neither must it agree on "alternative mental states." *Schad v. Arizona*, 501 U.S. 624, 631–32, (1991) (internal quotation marks omitted) (holding that specific unanimity not required for theories of Arizona first-degree murder—premeditated and felony murder). Nothing limits the *Peterson* analysis to principal versus aiding-and-abetting liability. The four theories are compatible—they are zones on a continuum of awareness, all of which support criminal liability. This view is consistent with case law maintaining distinctions among mental states where different mental states form elements of different offenses.

*United States v. Combs*, 253 F. App'x 532, 534 (6th Cir. 2007): Jurors are not required to agree upon the specific means or act by which a crime was committed. *Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion). Moreover, a specific unanimity instruction is not needed simply because the government presents multiple factual scenarios and theories of liability to prove the commission of a single offense. *United States v. Washington*, 127 F.3d 510, 513–14 (6th Cir.1997).

The Court's citation to *United States v. Adams*, 200 F. Supp. 3d 141 (D.D.C. 2016), is not to the contrary. There, the court concluded that a means-unanimity instruction was not necessary. The court did not address the specific question of whether *theories of liability* require a unanimity instruction. In line with the *Adams* ruling, the Court here has rejected the defendants' requested means-unanimity instruction regarding which law the defendants hindered by force under 18 U.S.C. 2384. The caselaw cited above makes clear that the Court should likewise not require a unanimity instruction for theories of liability, even if those theories of liability form slightly different elements. *See, e.g., Ferguson*, 676 F.3d at 279 n.18 ("The defendants argue that *Peterson* cannot be extended because the four theories of liability have clearly different elements that the jury must find. But even *Pinkerton* liability—which requires the jury to find certain facts such as participation in the conspiracy—is premised on a mental state. *See Pinkerton*, 328 U.S. at 647 ("The criminal intent to do the act is established by the formation of the conspiracy."); *United States v. Thirion*, 813 F.2d 146, 153 (8th Cir.1987) ("In the *Pinkerton* analysis.... [t]he mens rea necessary to transform the act into a criminal offense is evidenced by the defendant's participation in the conspiracy."). All four theories are thus various mental states in which the same crime may be committed; they may differ in "brute facts" underlying the mental state element, but none requires proof of other "factual elements" of the crime (which must be found unanimously by the jury). *Richardson v. United States*, 526 U.S. 813, 817 (1999); *cf. United States v. Sanchez*, 917 F.2d 607, 612 (1st Cir.1990) ("As with the 'aiding and abetting' theory, vicarious co-conspirator liability under Pinkerton is not in the nature of a separate offense.")).

**Jury Instruction for Thomas Caldwell's 1512(c)(1) Charge:** The government opposes Caldwell's position that the jury instructions ought to include the specific messages alleged in the indictment. As written, the indictment provided notice to Mr. Caldwell that he was alleged to have deleted records from the Facebook platform from in or around January 6 to January 19, 2021. At trial, the government has presented evidence of just that: Mr. Caldwell "unsent" or deleted over 175 Facebook messages—many of which he originally wrote during the alleged conspiracy timeline—in or around January 14, 2021. These included the specific messages

alleged in the indictment. Caldwell's reliance on *Stirone v. United States*, 361 U.S. 212, 217 (1960), is misplaced. In short, the Court is not faced with "steel vs. sand," but rather "steel and specific types of steel." The jury instruction as currently written correctly states the law under 18 USC 1512(c)(1), and specifically highlights that Caldwell deleted Facebook records the jury must find to find Caldwell guilty. That is sufficient.

**Multiple Conspiracy Instruction:** The government opposes the defendants' request for a multiple conspiracies instruction. First, it is not clear what the purpose of the instruction is, what other conspiracies the defendants are alleging, who the participants are in these various conspiracies, and why they are mutually exclusive with a finding of guilt (especially in light of the dual purpose instruction the parties have agreed upon). Second, the defendants have failed to demonstrate their entitlement to a multiple conspiracies instruction for Count One, which their proposal appears to encompass. The evidence adduced at trial is nothing like the eight separate and independent groups with no interconnections that were operating in, for example, *Kotteakos v. United States*, 328 U.S. 750, 754-55 (1946). Third, this proposed instruction poses a significant potential for jury confusion in a case where multiple conspiracy are, in fact, alleged. Other instructions sufficiently delineate what the jury must find to convict someone of conspiracy and how to keep separate the three charged conspiracies and their respective elements.

