IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-cr-15 (APM) |
| | : | |
| THOMAS CALDWELL, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S SURREPLY
TO DEFENDANT CALDWELL'S REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S NOTICE OF NEW AUTHORITY IN SUPPORT OF DEFENDANT'S
MOTIONS FOR ACQUITTAL AND NEW TRIAL

Defendant Caldwell is not entitled to judgment of acquittal on Count 13, on which the jury found him guilty of violating 18 U.S.C. § 1512(c)(1) for tampering with documents or proceedings.

The Court's jury instruction for Count 13 accurately stated the legal standard of a "nexus" to the official proceeding. *See Final Jury Instructions*, ECF 400, at 41 ("[T]he defendant acted with the intent to impair the object's integrity or availability for use in an official proceeding. . . . If the official proceeding was not pending at the time of the offense, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant."). This is same standard adopted by the Fourth Circuit in *United States v. Young*, 916 F.3d 368 (4th Cir. 2019).

Caldwell basically complains that there was insufficient evidence of Caldwell's knowledge of the foreseeability of the grand jury's investigation. But the evidence in the government's case-in-chief showed that the conspirators, including Caldwell, reasonably foresaw a grand jury investigation at the time they took steps to delete evidence. The jury therefore had sufficient

evidence from which to reasonably infer that Caldwell deleted evidence to, at least in part,[1] prevent the evidence's "availability for use in" the grand jury investigation. There was sufficient evidence for the jury to find that Caldwell violated Section 1512(c)(1).

In *Young* and *United States v. Aguilar*, 515 U.S. 593 (1995), the courts held that due to the nature of the FBI's investigation, it would not necessarily have been clear to the defendants that a grand jury had been or would be empaneled to investigate. If no one had yet been arrested or indicted, it would have been possible for the defendants to believe that the FBI was still investigating whether a crime had been committed in the first place—and thus it would not necessarily have been foreseeable to the defendants that the government would convene a grand jury.

The investigation in this case was different—indeed, unparalleled—in timing, scope, and publicity. Almost immediately, the FBI began publicly investigating people involved in the Capitol riot and arresting them and charging them with felonies. And there was massive news coverage about the investigation, arrests, and felony charges, which stands in contrast with the FBI's investigations in *Young* and *Aguilar*, which were far slower-moving and conducted without the commensurate publicity.

Here, the FBI began *publicly* investigating crimes related to the attack on the Capitol on January 6 itself. *See* 11/3/22AM Tr. at 6789-90 (testimony of FBI SA John Moore that a few people were arrested on January 6 and that the FBI immediately began conducting a massive investigation into the "[p]robably thousands" more who committed crimes); 10/2/22PM Tr. at 1263 (testimony of FBI SA Michael Palian that starting on January 7 "[a]lmost all available agents were thrown into focusing" on the investigation into people who committed crimes at the Capitol

---

[1] The Court also correctly instructed the jury that "[w]hile the defendant must act with intent to obstruct the official proceeding, this need not be the defendant's sole purpose." ECF 400 at 42.

on January 6). Special Agent Palian testified that "national media picked up the case immediately upon [Caldwell's] arrest" on January 19, *id.* at 1660, leading to a reasonable inference that there had been significant media attention over the prior two weeks regarding arrests of people involved in the riot at the Capitol. And given that at least some of the crimes that people committed at the Capitol were felonies, it would be reasonable for a person to believe that a grand jury would hear evidence to decide whether to issue an indictment.

On January 8, Caldwell exchanged messages with co-defendant Jessica Watkins regarding a news article about the riot at the Capitol, including specifically the fact that Watkins' "face [was] associated with dead cops." *Id.* at 6534-35. While the government could not recover the article itself, Watkins wrote that she would "be wanted after a title like that," *id.*—the reasonable inference being that the news article was about the criminal investigation into those individuals who participated in the riot at the Capitol. Indeed, Caldwell then told Watkins, "If any shit should ever come down, you were with me all the time and I'll swear to it." *Id.* at 6536. Watkins responded that there was "too much evidence to the contrary," and "[p]erjury bad." *Id.* It was more than reasonable for the jury to infer that this exchange shows Caldwell's knowledge that there would likely be an impending court proceeding ("swear to it," "perjury").

The evidence of Caldwell's foreseeability of the grand jury investigation is buttressed by evidence of co-defendant Rhodes' actions. Rhodes abruptly left the D.C. area on the night of January 6, turned off his phone, gave his phone to his girlfriend and co-conspirator Kellye SoRelle, sent SoRelle in a separate car on a separate route with other co-conspirators, and drove westward through the night. *See generally* 11/02/22PM Tr. at 6437-54 (testimony of FBI SA John Moore). On January 8, Rhodes told other co-conspirators that law enforcement would be "coming after" people who committed crimes at the Capitol and suggested that such individuals were "at risk of

3

being accused and indicted." *Id.* at 6451-52. Of course, it is a grand jury, after reviewing evidence, that indicts people for crimes.

Finally, in terms of proving a defendant's corrupt intent vis-à-vis the official proceeding, lying to the FBI while the FBI is investigating whether a crime occurred is fundamentally different than destroying physical or digital evidence in an investigation that has already led to arrests of other people. While it might not be reasonably foreseeable to a defendant who lies to the FBI that the FBI will then repeat his lies to a grand jury that has not necessarily already been empaneled, *see, e.g., Aguilar*, 515 U.S. at 601-02, it would be reasonably foreseeable to a defendant who destroys evidence of his and his co-conspirators' involvement in a crime, especially a crime of nationwide importance for which many people are being publicly arrested and charged with felonies, that the FBI will be unable to present that evidence to the grand jury.

WHEREFORE, even if the Court considers Defendant Caldwell's new argument in his unallowed "reply" that there was an insufficient nexus to convict him of violating Section 1512(c)(1), the Court should deny his's motion for judgment of acquittal under Rule 29 for the reasons above and in the government's original opposition (ECF 440).

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        DC Bar No. 481052

By:    /s/
        Jeffrey S. Nestler
        Assistant United States Attorney
        D.C. Bar No. 978296
        Troy A. Edwards, Jr.
        Alexandra Hughes

Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530