**Defense Theory of the Case Instruction:** Finally, portions of the defense's proposed theory of the case instruction are unnecessary. The government does not object to the first four paragraphs. The government does object to the final four paragraphs, as they both inaccurately state the law and instruct the jury to acquit in certain circumstances which is not the province of the defense's theory of the case instruction. Those principles of law are captured elsewhere in the Court's instructions.

Troy A. Edwards, Jr.
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
(202) 258-1251

**From:** fischer and putzi fischer <fischerandputzi@hotmail.com>
**Sent:** Tuesday, November 15, 2022 9:13 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jlbrightlaw <jlbrightlaw@gmail.com>; Nestler, Jeffrey (USADC) <JNestler1@usa.doj.gov>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** [EXTERNAL] Re: Rhodes: Updated Jury Instructions

Judge Mehta:

As I argued in court this afternoon, the jury instruction for Count 13, which charges Mr. Caldwell with evidence tampering pursuant to 18 U.S.C. Sec. 1512(c)(1), should be changed to specify that in order to convict Caldwell, the jury must find that the items specified in the Indictment must have been targeted. In reviewing the Indictment, Counts 7-12 allege violations against the other defendants of Section 1512(c)(1) based upon the more general wording regarding tampering with "certain media, files, and communications that showed his involvement in the conduct herein." By contrast, the Grand Jury specifically alleged that Caldwell sent a "video" on November 8, 2022, and then subsequently unsent that same "video." Second, the Grand Jury

charged that Caldwell "deleted" from his Facebook account "photographs that documented his attack on the Capitol on January 6."  Respectfully, *Stirone v. United States* is controlling on this issue.

In *Stirone*, the Supreme Court reversed a conviction wherein the trial court authorized a jury instruction that would have allowed the Government to convict the defendant of Hobbs Act extortion based upon interstate shipments of steel, whereas the interstate commerce nexus alleged in the indictment was interference with shipments of sand:

"The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete." Stirone v. United States, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960)

Thank you for your consideration.

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
(443) 603-3363

**From:** David Alpert <David_Alpert@dcd.uscourts.gov>
**Sent:** Tuesday, November 15, 2022 7:40 PM
**To:** Jlbrightlaw <jlbrightlaw@gmail.com>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; fischer and putzi fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** Rhodes: Updated Jury Instructions

Good evening, Counsel:

Attached please find the latest version of the jury instructions capturing today's edits and flagging some of what is left to be resolved.

Please let me know if you have any questions.

Thanks,
David

David Alpert
Law Clerk to the Honorable Amit Mehta

United States District Court for the District of Columbia
(202) 354-3206

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



From: fischer and putzi fischer <fischerandputzi@hotmail.com>
Sent: Wednesday, November 16, 2022 12:24 AM
To: Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>; Nestler, Jeffrey
(USADC) <Jeffrey.Nestler@usdoj.gov>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward
<stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Brad Geyer
<bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC)
<Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM)
<Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>; Lee Bright <jlbright@gmail.com>;
phillip linder <attorneylinder@gmail.com>
Cc: Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
Subject: Re: Rhodes: Updated Jury Instructions

**CAUTION - EXTERNAL:**

Judge Mehta:  I have added some case cites below regarding my argument as to proper wording of the jury
instruction for Count 13.  Thank you for your consideration.


David W. Fischer, Esq.


Defendants argue on appeal that the Government charged them with committing their offense in a specific
manner and that without the requested jury instruction, the indictment was impermissibly broadened to allow
the jury to convict them based on allegations that were not in the indictment. We disagree *because we do not
think this is a case where the indictment charged commission of an offense in one specific manner but the
district court permitted a conviction based on another, entirely different manner*. *See, e.g., Stirone v. United
States*.
United States v. McMillan, 600 F.3d 434, 451 (5th Cir. 2010)

In accordance with the Supreme Court's decision in *Stirone v. United States*, when the government chooses to
specifically charge the manner in which the defendant's statement is false, the government should be required to
prove that it is untruthful for that reason.

1

<u>United States v. Hoover</u>, 467 F.3d 496, 502 (5th Cir. 2006)

"We have interpreted *Stirone* many times. When the indictment alleges a particular set of facts as forming the basis for the defendant's violation of a statute, but the trial court allows evidence of other facts not alleged in the indictment to form the basis of the jury's guilty verdict, this court finds a constructive amendment."
<u>United States v. Lockhart</u>, 844 F.3d 501, 514 (5th Cir. 2016)

Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury.
<u>United States v. Hitt</u>, 346 U.S. App. D.C. 16, 249 F.3d 1010, 1016 (2001)

---

**From:** Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>
**Sent:** Tuesday, November 15, 2022 11:36 PM
**To:** fischer and putzi fischer <fischerandputzi@hotmail.com>; David Alpert <David_Alpert@dcd.uscourts.gov>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>; Lee Bright <jlbright@gmail.com>; phillip linder <attorneylinder@gmail.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
**Subject:** RE: Rhodes: Updated Jury Instructions

Chambers and counsel,

The government emails with responses to certain issues that arose during today's conference and in light of the Court's latest version of the jury instructions circulated to the parties.

\*\*\*

**State of Mind Instruction:** Previously, the parties jointly submitted an agreed-upon instruction and supplement regarding State of Mind, pursuant to Redbook Instruction 3.101.  Two sentences appear to have been dropped from the latest version: First, the parties agreed to include the following sentence at the start of the second paragraph: "You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts s/he intentionally did or intentionally did not do."  Second, the parties agreed to add a third paragraph at the end: "While a defendant must act with the intent as I describe below for each charged crime, this need not be the defendant's sole purpose.  A defendant's unlawful intent is not negated by the simultaneous presence of another purpose for the defendant's conduct." (*United States v. Erik Herrera*, 21-cr-619-BAH, ECF No. 65 (D.D.C. Aug. 18, 2022) (dual-purpose intent)).  The government requests that these both be readded.

**Unanimity Instruction for Theories of Liability:** The Court suggested it was inclined to require the jury to be unanimous as to which theory of liability they may find a defendant guilty for any particular charge.  Respectfully, that is not required.  For authority:

*United States v. Ferguson*, 676 F.3d 260, 279-80 (2d Cir. 2011): The jurors were presented with four theories of liability: principal, aiding and abetting, willfully causing, and *Pinkerton*.  The district court denied the defendants' request for a "specific unanimity" instruction, which would have ensured that, as to each defendant, the jurors unanimously agreed on the theory for conviction. . . . In dicta, we have suggested that a jury is unanimous even if some jurors convicted on a theory of principal liability and others on aiding and abetting.
*United States v. Peterson*, 768 F.2d 64, 67 (2d Cir.1985); *accord, e.g., United States v. Garcia*, 400 F.3d 816,



(USADC) <Jeffrey.Nestler@usdoj.gov>
Sent: Wednesday, November 16, 2022 7:51 PM
To: David Alpert <David_Alpert@dcd.uscourts.gov>; Jlbrightlaw <jlbrightlaw@gmail.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
Cc: Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; William Zaremba <William_Zaremba@dcd.uscourts.gov>
Subject: RE: Rhodes: Updated Jury Instructions

**CAUTION - EXTERNAL:**

Dear chambers,

We write regarding the jury instructions.

## Page 11 – Evidence Admitted Against One Defendant Only

We agree with the Court's proposed language. We additionally propose the following sentence at the end of the instruction:

> Aside from these limited exceptions, all other evidence has been admitted against all defendants.

## Page 32 – Multiple conspiracies

We reiterate that this instruction is not warranted – and in fact is merely confusing. The D.C. Circuit has explained that a judge does not abuse his discretion in refusing to provide a multiple conspiracies instruction if the evidence does not support such an instruction because, for instance, the defendants were all part of a single conspiracy. See:

- United States v. Gatling, 96 F.3d 1511, 1525 (D.C. Cir. 1996)

1

- o The trial court did not commit plain error in not issuing a multiple conspiracy instruction. As discussed above, the evidence clearly connected Walker to both the Chicago and D.C. conspiracies and supported the single conspiracy charge. Walker maintains that the evidence also suggested multiple conspiracies. We need not determine if Walker's claim is correct, because we find that the evidence of a single conspiracy and of Walker's involvement in it was substantial, and therefore the lack of a multiple conspiracy instruction cannot be said to have affected the outcome below or to call the fairness of the trial into question. *See United States v. Debango,* 780 F.2d 81, 84 (D.C. Cir. 1986) ("failure to give multiple-conspiracy instruction was not plain error, given that the government's evidence was clearly sufficient to support a finding that appellant and his co-defendants were engaged in a single conspiracy"); *see also Tarantino,* 846 F.2d at 1403 ("in evaluating whether ... instructions constitute[ ] plain error, we may ourselves evaluate the strength or weakness of the evidence against the defendants").
- United States v. Graham, 83 F.3d 1466, 1472 (D.C. Cir. 1996)
  - o Appellants argue that the district court improperly denied their request for a jury instruction on multiple conspiracies. Our rejection of appellants' insufficiency claim does not obviate the need to address this issue, for if record evidence supports the existence of multiple conspiracies, the district court should have so instructed the jury. *See Tarantino,* 846 F.2d at 1400 ("trial court ... required to instruct on the defendant's theory of the case if supported by the evidence"); *United States v. Shorter,* 54 F.3d 1248, 1256 (7th Cir.), *cert. denied,* 516 U.S. 896, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995). To convict, the jury must find appellants guilty of the conspiracy charged in the indictment, not some other, separate conspiracy.
  - o Appellants requested the following instruction:
    - In this case, the defendants contend that the government's proof fails to show the existence of the conspiracy charged in Count I of the indictment. Rather, they claim that if an agreement to distribute cocaine base existed then there were actually several different separate and independent conspiracies with various members, constituting multiple conspiracies.
    - Proof of several separate and independent conspiracies is not necessarily proof of the conspiracy charged in the indictment, unless one or more of those conspiracies proved happens to be one of the conspiracies charged in the indictment. However, if you are satisfied that such a conspiracy existed then you must go further; you must determine who were the members of that conspiracy.
  - o The district court refused to give this instruction because it found no evidence of a "different" conspiracy from that charged in the indictment. We think the district court was correct. If the evidence had shown that all three appellants did not conspire together, but that Graham was involved in a conspiracy with Santa Cruz or that Smith was involved in another separate conspiracy with Hoyle, then appellants' proposed instruction would have been necessary. But as the district court found, there was no such evidence. Rather, the evidence showed that appellants worked together and with Hoyle and others to distribute cocaine. Appellants' suggestion that the three cliques may have actually formed three separate conspiracies, even if supported by record evidence, would not help them; the evidence showed that appellants were part of the same clique, and thus part of the conspiracy charged in the indictment.

Other circuits have similarly held the same:

- United States v. Severson, 3 F.3d 1005, 1010–11 (7th Cir. 1993)
  - o A reasonable jury could determine that Steele and Severson participated in the overarching conspiracy. *United States v. Mealy,* 851 F.2d 890, 897 (7th Cir.1988). The denial of their multiple conspiracy instruction was not reversible error.

2

- o   Defendants argue another theory to support their claim that they should have received a multiple conspiracy instruction. They claim that multiple conspiracies were their theories of defense. Despite this argument, neither defendant offered proof of separate conspiracies at trial. In addition, the defendants never specifically identified their theory of defense during the jury instruction conference with the district court. The record is not clear as to whether such a defense was argued directly to the jury or merely implied through the defendants' approach to the case. Instead, they argue that the jury could have interpreted the government's evidence as revealing multiple conspiracies. Their claim is that it was unnecessary for them to make a separate showing of multiple conspiracies because the government's evidence was all that was necessary to show multiple conspiracies. (Tr. 5–A–59)
  - o   The defendants were entitled to a "theory of defense instruction" on multiple conspiracies if: 1) the proposed instruction was a correct statement of the law; 2) the theory of defense was supported by the evidence; 3) their multiple conspiracy theory was not a part of the government charge; and 4) without the instruction they were denied a fair trial. *United States v. Casanova*, 970 F.2d 371, 375 (7th Cir.1992). Without hashing out the propriety of the defendants' "stealth" technique in presenting their defense, we can resolve this issue by deciding whether the jury instructions as a whole denied the defendants a fair trial. *United States v. Grier*, 866 F.2d 908, 932 (7th Cir.1989).
  - o   If the instructions treated the conspiracy issue fairly and adequately, we will not disturb them. *United States v. Young*, 997 F.2d 1204, 1208 (7th Cir.1993). Our review of the jury instructions reveals that they accurately reflected the law and appropriately addressed the issues raised at trial. The jury was instructed on all the essential elements of the crime charged in the indictment, and was also instructed that the evidence must be weighed against each individual defendant, and that each defendant was guilty only if the evidence proved beyond a reasonable doubt that he committed the crime. Moreover, the jury was instructed of the distinction between a buy-sell agreement and membership in the overarching conspiracy. Steele and Severson received a fair trial without a multiple conspiracy instruction.

- **United States v. Campbell**, 986 F.3d 782, 796–97 (8th Cir. 2021)
  - o   "Whether a given case involves single or multiple conspiracies depends on 'whether there was "one overall agreement" to perform various functions to achieve the objectives of the conspiracy.'" *United States v. Radtke*, 415 F.3d 826, 838 (8th Cir. 2005) (quoting *United States v. Massa*, 740 F.2d 629, 636 (8th Cir. 1984)).
  - o   To determine whether multiple conspiracies exist when a single large conspiracy has been charged by the government, this Court considers the totality of the circumstances, "including the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred." *United States v. McCarthy*, 97 F.3d 1562, 1571 (8th Cir. 1996) (citation omitted). "A single conspiracy may be found when the defendants share a common overall goal and the same method is used to achieve that goal, even if the actors are not always the same." *United States v. Gilbert*, 721 F.3d 1000, 1005 (8th Cir. 2013) (quoting *United States v. Bascope-Zurita*, 68 F.3d 1057, 1061 (8th Cir. 1995)). Additionally, "[t]he fact 'that a number of separate transactions may have been involved ... does not establish the existence of a number of separate conspiracies.' " *United States v. Spector*, 793 F.2d 932, 935 (8th Cir. 1986) (second alteration in original) (quoting *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980)).
  - o   At trial, an agent involved in the investigation testified for the government. That agent explained that he wiretapped N.S.'s phone and discovered that Junior was N.S.'s supplier. N.S. also testified for the government. During his testimony, N.S. explained that he would buy cocaine from William when he was unable to reach Junior. Although William alleges that this indicates the existence of a separate conspiracy between Junior and N.S., we disagree. Junior's distributions to N.S. occurred in the same location—Waterloo, Iowa—during the same time

period as the distributions for which William is charged. In fact, N.S.'s testimony establishes that Junior and William were interchangeable: N.S. could get the same product from William as he could from Junior when Junior was unavailable. And although William's identity as Junior's brother is not dispositive to our analysis, his familial relationship to Junior—a co-defendant in this case—is something we may consider. McCarthy, 97 F.3d at 1571.

○ Because the location and time of the transactions between N.S. and Junior—as well as the identity of the persons involved and the product being sold—support the government's theory of a single conspiracy, we find that the district court did not err in denying a multiple conspiracies instruction.

Here, the defense has still not proffered the *other* conspiracy. A conspiracy, of course, requires an illegal objective. The defense has not yet proffered what any other alleged agreement actually intended to do. And we do not believe the evidence supports a finding that another conspiracy existed. "A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for other participants, even if he is ignorant of their precise identities. When the conspirators form a chain, each is likely to know that other conspirators are required." *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988). Furthermore, a single conspiracy exists "if the evidence establishes that each conspirator had the specific intent to further the common unlawful objective." *Id.* Relevant factors include (1) whether the conspirators share a common goal; (2) the degree of dependence inherent in the conspiracy; an (3) overlap of participants. *Id.* at 1393. The facts here establish such a single conspiracy. The evidence has established that the defendants and their co-conspirators formed an agreement to oppose by force the lawful transfer of power following the 2020 U.S. Presidential Election. While the conspiracy involved numerous participants, who were not all necessarily aware of each other's roles and did not all directly communicate with each other, the evidence established that each defendant knew of the existence of the larger conspiracy and the necessity for other participants. Among other evidence, this is clear from the Signal chats and GoToMeetings that were utilized to plan and coordinate the conspiracy.

The defense has articulated at best two alternate conspiracies of which they claim there is evidence: (1) a conspiracy by Defendant Caldwell and the North Carolina co-conspirators, and (2) a conspiracy involving Defendant Rhodes (with unnamed co-conspirators) to do something unspecified with the Insurrection Act. With respect to the first claimed alternate conspiracy, Defendants have failed to articulate what unlawful purpose Defendant Caldwell and his North Carolina co-conspirators agreed to achieve. Without that, such a mere partnership of Caldwell and the North Carolinians would not provide an evidentiary basis for an alternate conspiracy. If, on the other hand, that Caldwell-NC agreement had the goals of opposing the transfer of power by force or stopping the Certification or interfering with members of Congress on January 6, then this is the same conspiracy alleged in the indictment. The other four defendants can argue that they were not part of this conspiracy, but that is a government-failed-to-meet-the-burden-of-proof argument, and not a multiple conspiracies argument. With respect to the articulated Rhodes conspiracy, Defendant Rhodes' proposal appears to be that Rhodes planned with others for President Trump to invoke the Insurrection Act. That concept is already part of the evidence of the conspiracy alleged in this case. Ultimately, the government's theory is that Defendant Rhodes *and all four co-defendants* ultimately agreed to oppose by force the lawful transfer of presidential power *regardless* of whether President Trump invoked the Insurrection Act.

Accordingly, the evidence adduced at this trial is nothing like the eight separate and independent groups with no interconnections that were operating in, for example, *Kotteakos v. United States*, 328 U.S. 750, 754-55 (1946).

The pattern instruction, and indeed even *Tarantino*, are premised on a single conspiracy being charged. But here, there are three conspiracy counts. So, providing a multiple conspiracies instruction is inherently fraught with the danger that the jury will somehow misconstrue its role in evaluating the different conspiracy counts.

If the Court overrules our objection, we respectfully submit that the Court should provide the following instruction, which (1) accounts for the multiple conspiracy counts in this case and (2) is drawn from the Third Circuit pattern instruction and *Tarantino*:

> I have just instructed you on the three conspiracy counts alleged in the indictment: Counts One, Two, and Four. Proof that a defendant was a member of a separate, uncharged conspiracy would not prevent you from also finding that defendant guilty of the conspiracy counts alleged in Counts One, Two, or Four. However, if you find that a defendant was a *only* member of a separate, uncharged conspiracy – but *not* any of the three conspiracy counts alleged in Counts One, Two, or Four – you must acquit that defendant of the three conspiracy counts.

## Page 41 – Obstruction

To answer the Court's question:  no, we are not relying on the allegation in paragraph 146 about the FBI opening the investigation.

For the language of the charge against Caldwell, we propose the following:

> In Count Ten, Thomas Caldwell is charged with deleting from Facebook (1) certain photographs that documented his participation in the attack on the Capitol on January 6, 2021, and (2) and a message to Donovan Crowl containing a video that showed Donovan Crowl and Jessica Watkins' involvement in the conduct being investigated by the grand jury.

## Page 46 – Defense theory of the case

In several places, the defense wrote that the government must prove their guilty "beyond any reasonable doubt."  The word *any* should be changed to *a*, consistent with the phrasing in the reasonable doubt instruction itself.

Also, the Court modified the paragraph about which defendants are charged with obstruction of an official proceeding to reflect only three defendants.  But all five defendants are charged with this count, Count Three.  Only defendants Meggs, Harrelson, and Watkins are charged with destruction of property, which is the subsequent paragraph.

Thank you.

From: David Alpert <David_Alpert@dcd.uscourts.gov>
Sent: Wednesday, November 16, 2022 6:37 PM
To: Jlbrightlaw <jlbrightlaw@gmail.com>; Nestler, Jeffrey (USADC) <JNestler1@usa.doj.gov>; fischer and putzi fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <TEdwards1@usa.doj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
Cc: Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; William Zaremba <William_Zaremba@dcd.uscourts.gov>
Subject: RE: Rhodes: Updated Jury Instructions

Good evening, Counsel:

Attach please find updated jury instructions in redline.  Additionally, the court would like to begin at 8:30 a.m. tomorrow to review these instructions.  Since it is too late to inform the Marshals, would defense counsel be willing to waive the presence of Defendants at 8:30?

Thanks,
David

From: David Alpert
Sent: Tuesday, November 15, 2022 7:40 PM
To: Jlbrightlaw <jlbrightlaw@gmail.com>; Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; fischer and putzi fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
Cc: Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>
Subject: Rhodes: Updated Jury Instructions

Good evening, Counsel:

Attached please find the latest version of the jury instructions capturing today's edits and flagging some of what is left to be resolved.

Please let me know if you have any questions.

Thanks,
David

David Alpert
Law Clerk to the Honorable Amit Mehta
United States District Court for the District of Columbia
(202) 354-3206

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**From:** fischer and putzi fischer <fischerandputzi@hotmail.com>
**Sent:** Wednesday, November 16, 2022 10:02 PM
**To:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>; David Alpert <David_Alpert@dcd.uscourts.gov>; Jlbrightlaw <jlbrightlaw@gmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; William Zaremba <William_Zaremba@dcd.uscourts.gov>
**Subject:** Re: Rhodes: Updated Jury Instructions

**CAUTION - EXTERNAL:**

Judge Mehta:

Caldwell submits the following request for an instruction as to Count 10, with the highlighted area showing disagreement with the Government's proposed language:

In Count Ten, Thomas Caldwell is charged with deleting from Facebook (1) certain photographs that documented his participation in the attack on the Capitol on January 6, 2021, and (2) and that on January 8, 2021, in response to a request from Donovan Crowl for a video, sent the video, and subsequently unsent the message containing the video.

Below is the Government's requested language for comparison:

> In Count Ten, Thomas Caldwell is charged with deleting from Facebook (1) certain photographs that documented his participation in the attack on the Capitol on January 6, 2021, and (2) **and a message to Donovan Crowl containing a video that showed Donovan Crowl and Jessica Watkins' involvement in the conduct being investigated by the grand jury**.

1

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
(443) 603-3363

**From:** Nestler, Jeffrey (USADC) <Jeffrey.Nestler@usdoj.gov>
**Sent:** Wednesday, November 16, 2022 7:50 PM
**To:** David Alpert <David_Alpert@dcd.uscourts.gov>; Jlbrightlaw <jlbrightlaw@gmail.com>; fischer and putzi fischer <fischerandputzi@hotmail.com>; edwardtarpley_att.net <edwardtarpley@att.net>; Stanley Woodward <stanley@brandwoodwardlaw.com>; Juli Haller <hallerjulia@outlook.com>; Edwards, Troy (USADC) <Troy.Edwards@usdoj.gov>; Brad Geyer <bradford.geyer@formerfedsgroup.com>; jcrisp_crisplegal.com <jcrisp@crisplegal.com>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Hughes, Alexandra (NSD) <Alexandra.Hughes@usdoj.gov>; Manzo, Louis (CRM) <Louis.Manzo@usdoj.gov>; phillip_thelinderfirm.com <phillip@thelinderfirm.com>
**Cc:** Jean Claude Douyon <Jean-Claude_Douyon@dcd.uscourts.gov>; William Zaremba <William_Zaremba@dcd.uscourts.gov>
**Subject:** RE: Rhodes: Updated Jury Instructions

Dear chambers,

We write regarding the jury instructions.

## Page 11 – Evidence Admitted Against One Defendant Only

We agree with the Court's proposed language. We additionally propose the following sentence at the end of the instruction:

 Aside from these limited exceptions, all other evidence has been admitted against all defendants.

## Page 32 – Multiple conspiracies

We reiterate that this instruction is not warranted – and in fact is merely confusing. The D.C. Circuit has explained that a judge does not abuse his discretion in refusing to provide a multiple conspiracies instruction if the evidence does not support such an instruction because, for instance, the defendants were all part of a single conspiracy. See:

- United States v. Gatling, 96 F.3d 1511, 1525 (D.C. Cir. 1996)
  - The trial court did not commit plain error in not issuing a multiple conspiracy instruction. As discussed above, the evidence clearly connected Walker to both the Chicago and D.C. conspiracies and supported the single conspiracy charge. Walker maintains that the evidence also suggested multiple conspiracies. We need not determine if Walker's claim is correct, because we find that the evidence of a single conspiracy and of Walker's involvement in it was substantial, and therefore the lack of a multiple conspiracy instruction cannot be said to have affected the outcome below or to call the fairness of the trial into question. See United States v. Debango, 780 F.2d 81, 84 (D.C. Cir. 1986) ("failure to give multiple-conspiracy instruction was not plain error, given that the government's evidence was clearly sufficient to support a finding that appellant and his co-defendants were engaged in a

2