IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )    CR No. 22-15-10
                               )    Washington, D.C.
          vs.                  )    May 22, 2023
                               )    10:03 a.m.
THOMAS E. CALDWELL,            )
                               )
          Defendant.           )
_____)


TRANSCRIPT OF RULE 29 HEARING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Kathryn L. Rakoczy
                             Jeffrey S. Nestler
                             U.S. ATTORNEY'S OFFICE
                             555 Fourth Street, NW
                             Washington, D.C. 20530
                             (202) 252-7277
                             Email:
                             kathryn.rakoczy@usdoj.gov
                             Email:
                             jeffrey.nestler@usdoj.gov


For Defendant
Thomas E. Caldwell:          David William Fischer, Sr.
                             FISCHER & PUTZI, P.A.
                             7310 Governor Ritchie Highway
                             Empire Towers, Suite 300
                             Glen Burnie, MD 21061-3065
                             (410) 787-0826
                             Email:
                             fischerandputzi@hotmail.com

APPEARANCES CONTINUED:

Court Reporter:              William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            E. Barrett Prettyman CH
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

<pre>
 1                    P R O C E E D I N G S
 2          COURTROOM DEPUTY:  All rise.  The Honorable
 3   Amit P. Mehta presiding.
 4          THE COURT:  Good morning, everyone.
 5          COURTROOM DEPUTY:  Please be seated, everyone.
 6          Good morning, Your Honor.  This is Criminal Case
 7   No. 22-15-10, United States of America versus Thomas Edward
 8   Caldwell.
 9          Kathryn Rakoczy, Jeffrey Nestler, Alexandra
10   Hughes, Troy Edwards, and Louis Manzo for the government.
11          David Fischer for the defense.
12          The defendant is appearing in the courtroom for
13   these proceedings.
14          THE COURT:  Okay.  Good morning again, everyone;
15   counsel, Mr. Caldwell.
16          All right.  So I asked everybody to be here this
17   morning, and thank you for making yourselves available on
18   short notice, because I wanted to discuss the Rule 29s as it
19   relates to the two convictions against Mr. Caldwell.  In my
20   review of the evidence, I had more questions about those
21   convictions than perhaps some of the others.  So that's why
22   I've asked you all to be here this morning, in essence, to
23   pose two questions for your consideration.
24          So let's start with the obstruction count.  And
25   I want to begin with the government.  I know it's your
</pre>

```
 1    motion, Mr. Fischer, but let's start with the government.
 2              Mr. Nestler, I take it you'll be speaking on
 3    behalf of the government?
 4              MR. NESTLER:  Yes, Your Honor.
 5              THE COURT:  All right.  Why don't you come on up.
 6              So I think -- look, I think we all agree there
 7    obviously needs to be a nexus showing, we agree on that.  We
 8    also agree that the nexus showing cannot be met simply by
 9    showing foreseeability of a criminal investigation.  There's
10    a distinction between criminal investigation and the
11    official proceeding.
12              So tell me what you think the evidence is that
13    Mr. Caldwell, as of January 14th when he has deleted various
14    Facebook postings and unsent that message to Donovan Crowl,
15    what the evidence would have been that he would have
16    reasonably foreseen a grand jury investigation into either
17    his conduct or the conduct of someone else.
18              MR. NESTLER:  Yes, Your Honor.
19              So there is -- we believe there's more than
20    sufficient evidence to find that Mr. Caldwell reasonably
21    foresaw a grand jury investigation.
22              We can start with his Facebook records which are
23    in evidence.  It's 2001.T.1.  And if you look at page 89,
24    there's a January 8th CNN article that Caldwell shares on
25    the evening of January 10th, and the -- that's in evidence,
```

1    and the subject line of the article on page 89 of that

2    exhibit I just referenced is CNN talking about arrests of

3    people who are involved in the attack on the Capitol.

4              THE COURT:  Keep talking.

5              Sorry, I want to get my computer so I can start

6    pulling some of this evidence up.

7              MR. NESTLER:  We can show it to Your Honor to save

8    time.

9              THE COURT:  Great.  Even better.

10             MR. FISCHER:  If you can show the defense so we

11   can see it.

12             MR. NESTLER:  Mr. Edwards is plugging it in right

13   now.

14             So that is one news article.  There are three and

15   maybe even four we could talk about.

16             The second is *The New Yorker* article.  And so *The*

17   *New Yorker* article was published on the evening -- well,

18   let's go back for a second, Mr. Edwards has this up.  If we

19   could go to page 89 at the bottom.  And you can see here --

20   it's in UTC, Your Honor, so this is the night of January

21   10th, because it's five hours earlier.

22             Mr. Caldwell is sending a CNN article with the

23   subject line, and the CNN article is dated January 8th:

24   "Politics U.S. Capitol Riots Arrest Pelosi's Desk."

25   So this is an article about people being arrested for their

1   involvement on the attack on the Capitol, the Capitol riot

2   arrests.

3          And so Mr. Caldwell is sending this article, of

4   course, therefore, suggesting that he has read the article.

5   And is sending it to somebody else; here, Adrian Grimes.  So

6   talking about Caldwell's knowledge, he would have had

7   foreseeable knowledge people were being arrested for the

8   role in the riot at the Capitol.

9          Second is *The New Yorker* article.  *The New Yorker*

10  article, actually much more concretely, draws Mr. Caldwell

11  into the fold for him and his co-conspirators.  There's a

12  *New Yorker* article published on January 14th that has

13  photographs and names of Jessica Watkins and Donovan Crowl.

14         And Caldwell accesses that article and starts

15  deleting within about an hour, I think, after first

16  accessing that article, but on the evening of January 14th.

17  And that article is talking about his co-conspirators and

18  what they did at the Capitol by name.

19         THE COURT:  And so the article itself is in the

20  record or is it just a link to the article?

21         MR. NESTLER:  In the government's case-in-chief,

22  there is testimony about the article, that the article -- so

23  the testimony is on page 1626 of the transcripts.  And the

24  testimony is that *The New Yorker* published an article that

25  identified Watkins and Crowl as having been involved in the

1    riot at the Capitol on January 6th.

2            In the government's rebuttal case, the article was

3    introduced into evidence, but the fact of the article was

4    introduced, and it was published on January 14th, was

5    introduced in the government's case-in-chief.

6            The next public article about these conspiracies

7    is the *Washington Post*'s article about Zello.  So *The*

8    *Guardian* and *The Washington Post* published articles about

9    the Zello recording.

10           THE COURT:  Right.

11           MR. NESTLER:  And Watkins shared those with Crowl

12   on January 14th.  And that is the same day that Crowl and

13   Watkins -- sorry, Crowl and Caldwell are together in

14   communication about Crowl and Watkins coming to Caldwell's

15   House to hang out or to hide out.

16           THE COURT:  But do we know whether -- is there any

17   evidence that Mr. Caldwell saw the *Washington Post* article?

18           MR. NESTLER:  There's a reasonable inference

19   because Mr. Crowl -- that is the same day that Crowl reaches

20   out to Caldwell to come to Caldwell's House.

21           THE COURT:  Right.

22           But there's also the recording that -- I mean,

23   that was introduced in Mr. Caldwell's case in which he says

24   to his wife essentially, you know, they're trying to get

25   away from the media, and so maybe it's a piece of that,

1    I guess.  But it's not clear to me that he could -- a jury

2    could reasonably infer that Mr. Caldwell actually saw the

3    piece about Zello.

4              MR. NESTLER:  He could have reasonably inferred

5    that that was why Crowl was coming, because Crowl decided to

6    come to his house that day.  Of all the days, that was the

7    day that Crowl and Watkins decided to come to Caldwell's

8    House.

9              And *The New Yorker* article very clearly puts

10   Watkins and Crowl at the Capitol and Caldwell's knowledge

11   about that article.

12             THE COURT:  And who did the testimony come through

13   about *The New Yorker* article?

14             MR. NESTLER:  That was Special Agent Palian.

15             We can pull it up for the Court if Your Honor

16   would like the transcript.

17             THE COURT:  That's okay.  I was trying to do it

18   myself here.

19             MR. NESTLER:  Sure.

20             THE COURT:  And that was early on?

21             Or, let's see, page 14.

22             MR. NESTLER:  We have it as page 1626.

23             THE COURT:  The date of the trial testimony?

24   Okay.

25             I don't have everything in one file.

1          Okay.  All right.

2          And then, of course, Caldwell had sent the

3    News2Share video, which showed Watkins and Crowl at the

4    Capitol.

5          And Caldwell had said, it starts out with early

6    happenings on our side of the building and then moves to

7    yours.

8          And so he sent that video of Watkins and Crowl on

9    January 7th, which he later unsent, but, again, going to

10   more evidence that he was aware of video evidence of his

11   co-conspirators being at the Capitol.

12         And that the investigation, and we believe the

13   evidence, and it's a fair inference from the evidence, that

14   given the nature of the investigation here, video evidence

15   of people being unlawfully at the Capitol Grounds is

16   something that Caldwell would have been aware of and would

17   have been aware that the police were using in order to

18   identify and arrest and charge people due to the unique

19   nature of the investigation here, which we can talk about in

20   a second, Your Honor, about how this investigation differs

21   significantly from the investigations in *Aguilar* and *Young*.

22         THE COURT:  Okay.

23         MR. NESTLER:  So then we can go to Caldwell -- so

24   those are the pieces in evidence about what Caldwell knew

25   about other arrests and about the investigation into him and

1    his co-conspirators.

2             Then we can go to his own comments with Watkins.

3    So -- and we flagged this in our surreply, Your Honor.  But

4    he and Watkins used words like "swear" and "perjury" when

5    they were communicating, and that's Government's Exhibit

6    9079.

7             Obviously people swear in front of a court and

8    they commit perjury in front of a judicial proceeding, not

9    to the FBI.  People don't swear to the FBI, they don't

10   commit perjury when talking to the FBI.  So showing an

11   awareness between Caldwell and Watkins that there was an

12   impending or at least a reasonably foreseeable court

13   proceeding coming their way and not just an FBI

14   investigation.

15            Now, Rhodes specifically told co-conspirators that

16   they were at risk of being indicted.  And so he wrote on

17   January 8th, through SoRelle's phone in Government's Exhibit

18   9061, "Do not chat about Oath Keepers members allegedly

19   doing anything at Capitol, go dark on that, do not discuss.

20   That's what I would advise any criminal defense client to do

21   who's at risk of" -- and here's the important point --

22   "being accused and indicted."

23            THE COURT:  So what's the -- I'll preview my

24   Rule 29.  That makes it an easy case against Mr. Rhodes.

25            How does that particular message connect up to

1   Mr. Caldwell because that's made on the "Old Leadership"

2   chat, and Mr. Caldwell is not on it?

3           MR. NESTLER:  Because Jessica Watkins is on the

4   "Old Leadership" chat and she does start deleting --

5   committing her own acts of obstruction after that point.

6   She was not charged with (c)(1) but she does start deleting.

7   And she deletes messages and other data following that.

8           And Watkins is in touch with Caldwell and Crowl in

9   the following weeks.  So from January 8th and starting on

10   January 14th when she and Crowl show up at Caldwell's house,

11   Watkins is in touch with Caldwell.

12           THE COURT:  This may be an unfair question but why

13   didn't the government charge Ms. Watkins?  I mean, you've

14   just described a fair amount of evidence against

15   Ms. Watkins, her knowledge of what was out there in the

16   world about her.  She obviously knew what she did inside the

17   Capitol Building.  According to the government, she deleted

18   her Signal app, at a minimum, before she left for

19   Mr. Caldwell's farm.

20           I mean, it just seems odd to me that the

21   government is convinced beyond a reasonable doubt that

22   Mr. Caldwell deleted in anticipation of a grand jury but

23   didn't charge Ms. Watkins with a similar offense.

24           MR. NESTLER:  The government believes that

25   Ms. Watkins also deleted evidence to impair its integrity

1    before the grand jury.

2            THE COURT:  But didn't charge her?

3            MR. NESTLER:  That's accurate.

4            THE COURT:  Can I ask why?

5            MR. NESTLER:  Brief indulgence.

6            THE COURT:  Mr. Fischer is chuckling.  I did that

7    for his benefit.

8            MR. NESTLER:  It's a fair question to ask,

9    Your Honor.

10           We believe that she would have been fairly

11   charged.  Ms. Watkins had been briefing and discussing with

12   the government; she was one of the first people who were

13   charged.  And if we had to do this over again, she would

14   have been charged with that offense.  We do believe we

15   proved by a preponderance at the sentencing phase that she

16   committed obstruction.  But there's no other principal basis

17   for the lack of charge for Ms. Watkins.

18           THE COURT:  Look, I'm not suggesting that that's a

19   basis to grant a Rule 29.  It just makes for a very odd set

20   of circumstances.

21           So any other evidence?

22           MR. NESTLER:  In terms of specific evidence, we

23   can talk about how this investigation is different and how

24   the government introduced evidence through the FBI agents in

25   its case-in-chief about how this investigation was different

1     from the other investigations.

2            So this is an investigation that was incredibly

3     focused on video, identifying individuals who were present

4     at the Capitol, and that was done primarily through video

5     evidence.

6            THE COURT:  Can I ask you -- sorry to interrupt

7     you.

8            MR. NESTLER:  Sure.

9            THE COURT:  I suppose I know what the answer is

10    going to be, but is it the government's theory that

11    Mr. Caldwell was deleting those messages because it was

12    evidence against him or it was evidence against others?

13           MR. NESTLER:  Both.

14           THE COURT:  Both.

15           MR. NESTLER:  And we do think it's fair.

16           And I know that Mr. Fischer made this argument.

17    Mr. Caldwell deleted things that were going to be accessible

18    to the government without having to access his phone.

19           So deleting things off of Facebook and off of

20    platforms that are housed in the cloud that the government

21    can more quickly and easily access before they go away.

22           And so he's trying to protect others, Watkins and

23    Crowl, most notably, and himself in trying to impair the

24    integrity of the evidence for the grand jury investigation.

25           THE COURT:  Okay.

1          MR. NESTLER:  And the point that we get out here

2   is how the (c)(1) charge here is dramatically different from

3   the (c)(2) charges or the 1503 charges in *Aguilar* and *Young*.

4   And even the *Wellman* case that Mr. Fischer cited to

5   yesterday, where the Court did actually affirm the (c)(2)

6   conviction for the defendant there based on a sufficient

7   nexus.

8          Lying to the FBI to try to convince the FBI

9   someone didn't commit a crime is fundamentally different

10  than destroying or deleting evidence that already existed

11  out in the world to prevent that evidence from being used

12  against you or your co-conspirators in the grand jury or at

13  trial.  They are just fundamentally different acts of

14  obstruction.

15         And we look at what the Seventh Circuit had to say

16  in the two cases I sent to chambers last night, I think it's

17  *Matthews* and *Johnson*.  The Seventh Circuit was very clear.

18  When someone destroys evidence, in that case, it was

19  destroying a gun or getting rid of a gun or destroying

20  drugs, sure, the people who were doing that didn't want the

21  police to have access to them as part of the investigation,

22  but they also knew that those were the things that were

23  going to be used against them and their co-conspirators when

24  they were ultimately charged.

25         Here, it was more than reasonably foreseeable to

1    Caldwell that he was going to be charged, and that his

2    co-conspirators, especially Watkins and Crowl, were going to

3    be charged based on what, at a minimum, was out in *The*

4    *New Yorker* article.  And so he knew people were going to be

5    charged and he was deleting evidence so that there wouldn't

6    be evidence to be used against those people and ultimately

7    against him when they were charged by the grand jury.

8             THE COURT:  I mean, *Aguilar* is such an interesting

9    case.  I mean, it is a bizarre conclusion, it seems to me,

10   in my humble opinion.  I mean, there you have a federal

11   judge who's accused of lying to an FBI agent who tells him,

12   the federal judge, that there has been, impaneled, a grand

13   jury investigation.

14            And the Supreme Court says that is insufficient

15   evidence to establish that the federal judge knew that his

16   lies could end up before the grand jury.  This is a federal

17   judge.

18            I'm having a hard time squaring that holding with

19   the facts here which require me to infer that Mr. Caldwell

20   would have been aware or reasonably aware of the possibility

21   or probability of a grand jury proceeding because there were

22   media stories about arrests of other people and the possible

23   arrest of people he knew but did not go into the building

24   with and worked with.

25            MR. NESTLER:  But he knew that they were in touch.

1    And that gets back to the article that he sent to Crowl on

2    January 7th.  He sends Crowl a video of Crowl and Watkins

3    breaching the building --

4              THE COURT:  Right.

5              MR. NESTLER:  -- and says, I was on the west side,

6    you were on the east side.

7              And so he knows there are communications out there

8    in the cloud that the government can go access to use to

9    prosecute not just him, if we leave him to the side for a

10   minute --

11             THE COURT:  Right.

12             MR. NESTLER:  -- to prosecute Watkins and Crowl,

13   and he wants to prevent the grand jury from having access to

14   that.

15             And that's when we get back to the fundamental

16   difference between lying to the FBI and whether the federal

17   judge would know that the agent would then repeat that lie

18   to the grand jury, which is different than depriving the

19   grand jury of evidence that already existed in the world.

20             THE COURT:  So let me ask, the *Wellman* decision

21   that Mr. Fischer has sent us says the following:  If the

22   evidence reveals that the defendant acted with the awareness

23   that he was the target of information and the government

24   might be trying to build a case against him, the nexus

25   requirement is satisfied.

1          Now, let's leave aside for the moment that that's

2     limited to an investigation against the defendant.  I mean,

3     1512(c)(1) is not limited just to an investigation against

4     the person who destroys the evidence, it could be against

5     someone else that the person is being -- as to whom the

6     evidence is being destroyed for.

7          But let's just stick with the evidence that, in

8     the government's view, that Mr. Caldwell knew that he -- or

9     had an awareness that he was the target of an investigation

10     and that the government might try and build a case against

11     him, as opposed to Crowl and Watkins.

12          Is it the same evidence?

13          MR. NESTLER:  It's the same evidence for Crowl --

14     for Caldwell knowing about his relationship with the

15     Oath Keepers.

16          So at this time, Watkins and Crowl are identified

17     as being affiliated with the Oath Keepers publicly.

18          And Caldwell knows that Caldwell had many

19     communications with members of the Oath Keepers, including

20     stay at the hotel, procuring the hotel for everybody else,

21     talking about the QRF, communicating with Kelly Meggs, and

22     communicating with other -- and Rhodes previously to that.

23     So there's certainly a reasonable inference for the jury to

24     infer that Caldwell knew that what the Oath Keepers had done

25     that day was going to be under investigation.

1          Going back to -- this is also in evidence -- but
2    the stack of Oath Keepers marching up the west side of the
3    Capitol, that video was in heavy circulation, and that fact
4    is in evidence in the news.

5          And so that certainly would be something that one
6    could infer that Caldwell would have been aware of the
7    Oath Keepers' involvement, and his connection to the
8    Oath Keepers would make him, therefore, a potential target
9    of that investigation.

10          We do believe that sentence from *Wellman* is
11    accurate, but that is sufficient but not necessary.

12          THE COURT:  You'll forgive me, but I don't know
13    that -- it's not clear to me that a defendant's
14    consciousness of his own guilt or association in this case
15    with others is what the evidence would be that would support
16    knowledge.

17          I mean, I suppose at some level, it's
18    circumstantial evidence.  But the evidence here has to be --
19    and what *Wellman* says, it makes sense, is that we must be
20    careful to avoid conflating obstruction of an official
21    proceeding with obstruction of a mere criminal investigation
22    that's unconnected with an official proceeding.

23          And it seems to me that the evidence needs to
24    require more than speculation -- more than just someone's
25    concern about their own guilt; that they would reasonably

1  suspect there was going to be a grand jury investigation

2  into their conduct.

3              MR. NESTLER:  We disagree that it needs to be into

4  their own conduct.  That sentence from --

5              THE COURT:  No, I agree -- I understand that.

6              MR. NESTLER:  And so if we step back, then

7  Caldwell has to reasonably foresee a grand jury

8  investigation into someone's conduct.  And so we think that

9  is more than sufficient based on the fact that --

10             THE COURT:  But then that requires the jury to

11 have concluded that he was doing those deletions for the

12 benefit of Crowl and Watkins and not necessarily him to

13 support the conviction.

14             MR. NESTLER:  Well, it could have been both.

15             THE COURT:  No, no, I understand.

16             But at a minimum, the evidence would have had to

17 support that intent.

18             MR. NESTLER:  And we believe the evidence does

19 support that intent.

20             He did delete his entire exchange between him and

21 Crowl.  Not only did he delete specific messages between him

22 and Crowl, he deleted his entire exchange between him and

23 Crowl that they had on Facebook, after he had told Crowl

24 about the video that shows Crowl breaching the building with

25 Watkins, those same two people who were publicly identified

1   in *The New Yorker* article.

2          And Ms. Rakoczy reminded me.  So when Watkins and

3   Caldwell are directly talking about "perjury bad" and

4   Watkins -- and Caldwell tells Watkins, "if anyone asks, you

5   know, I'll swear that you were with me," and she's says,

6   "perjury bad," that whole conversation was Watkins telling

7   Caldwell that her face was publicly being associated with

8   dead cops.

9          THE COURT:  Right.

10          MR. NESTLER:  And so it's an easy inference there.

11          THE COURT:  Do I make anything of the "LOL"?

12          MR. NESTLER:  Nothing of the "LOL."

13          I mean, it's an easy reference there for Watkins

14   telling Caldwell, Watkins saying, I am going to be arrested,

15   charged, indicted.  My face is publicly out there for being

16   associated with dead cops.

17          And so Caldwell's actions after that, even if they

18   were just to support Watkins or just to support Crowl and

19   not himself, which we think they were for all three,

20   Caldwell would reasonably know there was going to be

21   indictments forthcoming.

22          The CNN article, we don't have the whole article

23   in evidence, and I'll point out that we had more substance

24   of it, but at the defense's request, the rest of it was

25   redacted out of the Facebook records, but all that was

1    admitted into evidence was the headline.

2            But that being said, Caldwell is obviously reading

3    a CNN article, sharing it with others, about people being

4    arrested for the role of the attack on the Capitol.  It's

5    quite clear, given what Watkins said about dead cops, that

6    there was going to be a grand jury investigation, there were

7    going to be felony charges here, there were obviously heavy

8    rotation in the news about what some of the people had done

9    in terms of violent assaults.  It was clear there was going

10   to be felony charges, and felony charges, of course, require

11   actions of the grand jury.

12           Watkins said that perjury would be bad; perjury

13   means that that was in connection with a court proceeding.

14   She and Caldwell were having that conversation about

15   Watkins' own criminal exposure.

16           THE COURT:  Anything else, Mr. Nestler?

17           MR. NESTLER:  No, Your Honor.

18           THE COURT:  We'll talk about the (c)(2) charge in

19   a moment, but why don't I hear from Mr. Fischer and get his

20   reaction to your points.

21           MR. FISCHER:  And may it please the Court.

22           First of all, Your Honor, I would indicate that

23   your reaction to the *Aguilar* case was exactly my reaction;

24   that in that particular case, you have a federal judge

25   who's -- part of his job description is to oversee the grand

1   jury process and has an expertise in the grand jury, as

2   compared to Mr. Caldwell, where there's no evidence that he

3   has any particular expertise in the grand jury or how that

4   would operate vis-a-vis an investigation.

5           THE COURT:  A bunch of these cases that you have

6   sent me, for example, involve police officers, and part of

7   the evidence in those cases sometimes is that the officer

8   has testified before a grand jury a dozen times, and

9   obviously there's nothing like that here.

10          MR. FISCHER:  Exactly.

11          Just a few points I would make, Your Honor.  First

12  of all, the indictment in Count 13 alleges, at paragraph

13  167, that, "Between January 6th, 2021, and January 19th of

14  2021, Caldwell deleted photographs from his Facebook account

15  that documented his participation in the attack on the

16  Capitol on January 6th."  So that was the meat of the

17  evidence, tampering charge, were the photographs that,

18  according to the indictment, documented "his" participation

19  in the attack on the Capitol.

20          Your Honor, Mr. Caldwell was not even a suspect by

21  the FBI until after the deletions took place.  It was

22  after -- Crowl and Watkins were at his place when --

23          THE COURT:  No, I know.  I'm aware of the sequence

24  of events.

25          MR. FISCHER:  And, Your Honor, as to the video,

1    which turned out to be a link to an open-source news site,

2    that particular video or link was not even known the content

3    of it until a year after Mr. Caldwell had been arrested.  So

4    the government didn't even know per the testimony of -- if

5    the Court recalls, there was a letter -- or an email from

6    Ms. Rakoczy that -- the email did not come into evidence but

7    the Court allowed me to talk about the contents and had the

8    agent talk about how the FBI and the government did not have

9    knowledge of what the content of the video, which turned out

10   to be a link, was until a year after Mr. Caldwell was

11   arrested and had already been charged with that through

12   multiple prior indictments.

13          So, Your Honor, the *Wellman* case basically says

14   Mr. Caldwell, as far as the photographs, he would have had

15   to have been on notice that he was a target and that the

16   government was building a case, as far as the photographs

17   that he allegedly obstructed.  And the government's

18   presented absolutely no evidence that Mr. Caldwell was under

19   the impression that he was a target of an FBI investigation

20   or that the government was building a case against him

21   because, quite frankly, the FBI did not start building a

22   case against him until three days after the deletions took

23   place.

24          As to some of -- I would also point out and remind

25   the Court that there was overwhelming evidence that was

1    presented through defense exhibits that Mr. Caldwell had

2    multiple copies of the same photographs on his phone.

3            THE COURT:  Yeah, I want to --

4            MR. FISCHER:  I'll move along.

5            THE COURT:  No, no, you don't have to move along.

6            I want to just avoid for a moment -- we can talk

7    about it, but just in terms of the issues of intent and some

8    of the circumstantial evidence you're talking about, what's

9    your reaction to the government's alternative theory, which

10   is that Mr. Caldwell, based upon media stories, would have

11   been aware both that people were being arrested for the

12   events of January 6th, he would have been aware that

13   Ms. Watkins and Mr. Crowl were specifically identified, and,

14   therefore, likely to be the subject of an investigation and

15   possibly an arrest, and, therefore, on the very day that

16   they're coming to his farm for assistance, he is deleting

17   evidence that would have implicated them?

18           MR. FISCHER:  Well, Your Honor, what I would say

19   is this.  I believe the cases, I think, have drawn a bright

20   line between just general awareness of someone could be in

21   trouble and specific awareness that you're under

22   investigation or someone's under investigation.  Just

23   because someone appears in a news meeting -- I would point

24   out *The New Yorker* article, as Mr. Nestler indicated, was

25   not in the government's case, it was in rebuttal.  But just

1    the fact that someone is noted in a news article does not

2    necessarily mean they are going to be actually investigated

3    or even charged.

4           THE COURT:  I think we would all agree with that

5    as a general proposition.  I think the question is, is this

6    different, is this case different because it was clear from

7    the outset that the FBI and the Federal Government would be

8    arresting and charging people who participated in the events

9    of that day.

10          So you have news stories about somebody like

11   Ms. Watkins, video of her and Mr. Crowl going into the

12   building, I don't have what other color there was in the

13   articles about their conduct.  It's not -- why isn't it

14   unreasonable for someone to read such an article and think,

15   one, that person is going to be the target of an

16   investigation, and, two, the government is likely to try and

17   build a case against this person, and I've got evidence on

18   my phone and in my Facebook account that could implicate

19   those people?

20          MR. FISCHER:  Well, Your Honor, I would say that

21   having knowledge that somebody else has been outed in a

22   newspaper article, that's certainly -- obviously that could

23   suggest to somebody that -- I would say this.  I would say

24   that, as far as Mr. Caldwell's intent, from his point of

25   view, there's no evidence that he thought he was a subject

1  or he was a target.  So even if he thought that other

2  individuals, potentially there could be some investigation

3  into them, although I don't believe there's enough to show

4  that there was even enough to show that he had knowledge

5  that an investigation would take place, that doesn't get the

6  government to the grand jury.  That's a different leap that

7  has to be made.

8           And, in fact, when the conduct goes to a third

9  party, I think the amount of evidence has to increase,

10  because obviously if you're doing it and you think you're a

11  target and you're under investigation, that's self-serving,

12  you can do that to save your own skin.  But when you're

13  talking about somebody else, the standard would have to

14  be -- there would have to be more evidence because there are

15  all types of reasons why somebody would want to disassociate

16  themselves from somebody who's outed in a newspaper article.

17  It happens all the time; we're in D.C.  Whenever a

18  politician gets in trouble, their best friends go fleeing

19  away from them.  That doesn't mean that they're somehow

20  criminally connected to them, that means there's a

21  disassociation that's taking place that has nothing to do

22  with the grand jury.

23           So there are just too many -- there's too much of

24  a logical leap that has to be made to get Mr. Caldwell from

25  seeing that a couple of his tangential friends were outed in

1    a *New Yorker* article, which, by the way, says nothing about

2    they're going to be arrested, says nothing about they're

3    being investigated.  I think that there's too much of a leap

4    there to get to a grand jury, especially with *Aguilar*,

5    because as the Court pointed out, in *Aguilar*, you have a

6    federal judge who's sitting with an FBI agent, and even the

7    Supreme Court acknowledges that the information could have

8    made its way or possibly made its way to a grand jury.  But

9    *Aguilar* did not specifically -- Judge Aguilar did not know

10   that it would get there, he was not on notice, so I think

11   that's the problem.

12          Your Honor, the CNN article mentioned by

13   Mr. Nestler, it does not indicate -- it doesn't have a copy

14   of the article, it doesn't indicate what the arrests were

15   for.  If the arrests were for trespassing, trespassing is a

16   misdemeanor and not within the province of the grand jury.

17   And also it doesn't -- there's no evidence that it mentioned

18   Mr. Caldwell or anybody associated with Mr. Caldwell.  And

19   as far as, like*, The Guardian* and *Washington Post*, there's

20   no evidence Mr. Caldwell saw those particle articles, so

21   that could not have not gone towards foreseeability.

22          Your Honor, the --

23          THE COURT:  Do we know -- I'm sorry to interrupt

24   you, Mr. Fischer, but you've raised a point that I hadn't

25   really thought about it and that is, and I'll ask -- I

```
 1    suppose the government may be the right party to ask this
 2    of, but do we know if anyone was arrested and charged with
 3    felony conduct within the weeks following January 6th?
 4              MR. FISCHER:  I would have to --
 5              THE COURT:  And whether that was in the media,
 6    that it was actual felony arrests?
 7              MR. FISCHER:  I would have to defer to the
 8    government.  My understanding was Mr. Caldwell was the first
 9    defendant that was charged with the major felonies, he was
10    the first conspiracy that was charged.  If the government
11    has anything --
12              THE COURT:  Does the government know?
13              MR. NESTLER:  The grand jury was convened on
14    January 8, and issued indictments, we believe, on January
15    11th.
16              THE COURT:  Okay.
17              I mean -- okay.
18              I was just curious.  But I don't know that that's
19    in evidence, but I was just curious.
20              MR. FISCHER:  And I guess that begs the question.
21    If I could ask Mr. Nestler:  Did those documents get
22    publicized before Mr. Caldwell's arrest?
23              MR. NESTLER:  The answer is yes.  And I think that
24    the evidence already is here from the FBI agent who said
25    there was a massive amount of publicity, and they testified,
```

1    Special Agent Palian, more publicity about this

2    investigation and what the FBI was doing here than almost

3    any other case anyone's ever seen.

4             THE COURT:  Fair enough.

5             I was just curious.  I only raised the question

6    because Mr. Fischer raised the fact that mere trespass or a

7    trespass in this context would have been a misdemeanor only.

8             MR. FISCHER:  Well, I would indicate the

9    government's citation to Agent Palian's.  Agent Palian's

10   testimony was that after Mr. Caldwell was arrested, there

11   was a massive amount of publicity.

12            THE COURT:  He also testified about publicity

13   about the investigation before Mr. Caldwell -- but in any

14   event, I get your point.

15            MR. FISCHER:  Your Honor, I called it the B movie

16   line where Mr. Caldwell says something to the effect, you

17   know, you were with me and I'll swear to it.  In the context

18   of the messages, contextually, Ms. Watkins is complaining

19   because there's something on the Internet that associates

20   her face with dead police officers.

21            And, in fact, Mr. Caldwell, at one point, and I

22   would point out that the government cuts off the line and it

23   says -- okay, so Mr. Caldwell says -- and this is at

24   192.T.1623, "If any shit should ever come down, you were

25   with me all the time and I'll swear to it."

1          And then Ms. Watkins responds there's no --

2    "There's too much evidence contrary, perjury bad LOL.

3    I won't worry then."

4          So she basically says, I won't worry about what's

5    going on.  So I think that sort of mitigates and sort of

6    puts the statements in context.

7          And also, Your Honor, if you look at -- if you

8    want to read Mr. Caldwell's statement literally, what he's

9    literally saying -- and I personally -- I think it looks

10   like a joke to me, it looks like something, again, from a

11   grade B movie from the 1940s, as Mr. Caldwell indicated.

12   But if you read it literally, what he's saying is, hey, if

13   something happens, I'm innocent, I'll tell them you were

14   with me.  That would be a literal reading of it.

15         THE COURT:  Could I ask you a question?

16         If I conclude that there's sufficient evidence

17   that -- that there's sufficient evidence -- the government

18   introduced sufficient evidence at the end of its

19   case-in-chief, do you then automatically lose at the end of

20   your case and the close of the evidence because Mr. Caldwell

21   testified and the grand jury could not credit his testimony?

22         MR. FISCHER:  No, Your Honor, because, first of

23   all, you can put his testimony to the side, number one,

24   because you can look at the physical evidence that was

25   introduced.

1        And the physical evidence that was unrebutted by

2   the government was that Mr. Caldwell had in his possession

3   when he was arrested by the FBI three extra copies of every

4   photograph he allegedly was trying to keep from the grand

5   jury.  So he had three extra copies of the same photos.

6        THE COURT:  So how do I, though, you've cited a

7   case -- I mean, it's sort of interesting that an appellate

8   court would make this determination, but I think it's an

9   intermediate appellate court decision from Florida in which

10  a Court said, based upon this evidence, the jury couldn't

11  have formed the requisite -- couldn't have concluded intent

12  beyond a reasonable doubt.

13        But it just seems to me that that's a

14  quintessential jury question, right?  I mean, you've argued,

15  look, he didn't intend to obstruct because he kept all the

16  photographs.  The government says he did intend to obstruct

17  because he deleted the stuff that was really important.

18  I'm not sure that that's my role at that point to say, you

19  know what, that's not enough evidence of intent.  I mean,

20  I understand why you're arguing it but it just seems to me

21  to not be something a judge should be doing after the jury

22  has made a determination.

23        MR. FISCHER:  Well, I don't believe Mr. Caldwell's

24  testimony really got heavily into the concept of

25  "corruptly," or the nexus, or a grand jury.  So I don't

1    think he really testified specifically as to those issues to

2    give a grand jury the ability to disbelieve statements that

3    he made.  I think he generally just indicated that he wasn't

4    trying to destroy evidence.

5             I think that's different than a grand jury making

6    a finding that --

7             THE COURT:  You mean the jury?

8             MR. FISCHER:  I'm sorry, the jury making a finding

9    that, oh, there was evidence of tampering and then it was

10   designed to go to before a grand jury.  So I don't think he

11   testified on that particular issue.

12            But I would say, Your Honor, I do believe it is a

13   legal issue, I don't believe it is a factual issue, because

14   the issue is whether he has evidence that could impair its

15   availability for the grand jury proceeding; in other words,

16   if the grand jury asks for it, he can produce it.

17            In fact, he has the originals on his phone, he has

18   the original photos on his phone.  What would have been

19   taken off was from Facebook.

20            And I would point out, Your Honor, also as to the

21   issue of intent, keep in mind that, you know, the government

22   indicates, yes, Mr. Caldwell deleted this entire thread,

23   but, as the testimony from the Meta or "Mehta" -- the

24   Facebook.

25            THE COURT:  It's not my company.

1      MR. FISCHER:  So the testimony from Mr. Harmon was

2  that a deletion of a Facebook thread is one swipe.  You one

3  swipe of the button and, ergo, 60 or whatever 90 pages of

4  Facebook messages get deleted.  So it's one swipe.  And

5  there were a ton of things inside those records that have

6  nothing to do with January 6th.

7      Mr. Caldwell's wife's medical condition was

8  discussed in some of those -- in part of that thread.  And

9  to suggest that a finder of fact could divine Mr. Caldwell's

10  intent that the purpose of deleting whatever it was, 60-plus

11  pages of Facebook records, I think it was 90 messages -- or

12  maybe it was 30 pages, 90 messages.

13      THE COURT:  I guess I just don't know that it's a

14  defense, except on the issue of intent, to say, look, sure

15  the grand jury would have been deprived of this evidence in

16  a particular format, but here it is, it's available on a

17  different -- in another format; in other words, you know,

18  the fact that the photographs, for example, are on his

19  phone, I'm not sure absolves him of deleting other evidence

20  that's in a different medium.

21      MR. FISCHER:  Well, it goes towards his intent.

22      THE COURT:  Right.

23      MR. FISCHER:  And if his intent is -- for example,

24  the Court asked the question, okay, let's assume that we can

25  say that Mr. Caldwell was -- he reads *The New Yorker*

1    article -- or he didn't read a *New Yorker* article in the

2    government's case.  But let's assume he has some type of

3    knowledge that Watkins and Crowl are a subject of a national

4    news piece.  Fine.  Wouldn't it be just as likely that his

5    intent in taking down Facebook messages between himself and

6    Crowl, wouldn't it be just as likely that he -- if he thinks

7    these folks are in trouble but he's not in trouble, he does

8    it for the purpose of making sure the FBI doesn't come in

9    and talk to him?  Now, that wouldn't be trying to thwart a

10   grand jury, that would be trying to keep yourself out of an

11   entanglement with other people when you did not commit a

12   crime.

13          THE COURT:  Right.

14          MR. FISCHER:  So it's just getting to that grand

15   jury is the problem.

16          And I would submit, as far as the multiple copies,

17   it shows -- the crime itself charged is impairing -- is

18   impairing the integrity and availability of the photographs

19   for use in the grand jury investigation.  And how do you

20   prove, as a matter of law, beyond a reasonable doubt, his

21   intent was to keep it from the -- to keep its availability

22   from the grand jury when he had it available?  He absolutely

23   had it available.

24          And the integrity had not been messed with because

25   he had the original copy.  So it's the availability for use,

1    that's the issue, that's what he's charged with, not some

2    general, I'm destroying evidence to keep the FBI off my

3    trail.

4            I'd also point out, Your Honor, I cited the

5    *Weisinger* case.  Now, it's at the trial-court level out of

6    the Western District of Virginia.  But in the *Weisinger*

7    case, Mr. Weisinger had given fentanyl to a woman in a hotel

8    room who ended up passing away because of an overdose.  He

9    then cleaned up the entire room, flushed the drugs down the

10   toilet, completely cleaned up the crime scene.

11           Now, in that case if anybody was on notice that he

12   was the subject of an investigation, that person would have

13   been on notice.  He had made text messages to other people;

14   there were witnesses that testified that he admitted to

15   cleaning up the crime scene.

16           But the Court said -- they were citing the *Young*

17   case out of the Fourth Circuit -- that doesn't get you to a

18   grand jury.  It may get you to -- it's obvious that you're

19   trying to stop yourself from being -- from hiding and

20   keeping yourself potentially from -- or you're doing it for

21   the purpose of hindering an investigation, but that doesn't

22   get you to the next step, and I think that's the problem

23   that the government has.

24           The Court's indulgence.

25           Your Honor, in virtually every case the government

1    cites, there's -- and I think in every case they cite,

2    there's specific notice that the defendant is aware that

3    there's -- that there are -- that his conduct will actually

4    affect a court proceeding.

5            So if somebody -- if the police are surrounding

6    your house, like they cited a case where the police were

7    surrounding a house, and they're knocking on the door, we

8    have a search warrant.  And then the evidence -- the

9    defendant goes and flushes the drugs down the toilet or puts

10   the computer in the bathtub.

11           In those types of cases, the defendant's on notice

12   that, first of all, there's an investigation because they're

13   at his door and because there's a search warrant seeking

14   evidence, the defendant is on notice that what they're doing

15   is they're seeking the evidence that's going to be used in

16   trial or in an official proceeding.  That didn't happen in

17   this case.

18           THE COURT:  Right.  Okay.

19           MR. FISCHER:  Thank you, Your Honor.

20           THE COURT:  Mr. Fischer, thank you.

21           I'll give a couple minutes just on this topic and

22   then we'll turn to the 1512(c)(2) issue.

23           MR. NESTLER:  Yes, Your Honor.  Thank you.

24           I think it's telling that what Mr. Fischer told

25   Your Honor repeatedly was a reasonable inference to draw

1    from the evidence.  Isn't it reasonable or isn't it
2    plausible or isn't it more likely that Mr. Caldwell was
3    intending to do X, Y, or Z when he did what he did.  That is
4    not the procedural posture we're in.  All reasonable
5    inferences must be drawn in the government's favor.  If any
6    juror could find the facts to support the government's
7    theory here, the Court must deny the Rule 29 motion.
8         And so looking to, well, Mr. Caldwell might have
9    meant those messages literally or he might have been kidding
10   or that article about CNN might have been about misdemeanor
11   arrests, reasonable inferences means that that article from
12   CNN was about felony arrests because it's a reasonable
13   inference that it was about felony arrests, and so we need
14   to think about and make sure we're aware of the proper
15   standard here.
16        The second point here is about dual motives.  It's
17   certainly possible that Caldwell was trying to prevent the
18   FBI from locating him, knowing who he was and talking to
19   him.  That's fine.  The whole point here is that a person,
20   and the jury instructions bear this out, can act with dual
21   motives.  If he is trying to impair the grand jury's
22   investigation and the FBI's investigation, the government
23   wins and the Rule 29 motion ought to be denied.
24        On a factual point that Mr. Fischer pointed out,
25   Mr. Caldwell did not save everything, he deleted his

1    messages with Crowl, specific messages and then his entire

2    thread.  He also deleted over 100 messages with other

3    people, including about procuring a boat to transport the

4    weapons across the Potomac.  He deleted those messages.  He

5    didn't save them, they weren't still found later.  He

6    deletes those messages.

7              THE COURT:  But he's not charged with deleting

8    those messages.

9              MR. NESTLER:  He's not charged with deleting those

10   messages, but that is certainly evidence about his intent.

11   And we're talking about the evidence the jury could use --

12             THE COURT:  Right.

13             MR. NESTLER:  -- about his intent.  That's very

14   compelling evidence that he intended for the grand jury to

15   not have access to those kinds of messages.

16             THE COURT:  And where's the evidence about that --

17   about his deletion of other messages that are relevant to

18   the events?

19             MR. NESTLER:  We know from the Facebook records

20   from Crowl that Crowl and Caldwell had communications.

21             So let me back up for a second.

22             We've got Facebook returns from Caldwell and from

23   Crowl.  And it's 2001.T.1, it's page 174 that I'll get to in

24   a second.

25             But anyway, we've got Facebook records introduced

```
 1    into evidence from Caldwell and from Crowl.  The Caldwell
 2    records don't show any messages with Crowl.  But the Crowl
 3    messages do show communications with Caldwell, but not all
 4    of them, because some of them were deleted, and so you can
 5    see in there that the messages were -- some of the messages
 6    between Caldwell --
 7              THE COURT:  I guess -- you'll forgive me.
 8    I thought you were -- I was asking about the -- you
 9    referenced, for example, the deletion of messages concerning
10    procuring a boat.
11              MR. NESTLER:  Sure.
12              So he had a message and that's page 174.
13              THE COURT:  Those were text messages, right?
14              MR. NESTLER:  Those were Facebook messages.
15              THE COURT:  Facebook messages.  Okay.
16              MR. NESTLER:  Well, sorry.
17              He sent a lot of messages about procuring a boat,
18    some on text that were recovered from his phone, some via
19    Facebook.
20              And so we have up on the screen here, page 174
21    from Exhibit 2001.T.1 and we know that Caldwell was sent --
22    sorry, it's a reasonable inference that Caldwell was sending
23    a message about a boat related to the QRF because he sends
24    the message on January 2nd, he deletes it on the night of
25    January 14th, and we don't know where it is, it's gone.
```

1          But Matt Combs responds to him, that initial

2    message.  "Damn I wish I did LOL.  I'd be your captain for

3    sure.  I don't know anybody who has a boat.  Smoot has a

4    bass boat, it won't go on the Potomac, though."

5          Again, a reasonable inference, and the jury had

6    this evidence in front of then, is that Caldwell deleted

7    these messages, and they are gone, he didn't save a copy, so

8    that the grand jury would not have access to these messages,

9    so the grand jury would not know about Caldwell and his own

10   actions.

11          THE COURT:  Okay.

12          MR. NESTLER:  That gets back to one of the points

13   I just wanted to highlight for Your Honor.

14          The *Aguilar* case and *Young*, those were not --

15   those cases did not have the same level of publicity as this

16   case.  Those cases the grand jury generally worked in

17   secret, whether the FBI agent told the federal judge it was

18   a grand jury who was investigating is a little bit beside

19   the point.

20          Here we're talking about some very large scale

21   open case, where the primary evidence, especially at the

22   early stages when Caldwell would have been aware of this,

23   were the FBI identifying people based on photos and videos

24   and using that to track down suspects to arrest them and

25   charge them with felonies.

1          And so this investigation is just different from

2     those kinds of investigations.  In that sense, it's much

3     more like the Seventh Circuit cases where there are people

4     who are aware there's an impending investigation.  And this

5     topic didn't come up yet, but 1512(f) talks about how the

6     grand jury need not have even been impaneled, it only has to

7     be reasonably foreseeable.

8          THE COURT:  Right.

9          MR. NESTLER:  And so the fact that there was a

10    grand jury impaneled here -- but Caldwell doesn't need to

11    know a grand jury was impaneled.  He doesn't need to know

12    indictments were issued.  It has to be reasonably

13    foreseeable to him that indictments would be issued and that

14    the grand jury would be investigating.

15         And in this case, it should have been clear, and

16    it was -- we think the evidence certainly supports this

17    theory -- to Caldwell that the grand jury was investigating

18    Watkins and Crowl, their faces were out there in the news,

19    Watkins knew she was being investigated, she thought perjury

20    was bad, and her face was being associated with a dead cop.

21         When Caldwell deleted items from his Facebook

22    account, which he would have known would have been easier

23    for the FBI to access than going out and getting his phone

24    and then presenting that evidence to the grand jury, there's

25    a reasonable inference, and drawing all inferences in our

1    favor, that he did it to impair the grand jury from

2    accessing that evidence.

3                THE COURT:  Okay.  Thank you.

4                MR. FISCHER:  Your Honor, may I make a couple

5    points?

6                THE COURT:  Sure.

7                MR. FISCHER:  First of all, respectfully,

8    Mr. Nestler talks about the level of publicity as compared

9    to *Aguilar*.

10               So two points:  Number one, there really wasn't

11   evidence in the record about the level of -- unprecedented

12   level of publicity that Mr. Nestler is talking about.

13               I'll be the first to tell you, I certainly follow

14   the news, not everybody does, but I follow the news, and I

15   would agree that outside of the record, there was publicity,

16   and there was a lot of publicity.

17               But in the record, there was not evidence about

18   massive publicity.  What I recall was Agent Palian, and

19   I think the government cited it in its last filing, that

20   Agent Palian indicated that after Mr. Caldwell's arrest,

21   there was a lot of publicity.  But the deletions occurred

22   before he was arrested.

23               And I think they also cited Agent Moore, and

24   Agent Moore had indicated something to the effect that there

25   had been some arrests made but didn't specify what they were

1    for or go into any detail.  So the record is devoid of this

2    massive publicity, number one.

3              Number two, in the *Aguilar* decision, you couldn't

4    get any more -- any better publicity for Judge Aguilar.

5    Judge Aguilar knew there was an FBI investigation going on

6    and he knew there was a grand jury.  So, I mean --

7              THE COURT:  No, I know.

8              MR. FISCHER:  That's completely different.

9              THE COURT:  That's why I don't understand the

10   result of the case.

11             MR. FISCHER:  And I'd also point out, Your Honor,

12   drawing inferences, that after Mr. Caldwell became aware,

13   when Watkins and Crowl received the phone call to go back to

14   Ohio, and they went back because the FBI wanted to speak

15   with Ms. Watkins, there's absolutely no evidence that

16   Mr. Caldwell took any action to destroy any evidence.

17             So once he became aware, and you would reasonably

18   believe that a grand jury -- at that point, you might be

19   able to foresee a grand jury possibly, nothing was deleted.

20             So I think -- and I'd point out, Your Honor,

21   Mr. Caldwell -- I mean, I know the government -- the

22   government's looking at it from the point of view that they

23   think Mr. Caldwell is guilty and they think this, you know,

24   boat and everything, all the things they were saying that it

25   was part of this massive conspiracy, that's not what

1    Mr. Caldwell was thinking per his own messages.

2           And I'd also point out, why would Mr. Caldwell

3    think he was going to be charged since really no similarly

4    situated person who was outside the Capitol and did not

5    engage in violence has not been charged to my knowledge.  So

6    thank you, Your Honor.

7           THE COURT:  Certainly hadn't been to that point.

8           Okay.  All right.  Thank you.

9           All right.  Let's shift gears to talk about the

10   1512(c)(2) conviction.

11          Just to sort of set the stage here, as we all know

12   since the trial concluded, the Circuit issued the decision

13   in *U.S. versus Fischer* in which the panel splintered about

14   what was required to establish the element of "corruptly."

15          I think it's probably fair to say that, at a

16   minimum, the panel agreed that when obstructive action is

17   independently unlawful, that would satisfy the element of

18   corruptly.  And, of course, I'm also assuming that would

19   mean the person was cognizant of the wrongdoing, but leave

20   that to the side for the moment.

21          You know, since *Fischer*, the Circuit heard oral

22   argument in *U.S. versus Robertson*.  That panel certainly

23   doesn't seem to think it is bound by anything that was done

24   in *Fischer* with respect to the corruption element.

25          And two points about the oral argument.  I'm not

1    saying you can take anything to the bank about this

2    obviously.  But one is that the government's position in

3    that case was that the corrupt element can be established

4    either by independently unlawful means or if the person's

5    conduct was animated by a corrupt purpose.

6           And then ultimately, based upon a question that

7    Judge Pillard asked about, well, what's the narrowest ground

8    on which we could affirm here, and the government's position

9    was, well, as long as the conduct is independently

10   felonious, and in that case, the defendant had been charged

11   with other felonies, been convicted of other numbers,

12   including, I think, assaulting a police officer, would be

13   sufficient to establish -- or to meet the elements.

14          So in light of that, I asked the question, you

15   know, what is the conduct here that would satisfy the

16   "corruptly" element in light of the jury's verdicts which

17   absolved Mr. Caldwell of any conspiracy liability and any

18   conspiratorial liability.

19          And maybe I'm framing the question in my own mind

20   incorrectly.  But if we are asking ourselves -- I'm supposed

21   to be asking myself, one, what is the independently unlawful

22   conduct, it seems to me I don't think I can really rely on

23   the conduct of others, because the jury would not have

24   concluded beyond a reasonable doubt that Mr. Caldwell is

25   responsible for the conduct of others.  And, two, if the

1    independently unlawful conduct is at least -- or no more

2    than, let me put it that way, no more than being on

3    restricted grounds, is that sufficient to meet the element?

4            And, again, in *Robertson*, the question wasn't

5    squarely before the Court because there were felony charges

6    there.  It does seem to me that this case arguably does

7    potentially raise the question of whether violation of the

8    restricted grounds statutes could serve as an independent

9    basis.

10           So anyway, those are my thoughts and happy to hear

11   from the government first.

12           MR. NESTLER:  Thank you, Your Honor.

13           We were at the *Robertson* argument, and so we're

14   aware.

15           THE COURT:  I wasn't but I listened to it.

16           MR. NESTLER:  So -- and with all due respect,

17   Your Honor, we think that Your Honor is coming at this from

18   the wrong perspective.

19           And let me start back with some sort of larger

20   principles, which is, there is binding and longstanding

21   Supreme Court and D.C. Circuit case law that each count of

22   the jury's verdict needs to be evaluated on its own and that

23   the Court cannot and should not, at the Rule 29 stage, look

24   to the meaning of why the jury issued the verdict it did,

25   and cannot and should not look to, well, if the jury

1    acquitted of a conspiracy charge, then that is not an

2    appropriate position.

3         THE COURT:  I don't have any disagreement with

4    that, and that's not the perspective I'm taking, it is

5    slightly different, which is that, if an element of the

6    offense is independent, unlawful conduct, it seems to me

7    I cannot conclude, or put it differently, the jury could not

8    have concluded beyond a reasonable doubt that the

9    independent unlawful conduct was any of the charged

10   conspiracies.

11        MR. NESTLER:  We disagree.

12        We think the jury could have concluded that.  The

13   jury could have issued an inconsistent verdict.  And that is

14   what the Supreme Court case law and the D.C. Circuit case

15   law talks about.

16        And there's case law from other Circuits about

17   this topic, where trial judges were trying to divine, well,

18   if the jury acquitted of a conspiracy charge but convicted

19   of a substantive offense or vice versa, what did that mean

20   for the other charge for what they convicted of and what was

21   the factual basis that could have supported that charge in

22   light of the acquittal on the other charge?

23        THE COURT:  So you think the jury could have,

24   or -- well, let me put it differently.

25        You think there was sufficient evidence from which

1    the jury could have concluded that the independent unlawful

2    conduct was the conspiratorial acts with which he was

3    charged but ultimately acquitted?

4           MR. NESTLER:  Yes.  Much more, which I'll get into

5    in a minute.

6           THE COURT:  Okay.

7           MR. NESTLER:  But, yes, the jury could have

8    reached that conclusion and, drawing all inferences in the

9    government's favor, the jury could have reached that

10   conclusion.

11          THE COURT:  Okay.

12          MR. NESTLER:  And I have some cases from other

13   Circuits, if Your Honor would like, going to this idea that

14   the Court ought not to be looking at trying to divine

15   intent.  So there's a Sixth Circuit case from 1990, it's

16   *Clemmer*, C-l-e-m-m-e-r, 918 F.2d 570.  And there's a case

17   from the Tenth Circuit in 2012 called *Cornelius*, 696 F.3d

18   1307.

19         And we cited it in our opposition to the Rule 29

20   briefs, the longstanding cases from *Powell* and *Donovan* from

21   the Supreme Court about inconsistent verdicts.  And there's

22   some D.C. Circuit case law on that topic there but not as

23   specific as these other Circuits.

24         Now, with that being said, the position of the

25   government is that independent felonious conduct is

1    sufficient but not necessary to support corrupt intent.

2          And my colleague's response to Judge Pillard's

3    question was the narrowest grounds on which the Circuit

4    there could affirm in *Robertson*.  And there in *Robertson*,

5    Robertson was charged and convicted with felonies.  So that

6    is a very narrow ground.

7          THE COURT:  Right.

8          And to be clear, I wasn't suggesting that that

9    narrow ground was ultimately what the government conceded

10   the element's proof would require.

11         MR. NESTLER:  Sure.

12         We do not believe that a felonious act is required

13   to support an unlawful means.

14         And so if we're thinking about the different ways

15   that the government -- that the jury -- to support the

16   jury's verdict, which that's the perspective we need to come

17   at here on a Rule 29 standard, the different ways that the

18   jury's verdict could be supported.

19         One is that Caldwell himself obstructed the

20   congressional proceeding.  And for Caldwell to do that, he

21   needs to have had a corrupt intent as we talked about, and

22   that corrupt intent can be from his unlawful means or from

23   his improper purpose.

24         And I understand Your Honor's question from the

25   Minute Order and from today is asking what evidence there is

1    to support unlawful means, and so I'll get to that in a

2    second.  But I wanted to flag for the Court, the jury could

3    have found that Caldwell had improper purpose, and therefore

4    it made his intent corrupt, and therefore he could have

5    directly violated 1512(c)(2).  And so that is a basis to

6    deny the Rule 29 motion and affirm the jury's verdict.

7            Separately, the Court instructed the jury on

8    aiding and abetting and conspiracy liability to support the

9    1512(c)(2) charge.  Neither of those theories of liability

10   require Caldwell to have had a corrupt intent.

11           So the mens rea requirement for "aiding and

12   abetting" and for "conspiracy" is different than "corrupt."

13   And so the jury need not have found either that he had

14   improper purpose or used unlawful means.

15           And so the jury could have easily found that

16   Caldwell aided and abetted others, and/or that Caldwell

17   conspired with others.  Either of those two things would

18   support the (c)(2) charge.

19           THE COURT:  I'll just ask you on the attempt,

20   I mean, shouldn't that be -- wouldn't the attempt mens rea

21   be identical?

22           I mean, the definition -- or the jury instruction

23   read that, "An attempt to commit obstruction of an official

24   proceeding is a crime, even if the defendant did not

25   actually complete the crime of obstruction of an official

1    proceeding.  The first element was the defendant intended to

2    commit the crime of obstruction of an official proceeding."

3             That seems to me that -- I'm not sure of the

4    difference between having the intent and intending to have

5    the intent.

6             MR. NESTLER:  That's accurate.

7             So the defendant, to attempt to commit the (c)(2)

8    crime, he needed to have intended to commit the (c)(2)

9    crime --

10             THE COURT:  Right.

11             MR. NESTLER:  -- which would require --

12             THE COURT:  Which would require his mens rea to be

13    corrupt.

14             MR. NESTLER:  Correct, it would require a corrupt

15    mens rea.

16             THE COURT:  But the aiding and abetting would not

17    because all that requires is knowledge that somebody else

18    has the corrupt intent and you're providing an act in

19    further -- an act in furtherance of that.

20             MR. NESTLER:  Correct.

21             And the Circuit's been very clear that, for aiding

22    and abetting, the accomplice need not share the same

23    mens rea as the principal.

24             And, of course, for conspiracy liability, the

25    defendant need not share the mens rea of the other

1    co-conspirators, so long as the (c)(2) is committed in

2    furtherance of the conspiracy and it was reasonably

3    foreseeable to Caldwell.

4            So I mention all these because, before we even get

5    into talking about what evidence that's in the record that

6    the jury could have found that Caldwell had that used

7    unlawful means or intended to use unlawful means is actually

8    a more accurate way to put it because that would sweep in

9    the attempt to commit the (c)(2) as well.  There are these

10   other mechanisms by which the jury could have, and

11   we believe the evidence supports, found Caldwell guilty of

12   (c)(2).

13           So if we get into answering now Your Honor's

14   question, I'm sorry for that background but that's how we're

15   setting the stage --

16           THE COURT:  No, no.  That's okay.

17           MR. NESTLER:  -- which is, so Caldwell intended to

18   use unlawful means to support the corrupt intent.  We do

19   believe that those unlawful means could be misdemeanors,

20   they don't need to be felonious, I'm not sure there's a

21   corollary word for a "misdemeanor" but criminal.

22           And so his presence in the restricted area, in

23   violation of 18 U.S.C. 1752, would support using unlawful

24   means to act corruptly.  And Caldwell wasn't just in the

25   restricted area a foot or a yard inside of where the

1    barricades were, he was well past many layers of barricades,

2    he had climbed many layers of stairs through scaffolding to

3    get on to the inaugural stage, on to the parapet, where he

4    was 30 or 40 feet, as the evidence showed, from the

5    Lower West Terrace front door.

6              THE COURT:  Realistically, do you think the

7    Circuit would accept that?

8              I mean, I'm not suggesting there could be no

9    misdemeanor conduct that would suffice.  I mean, say, for

10   example, somebody came into the Capitol and didn't strike a

11   police officer but struck a civilian that was there en route

12   to the Senate floor.  That may be nothing more than a simple

13   assault under D.C. law.

14             But this is, you know, tantamount to a trespass

15   charge under federal law.  I just have a hard time getting

16   my head around the idea that the Circuit would accept a

17   misdemeanor trespass charge as the basis for the independent

18   unlawful conduct.

19             MR. NESTLER:  So there is more of a -- to answer

20   Your Honor's question -- well, two things:  One, yes, we do

21   believe that the Circuit would accept a misdemeanor trespass

22   charge as the independent unlawful basis to support the

23   corrupt intent.

24             The second point of that is that we don't believe

25   that's an appropriation consideration for Your Honor right

1  now, which is, will the Circuit ultimately accept that as a

2  theory.  That's more our problem than yours.

3            THE COURT:  Maybe I need to accept it as a theory;

4  we'll see.

5            MR. NESTLER:  That's a more valid point,

6  Your Honor.

7            THE COURT:  The two questions may not be all that

8  different, but in any event.

9            MR. NESTLER:  We do believe that is valid.

10            And we do believe the evidence here is more than

11  just that Caldwell committed what we would call a mere

12  trespass.  In his own words, he grabbed his American flag,

13  said, let's take the damn Capitol, people started surging

14  forward, climbing the scaffolding.  I said, let's storm the

15  place and hang the traitors.

16            He sent messages talking -- with photographs about

17  him and his wife storming, his words, the Capitol.  He

18  didn't even mind the tear gas.

19            There's also support that he either -- that he

20  aided and abetted others in committing destruction of

21  property.

22            THE COURT:  Can we pause for a moment about his

23  own descriptions of his conduct?  I mean, how much weight do

24  I really give to that?

25            In other words, he can describe what he did as

1  storming and he can describe his having done -- gotten past

2  barricades and the like, but it's pretty evident what he

3  did.  I mean, he did climb over that barrier wall that was

4  at the Lower West Terrace, make his way up to the stage,

5  where he was right in front of the Lower West Tunnel.  But I

6  don't know how much credence to put in some of the things

7  that he said here after the fact that don't really match up

8  with the video evidence.

9          MR. NESTLER:  Well, two things:  One, at the

10  Rule 29 standard, we believe that the jury -- that there's

11  evidence to support these and that the jury's verdict -- any

12  reasonable juror could have found these facts.

13          Two, at the second trial, Your Honor actually went

14  through one of Caldwell's messages, and he went through line

15  by line each of Caldwell's factual assertions, and

16  Your Honor actually found that I think nine of the ten or

17  some high percentage number of his factual assertions were

18  supported by the record about what he had said he had done

19  and observed were supported by the evidence in the record,

20  and that was the basis for Your Honor actually allowing the

21  government to admit one of Caldwell's statements in the

22  second trial.  So the answer is, Your Honor should give a

23  lot of credence to what Caldwell says he did, especially on

24  the night of January 6th and January 7th before he started

25  trying to hide his own involvement.

1          In terms of other unlawful means that Caldwell

2    used or aided and abetted, we do believe that 1361 charge

3    would also be there.  We have what Caldwell said.  He

4    climbed the steps after breaking two rows of barricades, his

5    words.  Then got on the parapet.  "People in front of me

6    broke through the doors, started duking it out with the pigs

7    who broke and ran.  Then we started stealing the cops' riot

8    shields and throwing fire extinguishers through windows."

9          Again, we're not saying that Caldwell himself had

10   to personally do those things, but he in his own words is

11   aiding and abetting others individuals who are breaking

12   through barricades, climbing up on the parapet, which he did

13   himself, duking it out with pigs, meaning fighting with

14   police officers, stealing riot shields, which we know is

15   going to be a felony offense, and throwing fire

16   extinguishers through windows.  And they're supported, as we

17   just indicated, from the evidence we went into in the second

18   trial and from photos of Caldwell's phone showing these

19   different pieces.

20          And to remind Your Honor, Caldwell wasn't just,

21   again, a mere trespasser.  We introduced the evidence that

22   Caldwell was by the peace fountain sort of earlier in the

23   day.

24          THE COURT:  Right.

25          MR. NESTLER:  And then we introduced that time

1   lapse video of him getting to the inaugural parapet.  He

2   went through hundreds, if not a thousand people, to push his

3   way through all of those people, up those multiple flights,

4   through the scaffolding, onto the inaugural parapet, just

5   outside of the Lower West Terrace tunnel door.  He's not

6   someone who was standing on the grass.  He actually was on

7   the Capitol itself.  And so we don't believe that he is a

8   mere trespasser, nor should the Court have to get into a

9   definition of what level of trespass someone was doing.

10          And, of course, we don't have video or photographs

11   of every second of Caldwell on the Capitol Grounds.  So we

12   have to be able to draw reasonable inferences about what he

13   actually did while he was there.  His own words that night

14   when he was bragging to others about what he had

15   accomplished, we do believe the Court can credit in order to

16   support the government -- support the government here on the

17   Rule 29 basis.  So those are his actions at the Capitol

18   itself that we believe are independently unlawful.  We do

19   believe that Caldwell's actions with respect to the QRF

20   hotel also support independently unlawful.

21          And before I even get to that, I do want to point

22   out one thing, which is that in case there was some sort of

23   dispute here about independently unlawful and wrongful, they

24   do have sort of distinct meanings on their Supreme Court

25   case law back to *Morissette*, which I think was cited in some

1    of the *Robertson* pleadings.

2              THE COURT:  Right.

3              MR. NESTLER:  So Caldwell's actions at the QRF

4    hotel, he did deposit a firearm at that hotel.  In our

5    case-in-chief, that evidence came in that he himself

6    deposited a firearm there.

7              And we do believe that his coordinating with

8    others to transport firearms to the QRF hotel and then

9    potentially into the District would violate 18 U.S.C.

10   231(a)(2), which is transportation of firearms to be used in

11   furtherance of a civil disorder.

12             That's leaving aside seditious conspiracy or

13   anything else.  We understand that was not charged here, but

14   that is a viable charge where Caldwell himself aided and

15   abetted and conspired with others to commit.  And so

16   depositing those firearms there, and the jury could have

17   reasonably found that Caldwell's depositing of those

18   firearms there supported his independently unlawful means to

19   support his corrupt intent.

20             And then if we can get into improper purpose, it

21   sounds like Your Honor is fine with improper purpose and

22   we're there, but we're talking purely about the means that

23   he used, the coordinating of sort of aquatic transportation

24   across the Potomac to bring the firearms into D.C., and also

25   coordinating others bringing firearms around the country to

1     the QRF hotel, would also support a 231(a)(2) charge.

2             THE COURT:  Is there a difference with the

3     improper purpose and the ultimate intent to obstruct?

4             MR. NESTLER:  I believe that's one of the

5     questions that the Circuit asked my colleague at the

6     *Robertson* oral argument, and that I think it's in

7     Judge Katsas's dissent in *Fischer* about sort of the

8     difference between the improper purpose and the purpose with

9     which someone was acting.

10            THE COURT:  And so what's the answer?

11           MR. NESTLER:  I flagged that the question had been

12     flagged previously, Your Honor.

13           We do believe that Caldwell -- that there is

14     sufficient evidence here that Caldwell did act with an

15     improper purpose.  My colleague in front of the -- in the

16     *Robertson* briefing and at the argument did point out the

17     four general theories about which somebody could have an

18     improper purpose, and we do believe that Caldwell satisfied

19     several of those based on what he intended to achieve with

20     his actions and with his people he aided and abetted and

21     conspired with.

22            THE COURT:  Let me just ask a very practical

23     question and that is:  What would your thoughts be if I were

24     to say, why don't we put Mr. Caldwell's sentencing off until

25     after we hear from the Circuit?  And the reason I suggest

1    that for him and him alone is he's the only one who's

2    convicted solely of 1512(c)(2).  And if I were to proceed

3    and agree with you and sentence him and it turns out I'm

4    wrong and we could get a decision hopefully in the next

5    couple months before the next term begins, wouldn't it be

6    prudent to do that, to wait to get some further clarity from

7    the Circuit?

8           The other defendants are differently situated

9    because even if that conviction falls for them, they'd been

10   convicted of other charges that would potentially sustain a

11   sentence.

12          MR. NESTLER:  We would prefer not.

13          We're comfortable having Mr. Caldwell sentenced

14   after Your Honor sentences the other eight defendants who

15   were convicted of conspiracy charges, so sort of changing

16   the order here.

17          We don't believe waiting for the Circuit's

18   decision in *Robertson* is necessary, or in light of

19   Judge Pillard's question about what's the narrowest grounds,

20   is going to provide much clarity here, and so we don't

21   believe that waiting --

22          THE COURT:  That is my fear.

23          MR. NESTLER:  -- it may not provide the clarity

24   Your Honor wants.

25          From our position, so long as the jury could have

1   found any basis to sustain the (c)(2) conviction and that is

2   an unlawful means or an improper purpose or aiding and

3   abetting or conspiracy liability for the (c)(2) charge, then

4   Caldwell's Rule 29 motion ought to be denied.

5          THE COURT:  And is the aiding and abetting, in

6   your view, is that based solely on his statements of his

7   aiding and abetting of unidentified others who were with him

8   on the grounds or aiding and abetting his co-conspirators?

9          MR. NESTLER:  Both.

10          So he aided and abetted other members of the

11   Oath Keepers in terms of their planning and where they --

12   what they were going to be doing that day and the

13   transportation of the firearms and their violent breach of

14   the building.

15          He aided and abetted other defendants here.

16          He also aided and abetted other unknown principals

17   les that day, who were, in his own words, duking it out with

18   the cops, stealing riot shields, and the like.

19          THE COURT:  In other words, your position is or

20   could be or you would say that he could have been convicted

21   or he could be convicted of that even though he himself --

22   say hypothetically I were to agree that the evidence didn't

23   show him to be a member of the conspiracy -- but that he

24   aided and abetted the underlying conspiracy?

25          MR. NESTLER:  I think technically he would have

1    aided and abetted the conspirators, but yes.

2          THE COURT:  Right.  That's what I mean, the

3    conspirators in furtherance of the conspiracy.

4          MR. NESTLER:  That is accurate.

5          And the jury could reasonably have found that.

6          And talking about the narrowest grounds to issue a

7    ruling, Your Honor could deny the Rule 29 motion just by

8    finding that and not getting into some of the other thornier

9    questions that might be circling around out there about what

10   the Circuit is going to decide in *Robertson*.

11         Thank you.

12         THE COURT:  Okay.

13         Let me hear from Mr. Fischer.

14         Mr. Fischer, I want to give Bill a couple minutes,

15   and then why don't we resume at 11:30, everyone.

16         Thank you, everyone.

17         COURTROOM DEPUTY:  All rise.

18         This Court stands in recess.

19         (Recess from 11:23 p.m. to 11:35 a.m.)

20         THE COURT:  Okay.  Mr. Fischer.

21         MR. FISCHER:  Thank you, Your Honor, if it pleases

22   the Court.

23         First of all, I believe there was -- the Court's

24   first question was -- or the first concern the Court had was

25   whether the government could rely on conduct of others to

1   support Mr. Caldwell's 1512 conviction.  I would point

2   out -- I disagree.

3           First of all, I disagree that you can aid and abet

4   a conspiracy.  Aiding and abetting is a specific-intent

5   crime.  So we have a name for people who aid and abet

6   conspiracies, they're called conspirators or

7   co-conspirators.  So I disagree with the government on that

8   point; I don't believe that's possible.

9           Secondly, as to aiding and abetting, I'd point out

10  the government still has not pointed out who the principal

11  was that Mr. Caldwell aided and abetted.  I understand that

12  you don't have to identify the specific person's name, but I

13  do think that you have to point somebody out who he actually

14  aided and abetted.

15          The Court pointed out, Mr. Caldwell's, you know,

16  colorful messages as rhetorical flourishes.  The

17  government's own witness, their chief case agent,

18  Agent Palian, the quarterback, I think he called himself, he

19  indicated that you couldn't trust Mr. Caldwell's messages.

20  He said Mr. Caldwell appeared not to be truthful in his

21  messages, I believe the testimony was.

22          And I would point out that based on Mr. Caldwell's

23  messages, the FBI came to the conclusion that Mr. Caldwell

24  was a commander inside the Oath Keepers organization, led a

25  stack into the United States Capitol, was a member of the

1    Oath Keepers.  And I believe there were some other

2    conclusions they draw -- or drew from that.

3         And Agent Palian even admitted that basically

4    based on information in the messages, the predication on

5    which the initial investigation was given its blessing

6    proved not to shake out.  The predication of him going into

7    the Capitol and being commander of the Oath Keepers just did

8    not materialize, so they relied on his messages.

9         The government got burned by his messages.  And,

10   in fact, I remember Ms. Rakoczy spent about an hour with

11   Agent Palian having Agent Palian explain to the jury why the

12   FBI made all of these mistakes and made all of these errors,

13   and Agent Palian said it was basically because Mr. Caldwell

14   wasn't truthful in his messages.  So the Court should give

15   his messages the weight they deserve, which is zero.

16        I'd point out I have on the screen here,

17   Your Honor, this is the government's slide in the

18   government's closing, and the government specifically argued

19   that the attack on the Capitol was an opportunity the

20   defendants seized.

21        So Mr. Caldwell was found not guilty of all the

22   conspiracy counts.  And the government's claim was that he,

23   as one of the defendants, seized the opportunity, in other

24   words, he did not anticipate the breach of the Capitol, did

25   not anticipate what happened, the riot and all that,

1    everything, all the unfortunate events that happened, and he
2    seized upon that opportunity.
3             And how did he seize upon it?  Him and his wife
4    sat at the Peace Fountain or stood around or sat around the
5    Peace Fountain for 80 minutes per the testimony or any
6    inferences drawn from the government's case.  We have no
7    idea, no testimony of what happened between when they left
8    the Peace Fountain until they got up basically to the
9    stairs.  There are photographs -- or there's video of them
10   being up on the inaugural stage.
11            I would point out, Your Honor, that the
12   Capitol Grounds are open 99.9 percent of the time.  The area
13   where Mr. Caldwell and his wife walked on the Capitol
14   Grounds are open.
15            THE COURT:  So let me ask you a question about
16   that.
17            I mean, the government takes the view or has said
18   that they think a violation of 1752 could serve as either
19   the independent criminal conduct or the unlawful means or
20   improper means by which the element could be satisfied.
21            You know, look, I have some scepticism that a mere
22   trespass by an individual would probably get there but why
23   not a person who's participating in what is a riot?
24            And, again, I understand what your position is
25   with respect to Mr. Caldwell's knowledge about where he was

1    and whether he thought he could be there.  But, at a

2    minimum, maybe you would agree that a jury could have

3    concluded that he knew exactly he wasn't supposed to be

4    there.

5              MR. FISCHER:  Well, I would submit to the Court,

6    first of all, Mr. Caldwell was not in his indictment charged

7    with a separate crime of which the jury could have found

8    beyond a reasonable doubt would constitute an independent

9    unlawful act, because if it's unlawful, it means it's a

10   separate crime.

11             THE COURT:  Well, it doesn't have to be charged.

12   I mean, there's no requirement that the government's

13   charge -- or identify specifically what the unlawful act is.

14   I mean, there's -- I don't think there's any such pleading

15   requirement, and certainly it wasn't requested in the jury

16   instructions but...

17             MR. FISCHER:  But I do believe the Court would

18   have to, as a matter of law, find that there was an

19   independent criminal act that was proven beyond a reasonable

20   doubt -- that there was sufficient evidence.

21             THE COURT:  Right.

22             MR. FISCHER:  And in this case, our Exhibit 80

23   introduced in the government's case clearly showed the

24   walkway.

25             THE COURT:  Exhibit 80?

1          MR. FISCHER:  I believe it was Exhibit 80.  It was

2    the walkway at the Peace Fountain.  And we showed the

3    part -- the government showed a portion where there were

4    police and barricades and signs that said "do not enter."

5    Mr. Caldwell arrived.  When he arrived, none of those

6    barricades and the police were gone.

7          THE COURT:  Right.

8          But I think those are factual disputes for the

9    jury to resolve ultimately.

10         I mean, I think just my view is, generally

11   speaking, that given what was happening that day and even

12   what Mr. Caldwell described he was witnessing in terms of

13   riot shields getting taken, pepper spray, et cetera, that a

14   reasonable juror could conclude that they knew -- somebody

15   in that situation would have known that they shouldn't have

16   been there --

17         MR. FISCHER:  Understood, Your Honor.

18         THE COURT:  -- or weren't authorized to be there.

19         But is that enough?  I mean, that's the question.

20   Is that enough?

21         MR. FISCHER:  To address the Court's point more

22   specifically, first of all, I believe it was clear that the

23   Circuit Court judges in the case that -- I listened to the

24   oral arguments also in the *Roberts* case, it appears that the

25   issue is sort of a hot potato that hasn't been specifically

1    addressed.

2            I would say to the Court -- I would submit that,

3    first of all, it would need to be a felony because -- the

4    independent act would have to be a felony because otherwise

5    you're taking misdemeanor conduct and turning it into a

6    20-year felony.  So I think on those grounds alone it would

7    have to be a felony.

8            I would also indicate or submit to the Court that

9    if the Court disagreed with that, at a minimum, I think the

10   crime would have to be malum in se, as opposed to malum

11   prohibitum, because I believe as Judge Kollar-Kotelly had

12   indicated in one of her opinions, and I believe

13   Judge Friedrich had talked about one portion of being

14   corrupt is malign, you have to have a malign intent; that

15   the conduct has to be evil; it has to be more than just

16   something that's malum prohibitum.  So I think if it was

17   malum in se -- or, I'm sorry, if malum in se was the

18   conduct, that would be one thing.  In this case, it's malum

19   prohibitum, it's trespassing, and I think that would be

20   another degree of separation.

21           And, finally --

22           THE COURT:  Your position is a misdemeanor that's

23   nothing more than a general-intent crime would not be

24   enough.

25           MR. FISCHER:  Correct, Your Honor.

1          I would also point out that under the *Fischer*

2    case, the act itself -- and I think this is a distinction as

3    well -- the act itself has to be an obstructive act per se.

4          So, for example, calling in a bomb threat during a

5    certification, that would clearly be an independent crime

6    and it would be independently per se an obstructive act.

7          Assaulting police officers inside the Capitol who

8    were guarding the proceeding knowing that that could full

9    well cause security issues, that would be an act in many

10   circumstances where per se it would be obstructive in

11   nature.

12         Simply crossing a barrier onto Capitol Grounds is

13   not itself an obstructive act per se.  And in this case, it

14   was followed up with Mr. Caldwell doing nothing but

15   saying -- basically chanting "U.S.A." a few times and then

16   exiting the stage.

17         So I think Your Honor could draw a line as a

18   felony.  And if the Court disagreed with that, it would have

19   to be something more than a malum prohibitum offense such as

20   trespassing.

21         Your Honor, I would also point out the government

22   keeps bringing up the QRF.  That was basically almost the

23   entire case against Mr. Caldwell was the QRF, and the jury

24   said no.

25         And so to use things regarding the QRF to come to

1    a conclusion about his conduct after the government says

2    that he did not anticipate -- they basically admit he did

3    not anticipate what was going on at the Capitol.  It's an

4    opportunity that was seized.  So I think the government has

5    to consider his behavior at that point, from the Peace

6    Fountain on up to what he did, and nothing that he did,

7    I believe, would show a corrupt intent whatsoever.

8            There were obviously other people that were

9    already in front of him.  And he did nothing -- the videos

10   also showed -- as far as aiding and abetting, the video

11   showed no communication between Mr. Caldwell and anybody

12   else.  It was only him and his wife.  So they have no

13   evidence that he communicated with another human being while

14   he was on the Capitol Grounds besides his wife, and that

15   communication was basically let's go, let's go, let's get

16   out of here.

17           I'd also point out, Your Honor, the barrier.

18   I think the Court referenced he had climbed over -- there

19   was, like, a little wall, a retaining wall, but that

20   actually was on his way off the Capitol Grounds, that was

21   not on the way up to the Capitol Grounds.

22           THE COURT:  I assume -- well, anyway.  I just

23   assumed that since he had to go over it on the way out, he

24   would have had to go over it on the way up, but maybe not, I

25   don't know.

1          MR. FISCHER:  And, of course, Congress, I mean,

2    was -- the event that caused the certification to stop was

3    the ordered evacuation which was obviously caused by rioters

4    that Mr. Caldwell had no connection with.

5          So he has no connection, he's not the cause of the

6    certification stopping, he's not on Capitol Grounds when

7    it's evacuated.  The government's presented no evidence that

8    he was on the grounds when, I believe, the House recessed at

9    2:29.  So he's not on the grounds, they can't put him on the

10   grounds at that point.  So at the time that the proceeding

11   is evacuated and recessed, he's not even on Capitol Grounds,

12   he's provably committed absolutely no crime at that point.

13         And then, of course, how is his intent to obstruct

14   when Congress isn't even in the building?  And his wife

15   indicated -- I remember she said something, it was a crude

16   remark, but she had indicated Congress had left on that

17   video and Mr. Caldwell was right by her when she made that

18   comment.

19         So they were obviously aware that Congress had

20   already left the building.  So how are you trying to

21   obstruct a proceeding that's been evacuated, not even there,

22   and not proceeding?  So I think the intent -- what basically

23   his intent was, to have his voice heard.

24         And, again, I would emphasize, Your Honor, that --

25         THE COURT:  Can I -- I'm sorry, Mr. Fischer,

1    finish your thought.

2              MR. FISCHER:  I lost my thought, so I'll defer to

3    the Court.

4              THE COURT:  That's my fault, I guess.

5              Go back to your point that you think there can be

6    no aiding and abetting of a conspiracy.  I guess I don't

7    know why that's the case.

8              I mean, you know, a conspiracy requires a

9    different level of intent, which is to join knowing what the

10   purpose of the unlawful conduct is.

11             Aiding and abetting doesn't require that level of

12   mens rea, it simply requires somebody to know that somebody

13   else is going to commit a crime and then assisting that

14   person in a substantial way.

15             So if there's sufficient evidence to conclude that

16   part of the 1512(c)(2) conspiracy that the jury found some

17   others guilty of was to have the QRF in place, or even the

18   seditious conspiracy, for that matter, was to have the QRF

19   in place for the potential to use it in case they felt it

20   was necessary to do so, and he has some understanding of

21   that, why isn't that enough to convict him of the

22   substantive count on an aiding-and-abetting theory?

23             MR. FISCHER:  Your Honor, first of all, I believe,

24   of course, the *Pinkerton* liability was presented to the

25   jury.

1          THE COURT:  This isn't *Pinkerton*.  This is aiding

2     and abetting.

3          MR. FISCHER:  Well, it would seem to me if you are

4     aiding and abetting a conspiracy, you've joined the

5     conspiracy.  I'm not sure how you could not join this

6     conspiracy, because you would have to have -- you would have

7     to have knowledge of what the conspirators are doing.  So if

8     you're aiding and abetting the conspiracy, you have the --

9     it's a specific-intent crime and, therefore, you are joining

10    that conspiracy.

11          Now, if you aided and abetted one particular

12    person who's in a conspiracy but you didn't realize there

13    was a conspiracy going on, then you're not aiding and

14    abetting the conspiracy.

15          But I would think, my understanding is, is that

16    because aiding and abetting's specific intent, you can't

17    just -- you can't choose I'll only aid and abet the

18    conspiracy.  You either join it or you don't.  And if you

19    help out a conspiracy knowing it's a conspiracy, you're a

20    co-conspirator.

21          And if the government has case law to the

22    contrary, I would like to see.  I've never heard of that

23    charge.  If it's there, I would be surprised.

24          THE COURT:  Okay.

25          MR. FISCHER:  Do you have any other questions,

1    Your Honor?

2            THE COURT:  I don't.  Thank you, Mr. Fischer.

3            MR. FISCHER:  Thank you, Your Honor.

4            THE COURT:  Mr. Nestler, any rebuttal?

5            MR. NESTLER:  We think Your Honor is correct;

6    Mr. Caldwell could have aided and abetted and the jury could

7    have found that he aided and abetted other conspirators,

8    other members of the conspiracy who were convicted here, and

9    that is sufficient and all Your Honor needs to find in order

10   to deny Caldwell's Rule 29 motion.

11           I will say here Mr. Fischer is wrong on a couple

12   of points.  Caldwell did communicate with others while on

13   the Capitol Grounds.  We introduced into evidence his

14   extensive Facebook messages with Godbold and Godbold and

15   Grimes about what he was doing, participating in while he

16   was on the Capitol Grounds.  He was trying to communicate

17   with Watkins while he was there.

18           THE COURT:  Right.

19           MR. NESTLER:  If we want to look at Caldwell's

20   intent, all we have to look at, Mr. Fischer calls it his

21   wife's colorful language.  Caldwell and his wife got all the

22   way up into the parapet, passed hundreds, if not a thousand

23   of people in front of them, pushed everyone else out of the

24   way, got there onto the parapet, and screamed about what

25   they wanted to accomplish, which is their presence, their

1    actions were going to drive Congress from the building

2    because Congress was scared of them.  That was the words

3    they were using, and that's what they wanted to accomplish.

4          Without getting into the malum in se and malum

5    prohibitum, this offense here was evil unto itself, it was

6    wrongful unto itself.  This is not an offense where it was a

7    strict liability offense.  The trespassing, if that's what

8    Mr. Fischer wants to call it here, was evil.

9          What Caldwell did was join a riot, and as part of

10   joining that riot, and the evidence is clear and certainly

11   drawing all reasonable inferences in our favor, that the

12   jury could have found that Caldwell intended to act

13   corruptly by what he was doing.  And that's all Your Honor

14   needs to find in order to deny the Rule 29 motion on this

15   basis.

16         THE COURT:  I guess my concern with that view is

17   what it means in terms of First Amendment concerns.  And he

18   can use the colorful language he wishes to have and we can

19   consider it evil or not, I suppose, but -- anyway, it's a

20   consideration, it seems to me, and I think it would be for

21   the Circuit, so...

22         MR. NESTLER:  We believe that his First Amendment

23   concerns, and we addressed this in some of the motions to

24   dismiss we went on about earlier, are gone.  By the time

25   that he is on top of the inaugural parapet, again, we're not

1    talking about somebody who trespassed by standing on the

2    grass at the back of the crowd.  He's at the front of the

3    crowd.

4           So by the time he got to where he is and he made

5    his intent clear about why he was there and what he wanted

6    to do and what he wanted his presence and the presence of

7    the people around him to do, which was to drive Congress out

8    of the building because Congress was scared of Caldwell and

9    the people that Caldwell was with, people that he was aiding

10   and abetting.

11          THE COURT:  Okay.

12          MR. NESTLER:  His statements there are not

13   First Amendment protected, they're actually evidence of what

14   his intent was.

15          And just as Ms. Rakoczy points out, we're not

16   saying and Your Honor doesn't need to find that every

17   trespass would support a corrupt intent.  Our point here is

18   the jury could have reasonably found that Caldwell's

19   trespass met the elements to support his corrupt intent

20   here --

21          THE COURT:  Okay.

22          MR. NESTLER:  -- in addition to all the other

23   factors we already talked about.

24          THE COURT:  Right.  Thank you.

25          MR. FISCHER:  Just a couple points, Your Honor.

1          Respectfully, Your Honor, I disagree with

2    Mr. Nestler.  There was no evidence that Mr. Caldwell

3    "pushed everyone out of the way."  There's no evidence of

4    that.

5          The government claims that Mr. Caldwell drove

6    Congress out of the building.  Congress was evacuated and

7    Mr. Caldwell is at the Peace Fountain with his wife.  He

8    didn't cause Congress to be evacuated.

9          He's not at the front of the crowd.  In fact, the

10   government's own exhibit showed there was a huge crowd that

11   was behind a police line, and at some point the police line

12   broke or disbanded or went up to a higher ground, and he was

13   at the back of that.  So it's not like he's leading a charge

14   up Capitol Hill like -- I would point out Mr. Caldwell sort

15   of suggested in one of his rhetorical flourishes about

16   picking up his flag and taking the Capitol.  That obviously

17   didn't happen.

18         There's closed-circuit TV that was all over

19   Capitol Hill.  I think the government -- if we're talking

20   about inferences, the government wants to take an

21   inference -- every inference goes towards Caldwell's guilt.

22   But one inference is the Capitol Hill was saturated with

23   video and there were cell phone video, yet, we don't have

24   any video that the government presented showing Mr. Caldwell

25   doing any of those things.  So, Your Honor, we ask you to

1    grant the motion.  Thank you.

2              THE COURT:  Thank you.

3              Okay.  So taking the most narrow possible

4    approach, I'm going to vacate Mr. Caldwell's sentencing on

5    Wednesday.  There's a lot to think about and I have a lot to

6    do between now and then.

7              Insofar as whether I wait until after the Circuit

8    rules, let me just think about whether that makes sense or

9    not and I'll get back to everybody.

10             But this has been very helpful.  I obviously

11   wanted to give this a great deal of thought before I made

12   any decisions.  And if there's any additional case law you

13   all want to submit, you know, obviously feel free to do that

14   as well, okay?

15             All right.  Anything else?

16             MR. EDWARDS:  Your Honor, I saw Mr. Shipley on

17   earlier but I don't see him on here now.  I just wanted to

18   confirm.

19             COURTROOM DEPUTY:  He's no longer on.

20             MR. EDWARDS:  Okay.

21             Well, I'll flag for the Court, I'll let

22   Mr. Shipley know.  We saw the email exchanges for

23   Wednesday's omnibus hearing, including former Lieutenant

24   T.K. Johnson.

25             We've been in touch with Mr. Johnson's attorney.

1   Mr. Johnson, according to his attorney, has not received the

2   subpoena and does not intend to be here on Wednesday.  So

3   we're happy to speak with Mr. Shipley to figure out if he

4   has different information, but we thought we'd flag it for

5   the Court for scheduling purposes, because I know other

6   defendants, according to Mr. Shipley, are apparently relying

7   on Mr. Johnson being there.

8              THE COURT:  Okay.

9              MR. EDWARDS:  Oh, can we confirm Wednesday's

10  schedule as well?

11             In the morning at the omnibus hearing, just for

12  purposes of us making sure that people are here at what

13  certain times, does the Court anticipate having victims come

14  in and provide statements before we get into the law?

15             THE COURT:  So I was going to issue something

16  today.

17             But the short answer is yes, the victim impact

18  statements I'd like to do at the very beginning.  Those

19  folks can be here and we can -- they can -- and then they'll

20  be done so they're not waiting for us to deal with the other

21  matters.

22             MR. EDWARDS:  Understood.  Thank you.

23             THE COURT:  We'll get an order out this afternoon

24  just with an order of operations, all right?

25             Thanks, everybody.  Please do not wait for me.

1          COURTROOM DEPUTY:  This Court stands in recess.

2          (Proceedings concluded at 11:57 a.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date:__May 29, 2023_____     

William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [5] 3/2 3/5
62/17 78/19 80/1
MR. EDWARDS: [4]
78/16 78/20 79/9 79/22
MR. FISCHER: [39]
5/10 21/21 22/10 22/25
24/4 24/18 25/20 28/4
28/7 28/20 29/8 29/15
30/22 31/23 32/8 33/1
33/21 33/23 34/14
36/19 42/4 42/7 43/8
43/11 62/21 66/5 66/17
66/22 67/1 67/17 67/21
68/25 71/1 72/2 72/23
73/3 73/25 74/3 76/25
MR. NESTLER: [74]
4/4 4/18 5/7 5/12 6/21
7/11 7/18 8/4 8/14 8/19
8/22 9/23 11/3 11/24
12/3 12/5 12/8 12/22
13/8 13/13 13/15 14/1
15/25 16/5 16/12 17/13
19/3 19/6 19/14 19/18
20/10 20/12 21/17
28/13 28/23 36/23 38/9
38/13 38/19 39/11
39/14 39/16 40/12 41/9
46/12 46/16 47/11 48/4
48/7 48/12 49/11 51/6
51/11 51/14 51/20
52/17 53/19 54/5 54/9
55/9 56/25 58/3 59/4
59/11 60/12 60/23 61/9
61/25 62/4 74/5 74/19
75/22 76/12 76/22
THE COURT: [118]

# 0

0826 [1] 1/21

# 1

10 [2] 1/4 3/7
100 [1] 38/2
10:03 [1] 1/6
10th [2] 4/25 5/21
11:23 [1] 62/19
11:30 [1] 62/15
11:35 [1] 62/19
11:57 [1] 80/2
11th [1] 28/15
13 [1] 22/12
1307 [1] 48/18
1361 [1] 56/2
14 [1] 8/21
14th [7] 4/13 6/12 6/16
7/4 7/12 11/10 39/25
1503 [1] 14/3
1512 [9] 17/3 36/22
41/5 44/10 50/5 50/9
60/2 63/1 72/16
1626 [2] 6/23 8/22
167 [1] 22/13
174 [3] 38/23 39/12
39/20
1752 [2] 52/23 65/18
18 [2] 52/23 58/9

# 2

1940s [1] 30/11
1990 [1] 48/15
19th [1] 22/13

# 2

20-year [1] 68/6
20001 [1] 2/5
2001.T.1 [3] 4/23 38/23
39/21
2012 [1] 48/17
202 [2] 1/15 2/5
2021 [2] 22/13 22/14
2023 [2] 1/5 81/7
20530 [1] 1/15
21061-3065 [1] 1/21
22 [1] 1/5
22-15-10 [2] 1/4 3/7
231 [2] 58/10 59/1
252-7277 [1] 1/15
29 [16] 1/9 10/24 12/19
37/7 37/23 46/23 48/19
49/17 50/6 55/10 57/17
61/4 62/7 74/10 75/14
81/7
29s [1] 3/18
2:29 [1] 71/9
2nd [1] 39/24

# 3

30 [2] 33/12 53/4
300 [1] 1/20
3065 [1] 1/21
3249 [1] 2/5
333 [1] 2/4
354-3249 [1] 2/5

# 4

40 [1] 53/4
410 [1] 1/21

# 5

555 [1] 1/14
570 [1] 48/16

# 6

60 [1] 33/3
60-plus [1] 33/10
696 [1] 48/17
6th [7] 7/1 22/13 22/16
24/12 28/3 33/6 55/24

# 7

7277 [1] 1/15
7310 [1] 1/20
787-0826 [1] 1/21
7th [3] 9/9 16/2 55/24

# 8

80 [4] 65/5 66/22 66/25
67/1
89 [3] 4/23 5/1 5/19
8th [4] 4/24 5/23 10/17
11/9

# 9

90 [3] 33/3 33/11 33/12
9061 [1] 10/18
9079 [1] 10/6

99.9 [1] 65/12

# A

a.m [3] 1/6 62/19 80/2
abet [3] 63/3 63/5
73/17
abetted [15] 50/16
54/20 56/2 58/15 59/20
61/10 61/15 61/16
61/24 62/1 63/11 63/14
73/11 74/6 74/7
abetting [20] 50/8
50/12 51/16 51/22
56/11 61/3 61/5 61/7
61/8 63/4 63/9 70/10
72/6 72/11 72/22 73/2
73/4 73/8 73/14 76/10
abetting's [1] 73/16
ability [1] 32/2
able [2] 43/19 57/12
about [109]
above [1] 81/4
above-titled [1] 81/4
absolutely [4] 23/18
34/22 43/15 71/12
absolved [1] 45/17
absolves [1] 33/19
accept [5] 53/7 53/16
53/21 54/1 54/3
access [8] 13/18 13/21
14/21 16/8 16/13 38/15
40/8 41/23
accesses [1] 6/14
accessible [1] 13/17
accessing [2] 6/16
42/2
accomplice [1] 51/22
accomplish [2] 74/25
75/3
accomplished [1]
57/15
according [4] 11/17
22/18 79/1 79/6
account [2] 22/14
25/18 41/22
accurate [5] 12/3 18/11
51/6 52/8 62/4
accused [2] 10/22
15/11
achieve [1] 59/19
acknowledges [1] 27/7
acquittal [1] 47/22
acquitted [3] 47/1
47/18 48/3
across [2] 38/4 58/24
act [17] 37/20 49/12
51/18 51/19 52/24
59/14 66/9 66/13 66/19
68/4 69/2 69/3 69/3
69/6 69/9 69/13 75/12
acted [1] 16/22
acting [1] 59/9
action [2] 43/16 44/16
actions [8] 20/17 21/11
40/10 57/17 57/19 58/3
59/20 75/1
acts [3] 11/5 14/13

actual [1] 28/6
actually [15] 6/10 8/2
14/5 25/2 36/3 50/25
52/7 55/13 55/16 55/20
57/6 57/13 63/13 70/20
76/13
addition [1] 76/22
additional [1] 78/12
address [1] 67/21
addressed [2] 68/1
75/23
admit [2] 55/21 70/2
admitted [3] 21/1
35/14 64/3
Adrian [1] 6/5
advise [1] 10/20
affect [1] 36/4
affiliated [1] 17/17
affirm [4] 14/5 45/8
49/4 50/6
after [19] 6/15 11/5
19/23 20/17 22/21
22/22 23/3 23/10 23/22
29/10 31/21 42/20
43/12 55/7 56/4 59/25
60/14 70/1 78/7
afternoon [1] 79/23
again [11] 3/14 9/9
12/13 30/10 40/5 46/4
56/9 56/21 65/24 71/24
75/25
against [18] 3/19 10/24
11/14 13/12 13/12
14/12 14/23 15/6 15/7
16/24 17/2 17/3 17/4
17/10 23/20 23/22
25/17 69/23
agent [20] 8/14 15/11
16/17 23/8 27/6 28/24
29/1 29/9 29/9 40/17
42/18 42/20 42/23
42/24 63/17 63/18 64/3
64/11 64/11 64/13
Agent Moore [1] 42/24
Agent Palian [7] 42/18
42/20 63/18 64/3 64/11
64/11 64/13
agents [1] 12/24
agree [9] 4/6 4/7 4/8
19/5 25/4 42/15 60/3
61/22 66/2
agreed [1] 44/16
Aguilar [9] 9/21 14/3
15/8 21/23 27/4 27/5
27/9 27/9 40/14 42/9
43/3 43/4 43/5
aid [3] 63/3 63/5 73/17
aided [16] 2/7 50/16
54/20 56/2 58/14 59/20
61/10 61/15 61/16
61/24 62/1 63/11 63/14
73/11 74/6 74/7
aiding [21] 50/8 50/11
51/16 51/21 56/11 61/2
61/5 61/7 61/8 63/4
63/9 70/10 72/6 72/11
72/22 73/1 73/4 73/8
anybody [4] 27/18
35/11 40/3 70/11

A/13 73/16 76/9
Alexandra [1] 3/9
all [54] 3/2 3/16 3/22
4/5 4/6 8/6 9/1 20/19
20/25 21/22 22/12 25/4
26/15 26/17 29/25
30/23 31/15 36/12 37/4
39/3 41/25 42/7 43/24
44/8 44/9 44/11 46/16
48/8 51/17 52/4 54/7
57/3 62/17 62/23 63/3
64/12 64/12 64/21
64/25 65/1 66/6 67/22
68/3 72/23 74/9 74/20
74/21 75/11 75/13
76/22 77/18 78/13
78/15 79/24
all right [2] 9/1 79/24
allegedly [3] 10/18
23/17 31/4
alleges [1] 22/12
allowed [1] 23/7
allowing [1] 55/20
almost [2] 29/2 69/22
alone [2] 60/1 68/6
along [2] 24/4 24/5
already [7] 14/10 16/19
23/11 28/24 70/9 71/20
76/23
also [28] 4/8 7/22
11/25 14/22 18/1 23/24
27/17 29/12 30/7 32/20
35/4 38/2 42/23 43/11
44/2 44/18 54/19 56/3
57/20 58/24 59/1 61/16
67/24 68/8 69/1 69/21
70/10 70/17
alternative [1] 24/9
although [1] 26/3
am [1] 20/14
Amendment [3] 75/17
75/22 76/13
AMERICA [2] 1/3 3/7
American [1] 54/12
AMIT [2] 1/10 3/3
Amit P. Mehta [1] 3/3
amount [4] 11/14 26/9
28/25 29/11
animated [1] 45/5
another [3] 33/17
68/20 70/13
answer [6] 13/9 28/23
53/19 55/22 59/10
79/17
answering [1] 52/13
anticipate [5] 64/24
64/25 70/2 70/3 79/13
anticipation [1] 11/22
any [29] 7/16 10/20
12/21 22/3 29/3 29/13
29/24 37/5 39/2 43/1
43/4 43/4 43/16 43/16
45/17 45/17 47/3 47/9
54/8 55/11 61/1 65/5
66/14 73/25 74/4 77/24
77/25 78/12 78/12

**A**

anyone [2]  20/4 28/2
anyone's [1]  29/3
anything [8]  10/19
20/11 21/16 28/11
44/23 45/1 58/13 78/15
anyway [4]  38/25
46/10 70/22 75/19
app [1]  11/18
apparently [1]  79/6
APPEARANCES [2]
1/12 1/23
appeared [1]  63/20
appearing [1]  3/12
appears [2]  24/23
67/24
appellate [2]  31/7 31/9
approach [1]  78/4
appropriate [1]  47/2
appropriation [1]
53/25
aquatic [1]  58/23
are [41]  4/22 5/3 5/14
7/13 9/24 13/20 14/13
16/7 17/16 20/3 25/2
26/14 26/23 33/18 34/3
34/7 36/3 36/5 38/17
40/7 41/3 41/4 45/20
46/10 52/9 56/11 57/17
57/18 60/8 65/9 65/12
65/14 67/8 71/20 73/3
73/7 73/9 75/24 76/12
79/6 79/12
area [3]  52/22 52/25
65/12
arguably [1]  46/6
argued [2]  31/14 64/18
arguing [1]  31/20
argument [6]  13/16
44/22 44/25 46/13 59/6
59/16
arguments [1]  67/24
around [6]  53/16 58/25
62/9 65/4 65/4 76/7
arrest [7]  5/24 9/18
15/23 24/15 28/22
40/24 42/20
arrested [12]  5/25 6/7
20/14 21/4 23/3 23/11
24/11 27/2 28/2 29/10
31/3 42/22
arresting [1]  5/24
arrests [11]  5/2 6/2
9/25 15/22 27/14 27/15
28/6 37/11 37/12 37/13
42/25
arrived [2]  67/5 67/5
article [47]  4/24 5/1
5/14 5/16 5/17 5/22
5/23 5/25 6/3 6/4 6/9
6/10 6/12 6/14 6/16
6/17 6/19 6/20 6/22
6/22 6/24 7/2 7/3 7/6
7/7 7/17 8/9 8/11 8/13
15/4 16/1 20/1 20/22
20/22 21/3 24/24 25/1
25/14 25/22 26/16 27/1
27/12 27/14 34/1 34/1

articles [3]  7/8 25/13
27/20
as [68]  3/18 4/13 6/25
8/22 14/21 17/5 17/11
17/17 22/1 22/25 23/14
23/14 23/16 23/16
23/24 24/24 25/5 25/24
25/24 27/5 27/19 27/19
30/11 32/1 32/20 32/23
34/4 34/6 34/16 34/16
34/20 40/15 42/8 44/11
45/9 45/9 46/8 48/22
48/23 49/21 51/23 52/1
52/9 53/4 53/17 53/22
54/1 54/3 54/25 56/16
60/25 63/9 63/16 64/23
65/18 66/18 68/10
68/11 69/2 69/17 69/19
70/10 70/10 75/9 76/15
78/7 78/14 79/10
aside [2]  17/1 58/12
ask [12]  12/4 12/8 13/6
16/20 27/25 28/1 28/21
30/15 50/19 59/22
65/15 77/25
asked [6]  3/16 3/22
33/24 45/7 45/14 59/5
asking [4]  39/8 45/20
45/21 49/25
asks [2]  20/4 32/16
assault [1]  53/13
assaulting [2]  45/12
69/7
assaults [1]  21/9
assertions [2]  55/15
55/17
assistance [1]  24/16
assisting [1]  72/13
associated [2]  20/7
20/16 27/18 41/20
associates [1]  29/19
association [1]  18/14
assume [3]  33/24 34/2
70/22
assumed [1]  70/23
assuming [1]  44/18
attack [6]  5/3 6/1 21/4
22/15 22/19 64/19
attempt [5]  50/19
50/20 50/23 51/7 52/9
attorney [2]  78/25 79/1
ATTORNEY'S [1]  1/14
authorized [1]  67/18
automatically [1]
30/19
availability [4]  32/15
34/18 34/21 34/25
available [4]  3/17
33/16 34/22 34/23
Avenue [1]  2/4
avoid [2]  18/20 24/6
aware [17]  9/10 9/16
9/17 15/20 15/20 18/6
22/23 24/11 24/12 36/2
37/14 40/22 41/4 43/12
43/17 44/14 71/19
awareness [5]  10/11

away [4]  7/25 13/21
26/19 35/8

**B**

back [15]  5/18 16/1
16/15 18/1 19/6 38/21
40/12 43/13 43/14
46/19 57/25 72/5 76/2
77/13 78/9
background [1]  52/14
bad [5]  20/3 20/6 21/12
30/2 41/20
bank [1]  45/1
Barrett [1]  2/4
barricades [7]  53/1
53/1 55/2 56/4 56/12
67/4 67/6
barrier [3]  55/3 69/12
70/17
based [11]  14/6 15/3
19/9 24/10 31/10 40/23
45/6 59/19 61/6 63/22
64/4
basically [10]  23/13
30/4 64/3 64/13 65/8
69/15 69/22 70/2 70/15
71/22
basis [11]  12/16 12/19
46/9 47/21 50/5 53/17
53/22 55/20 57/17 61/1
75/15
bass [1]  40/4
bathtub [1]  36/10
be [118]
bear [1]  37/20
became [2]  43/12
43/17
because [46]  3/18 5/21
7/19 8/5 11/1 11/3
13/11 15/21 23/21
24/23 25/6 26/10 26/14
27/5 29/6 29/19 30/20
30/22 30/24 31/15
31/17 32/13 34/24 35/8
36/12 36/13 37/12 39/4
39/23 43/14 45/23 46/5
51/17 52/4 52/8 60/9
64/13 66/9 68/3 68/4
68/11 73/6 73/16 75/2
76/8 79/5
been [42]  4/15 6/25
9/16 9/17 12/10 12/11
12/14 15/12 15/20 18/6
19/14 23/3 23/11 23/15
24/11 24/12 25/21 29/7
32/18 33/15 34/24
35/13 37/9 37/10 40/22
41/6 41/15 41/22 42/25
44/5 44/7 45/10 45/11
51/21 59/11 60/9 61/20
67/16 67/25 71/21
78/10 78/25
before [17]  1/10 11/18
12/1 13/21 15/16 22/8
28/22 29/13 32/10
42/22 46/5 52/4 55/24
57/21 60/5 78/11 79/14

beginning [1]  79/18
begins [1]  60/5
begs [1]  28/20
behalf [1]  4/3
behavior [1]  70/5
behind [1]  77/11
being [26]  5/25 6/7
9/11 9/15 10/16 10/22
14/11 17/5 17/6 17/17
20/7 20/15 21/2 23/4
24/11 27/3 35/19 41/19
41/20 46/2 48/24 64/7
65/10 68/13 70/13 79/7
believe [45]  4/19 9/12
12/10 12/14 18/10
19/18 24/19 26/3 28/14
31/23 32/12 32/13
43/18 49/12 52/11
52/19 53/21 53/24 54/9
54/10 55/10 56/2 57/7
57/15 57/18 57/19 58/7
59/4 59/13 59/18 60/17
60/21 62/23 63/8 63/21
64/1 66/17 67/1 67/22
68/11 68/12 70/7 71/8
72/23 75/22
believes [1]  11/24
benefit [2]  12/7 19/12
beside [1]  40/18
besides [1]  70/14
best [1]  26/18
better [2]  5/9 43/4
between [15]  4/10
10/11 16/16 19/20
19/21 19/22 22/13
24/20 34/5 39/6 51/4
59/8 65/7 70/11 78/6
beyond [7]  11/21 31/12
34/20 45/24 47/8 66/8
66/19
Bill [1]  62/14
binding [1]  46/20
bit [1]  40/18
bizarre [1]  15/9
blessing [1]  64/5
boat [7]  38/3 39/10
39/17 39/23 40/3 40/4
43/24
bomb [1]  69/4
both [5]  13/13 13/14
19/14 24/11 61/9
bottom [1]  5/19
bound [1]  44/23
bragging [1]  57/14
breach [2]  61/13 64/24
breaching [2]  16/3
19/24
breaking [2]  56/4
56/11
Brief [1]  12/5
briefing [2]  12/11
59/16
briefs [1]  48/20
bright [1]  24/19
bring [1]  58/24
bringing [2]  58/25
69/22

broke [3]  56/6 56/7
77/12
build [3]  16/24 17/10
25/17
building [15]  9/6 11/17
15/23 16/3 19/24 23/16
23/20 23/21 25/12
61/14 71/14 71/20 75/1
76/8 77/6
bunch [1]  22/5
burned [1]  64/9
Burnie [1]  1/21
button [1]  33/3

**C**

C-l-e-m-m-e-r [1]  48/16
CALDWELL [145]
Caldwell's [35]  6/6
7/14 7/20 7/23 8/7 8/10
11/10 11/19 20/17
25/24 28/22 30/8 31/23
33/7 33/9 42/20 55/14
55/15 55/21 56/18
57/19 58/3 58/17 59/24
61/4 63/1 63/15 63/19
63/22 65/25 74/10
74/19 76/18 77/21 78/4
call [2]  43/13 54/11
75/8
called [4]  29/15 48/17
63/6 63/18
calling [1]  69/4
calls [1]  74/20
came [3]  53/10 58/5
63/23
can [41]  4/22 5/5 5/7
5/10 5/11 5/19 8/15
9/19 9/23 10/2 12/4
12/23 13/6 13/21 16/8
24/6 26/12 30/23 30/24
32/16 33/24 37/20 39/4
45/1 45/3 45/22 49/22
54/22 54/25 55/1 57/15
58/20 63/3 71/25 72/5
75/18 75/18 79/9 79/19
79/19 79/19
can't [3]  71/9 73/16
73/17
cannot [4]  4/8 46/23
46/25 47/7
Capitol [45]  5/3 5/24
6/1 6/1 6/8 6/18 7/1
8/10 9/4 9/11 9/15
10/19 11/17 13/4 18/3
21/4 22/16 22/19 44/4
53/10 54/13 54/17 57/7
57/11 57/17 63/25 64/7
64/19 64/24 65/12
65/13 69/7 69/12 70/3
70/14 70/20 70/21 71/6
71/11 74/13 74/16
77/14 77/16 77/19
77/22
Capitol Building [1]
11/17
Capitol Grounds [5]
65/12 69/12 70/14 71/6
71/11

**C**

**captain [1]** 40/2
**careful [1]** 18/20
**case [67]** 3/6 6/21 7/2
7/5 7/23 10/24 12/25
14/4 14/18 15/9 16/24
17/10 18/14 21/23
21/24 23/13 23/16
23/20 23/22 24/25 25/6
25/17 29/3 30/19 30/20
31/7 34/2 35/5 35/7
35/11 35/17 35/25 36/1
36/6 36/17 40/14 40/16
40/21 41/15 43/10 45/3
45/10 46/6 46/21 47/14
47/14 47/16 48/15
48/16 48/22 57/22
57/25 58/5 63/17 65/6
66/22 66/23 67/23
67/24 68/18 69/2 69/13
69/23 72/7 72/19 73/21
78/12
**cases [10]** 14/16 22/5
22/7 24/19 36/14 40/15
40/16 41/3 48/12 48/20
**cause [3]** 69/9 71/5
77/8
**caused [2]** 71/2 71/3
**cell [1]** 77/23
**certain [1]** 79/13
**certainly [11]** 17/23
18/5 25/22 37/17 38/10
41/16 42/13 44/7 44/22
66/15 75/10
**certification [3]** 69/5
71/2 71/6
**Certified [1]** 2/3
**certify [1]** 81/2
**cetera [1]** 67/13
**CH [1]** 2/4
**chambers [1]** 14/16
**changing [1]** 60/15
**chanting [1]** 69/15
**charge [26]** 9/18 11/13
11/23 12/2 12/17 14/2
21/18 22/17 40/25 47/1
47/18 47/20 47/21
47/22 50/9 50/18 53/15
53/17 53/22 56/2 58/14
59/1 61/3 66/13 73/23
77/13
**charged [28]** 11/6
12/11 12/13 12/14
14/24 15/1 15/3 15/5
15/7 20/15 23/11 25/3
28/2 28/9 28/10 34/17
35/1 38/7 38/9 44/3
44/5 45/10 47/9 48/3
49/5 58/13 66/6 66/11
**charges [8]** 14/3 14/3
21/7 21/10 21/10 46/5
60/10 60/15
**charging [1]** 25/8
**chat [3]** 10/18 11/2
11/4
**chief [6]** 6/21 7/5 12/25
30/19 58/5 63/17
**choose [1]** 73/17

**circling [1]** 62/9
**circuit [24]** 14/15 14/17
35/17 41/3 44/12 44/21
46/21 47/14 48/15
48/17 48/22 49/3 53/7
53/16 53/21 54/1 59/5
59/25 60/7 62/10 67/23
75/21 77/18 78/7
**Circuit's [2]** 51/21
60/17
**Circuits [3]** 47/16
48/13 48/23
**circulation [1]** 18/3
**circumstances [2]**
12/20 69/10
**circumstantial [2]**
18/18 24/8
**citation [1]** 29/9
**cite [1]** 36/1
**cited [8]** 14/4 31/6 35/4
36/6 42/19 42/23 48/19
57/25
**cites [1]** 36/1
**citing [1]** 35/16
**civil [1]** 58/11
**civilian [1]** 53/11
**claim [1]** 64/22
**claims [1]** 77/5
**clarity [3]** 60/6 60/20
60/23
**cleaned [2]** 35/9 35/10
**cleaning [1]** 35/15
**clear [12]** 8/1 14/17
18/13 21/5 21/9 25/6
41/15 49/8 51/21 67/22
75/10 76/5
**clearly [3]** 8/9 66/23
69/5
**Clemmer [1]** 48/16
**client [1]** 10/20
**climb [1]** 55/3
**climbed [3]** 53/2 56/4
70/18
**climbing [2]** 54/14
56/12
**close [1]** 30/20
**closed [1]** 77/18
**closed-circuit [1]**
77/18
**closing [1]** 64/18
**cloud [2]** 13/20 16/8
**CNN [9]** 4/24 5/2 5/22
5/23 20/22 21/3 27/12
37/10 37/12
**co [12]** 6/11 6/17 9/11
10/1 10/15 14/12 14/23
15/2 52/1 61/8 63/7
73/20
**co-conspirator [1]**
73/20
**co-conspirators [11]**
6/11 6/17 9/11 10/1
10/15 14/12 14/23 15/2
52/1 61/8 63/7
**cognizant [1]** 44/19
**colleague [2]** 59/5
59/15

**color [1]** 25/12
**colorful [1]** 63/16
74/21 75/18
**COLUMBIA [1]** 1/1
**Combs [1]** 40/1
**come [12]** 4/5 7/20 8/6
8/7 8/12 23/6 29/24
34/8 41/5 49/16 69/25
79/13
**comfortable [1]** 60/13
**coming [5]** 7/14 8/5
10/13 24/16 46/17
**commander [2]** 63/24
64/7
**comment [1]** 71/18
**comments [1]** 10/2
**commit [11]** 10/8 10/10
14/9 34/11 50/23 51/2
51/7 51/8 52/9 58/15
72/13
**committed [4]** 12/16
52/1 54/11 71/12
**committing [1]** 11/5
54/20
**communicate [2]**
74/12 74/16
**communicated [1]**
70/13
**communicating [1]**
10/5 17/21 17/22
**communication [3]**
7/14 70/11 70/15
**communications [4]**
16/7 17/19 38/20 39/3
**company [1]** 32/25
**compared [2]** 22/2
42/8
**compelling [1]** 38/14
**complaining [1]** 29/18
**complete [1]** 50/25
**completely [2]** 35/10
43/8
**computer [3]** 2/7 5/5
36/10
**computer-aided [1]**
2/7
**conceded [1]** 49/9
**concept [1]** 31/24
**concern [1]** 18/25
62/24 75/16
**concerning [1]** 39/9
**concerns [2]** 75/17
75/23
**conclude [4]** 30/16
47/7 67/14 72/15
**concluded [9]** 19/11
31/11 44/12 45/24 47/8
47/12 48/1 66/3 80/2
**conclusion [5]** 15/9
48/8 48/10 63/23 70/1
**conclusions [1]** 64/2
**concretely [1]** 6/10
**condition [1]** 33/7
**conduct [30]** 4/17 4/17
19/2 19/4 19/8 25/13
26/8 28/3 36/3 45/5
45/9 45/15 45/22 45/23

**color [1]** 25/12
**confirm [2]** 78/18 79/9
**conflating [1]** 18/20
**Congress [11]** 71/1
71/14 71/16 71/19 75/1
75/2 76/7 76/8 77/6
77/6 77/8
**congressional [1]**
49/20
**connect [1]** 10/25
**connected [1]** 26/20
**connection [4]** 18/7
21/13 71/1 71/5
**consciousness [1]**
18/14
**consider [2]** 70/5
75/19
**consideration [3]** 3/23
53/25 75/20
**conspiracies [3]** 7/6
47/10 63/6
**conspiracy [33]** 28/10
43/25 45/17 47/1 47/18
50/8 50/12 51/24 52/2
58/12 60/15 61/3 61/23
61/24 62/3 63/4 64/22
72/6 72/8 72/16 72/18
73/4 73/5 73/6 73/8
73/10 73/12 73/13
73/14 73/18 73/19
73/19 74/8
**conspirator [1]** 73/20
**conspiratorial [2]**
45/18 48/2
**conspirators [16]** 6/11
6/17 9/11 10/1 10/15
14/12 14/23 15/2 52/1
61/8 62/1 62/3 63/6
63/7 73/7 74/7
**conspired [3]** 50/17
58/15 59/21
**constitute [1]** 66/8
**Constitution [1]** 2/4
**content [2]** 23/2 23/9
**contents [1]** 23/7
**context [3]** 29/7 29/17
30/6
**contextually [1]** 29/18
**CONTINUED [1]** 2/1
**contrary [2]** 30/2 73/22
**convened [1]** 28/13
**conversation [2]** 20/6
21/14
**convict [1]** 72/21
**convicted [10]** 45/11
47/18 47/20 49/5 60/2
60/10 60/15 61/20
61/21 74/8
**conviction [6]** 14/6
19/13 44/10 60/9 61/1
63/1
**convictions [2]** 3/19
3/21
**convince [1]** 14/8
**convinced [1]** 11/21

**coordinating [3]** 58/7
58/23 58/25
**cop [1]** 41/20
**copies [4]** 24/2 31/3
31/5 34/16
**cops [4]** 20/8 20/16
21/5 61/18
**cops' [1]** 56/7
**copy [3]** 27/13 34/25
40/7
**Cornelius [1]** 48/17
**corollary [1]** 52/21
**correct [5]** 51/14 51/20
68/25 74/5 81/3
**corrupt [18]** 45/3 45/5
49/1 49/21 49/22 50/4
50/10 50/12 51/13
51/14 51/18 52/18
53/23 58/19 68/14 70/7
76/17 76/19
**corruption [1]** 44/24
**corruptly [6]** 31/25
44/14 44/18 45/16
52/24 75/13
**could [65]** 5/15 5/19
8/1 8/2 8/4 15/16 17/4
18/6 19/14 24/20 25/18
25/22 26/2 27/7 27/21
28/21 30/15 30/21
32/14 33/9 37/6 38/11
45/8 46/8 47/7 47/12
47/13 47/21 47/23 48/1
48/7 48/9 49/4 49/18
50/2 50/4 50/15 52/6
52/10 52/19 53/8 55/12
58/16 59/17 60/4 60/25
61/20 61/20 61/21 62/5
62/7 62/25 65/18 65/20
66/1 66/2 66/7 67/4
69/8 69/17 73/5 74/6
74/6 75/12 76/18
**couldn't [4]** 31/10
31/11 43/3 63/19
**counsel [1]** 1/15
**count [4]** 3/24 22/12
46/21 72/22
**Count 13 [1]** 22/12
**country [1]** 58/25
**counts [1]** 64/22
**couple [7]** 26/25 36/21
42/4 60/5 62/14 74/11
76/25
**course [9]** 6/4 9/2
21/10 44/18 51/24
57/10 71/1 71/13 72/24
**court [52]** 1/1 2/2 2/3
8/15 10/7 10/12 14/5
15/14 21/13 21/21 23/5
23/7 23/25 27/5 27/7
31/8 31/9 31/10 33/24
35/5 35/16 36/4 37/7
46/5 46/21 46/23 47/14
48/14 48/21 50/2 50/7
50/17 57/15 57/24 62/18
62/22 62/24 63/15
64/14 66/5 66/17 67/23
68/2 68/8 68/9 69/18
70/18 72/3 78/21 79/5

**C**

court... [2] 79/13 80/1
Court's [3] 35/24 62/23
67/21
courtroom [1] 3/12
CR [1] 1/4
credence [2] 55/6
55/23
credit [2] 30/21 57/15
crime [19] 14/9 34/12
34/17 35/10 35/15
50/24 50/25 51/2 51/8
51/9 63/5 66/7 66/10
68/10 68/23 69/5 71/12
72/13 73/9
criminal [9] 3/6 4/9
4/10 10/20 18/21 21/15
52/21 65/19 66/19
criminally [1] 26/20
crossing [1] 69/12
crowd [4] 76/2 76/3
77/9 77/10
Crowl [47] 4/14 6/13
6/25 7/11 7/12 7/13
7/14 7/19 7/19 8/5 8/5
8/7 8/10 9/3 9/8 11/8
11/10 13/23 15/2 16/1
16/2 16/2 16/12 17/11
17/13 17/16 19/12
19/21 19/22 19/23
19/23 19/24 20/18
22/22 24/13 25/11 34/3
34/6 38/1 38/20 38/20
38/23 39/1 39/2 39/2
41/18 43/13
CRR [2] 81/2 81/8
crude [1] 71/15
curious [3] 28/18
28/19 29/5
cuts [1] 29/22

**D**

D.C [8] 1/5 1/15 2/5
26/17 46/21 47/14
53/13 58/24
D.C. [1] 48/22
D.C. Circuit [1] 48/22
damn [2] 40/2 54/13
dark [1] 10/19
data [1] 11/7
date [2] 8/23 81/7
dated [1] 5/23
David [2] 1/19 3/11
David Fischer [1] 3/11
day [11] 7/12 7/19 8/6
8/7 17/25 24/15 25/9
56/23 61/12 61/17
67/11
days [2] 8/6 23/22
dead [5] 20/8 20/16
21/5 29/20 41/20
deal [2] 78/11 79/20
decide [1] 62/10
decided [2] 8/5 8/7
decision [6] 16/20 31/9
43/3 44/12 60/4 60/18
decisions [1] 78/12
defendant [15] 1/7

17/2 28/9 36/2 36/9
36/14 45/10 50/24 51/1
51/7 51/25
defendant's [2] 18/13
36/11
defendants [6] 60/8
60/14 61/15 64/20
64/23 79/6
defense [5] 3/11 5/10
10/20 24/1 33/14
defense's [1] 20/24
defer [2] 28/7 72/2
definition [2] 50/22
57/9
degree [1] 68/20
delete [2] 19/20 19/21
deleted [17] 4/13 11/17
11/22 11/25 13/17
19/22 22/14 31/17
32/22 33/4 37/25 38/2
38/4 39/4 40/6 41/21
43/19
deletes [3] 11/7 38/6
39/24
deleting [12] 6/15 11/4
11/6 13/11 13/19 14/10
15/5 24/16 33/10 33/19
38/7 38/9
deletion [3] 33/2 38/17
39/9
deletions [4] 19/11
22/21 23/22 42/21
denied [2] 37/23 61/4
deny [5] 37/7 50/6 62/7
74/10 75/14
deposit [1] 58/4
deposited [1] 58/6
depositing [2] 58/16
58/17
deprived [1] 33/15
depriving [1] 16/18
describe [2] 54/25 55/1
described [2] 11/14
67/12
description [1] 21/25
descriptions [1] 54/23
deserve [1] 64/15
designed [1] 32/10
Desk [1] 5/24
destroy [2] 32/4 43/16
destroyed [1] 17/6
destroying [4] 14/10
14/19 14/19 35/2
destroys [2] 14/18
17/4
destruction [1] 54/20
detail [1] 43/1
determination [2] 31/8
31/22
devoid [1] 43/1
did [46] 6/18 8/12
11/16 12/6 14/5 15/23
19/20 19/21 23/6 23/8
23/21 27/9 27/9 28/21
31/16 34/11 37/3 37/3
37/25 40/2 40/15 42/1
44/4 46/24 47/19 50/24

56/12 57/13 58/4 59/14
59/16 64/7 64/24 64/24
65/3 70/2 70/2 70/6
70/6 70/9 74/12 75/9
didn't [19] 11/13 11/23
12/2 14/9 14/20 23/4
31/15 34/1 36/16 38/5
40/7 41/5 42/25 53/10
54/18 61/22 73/12 77/8
77/17
difference [4] 16/16
51/4 59/2 59/8
different [22] 12/23
12/25 14/2 14/9 14/13
16/18 25/6 25/6 26/6
32/5 33/17 33/20 41/1
43/8 47/5 49/14 49/17
50/12 54/8 56/19 72/9
79/4
differently [3] 47/7
47/24 60/8
differs [1] 9/20
directly [2] 20/3 50/5
disagree [6] 19/3 47/11
63/2 63/3 63/7 77/1
disagreed [2] 68/9
69/18
disagreement [1] 47/3
disassociate [2] 26/15
disassociation [1]
26/21
disbanded [1] 77/12
disbelieve [1] 32/2
discuss [2] 3/18 10/19
discussed [1] 33/8
discussing [1] 12/11
dismiss [1] 75/24
disorder [1] 58/11
dispute [1] 57/23
disputes [1] 67/8
dissent [1] 59/7
distinct [1] 57/24
distinction [2] 4/10
69/2
DISTRICT [5] 1/1 1/1
1/10 35/6 58/9
divine [3] 33/9 47/17
48/14
do [50] 7/16 8/17 10/18
10/19 10/20 12/13
12/14 13/15 18/10
20/11 26/12 26/21
27/23 28/2 30/19 31/6
32/12 33/6 34/19 37/3
39/3 49/12 49/20 52/18
53/6 53/20 54/9 54/10
54/23 56/2 56/10 57/15
57/18 57/21 57/24 58/7
59/13 59/18 60/6 63/13
66/17 67/4 72/20 73/25
76/6 76/7 78/6 78/13
79/18 79/25
do you [1] 34/19
Do you have [1] 73/25
documented [2] 22/15
22/18
documents [1] 28/21

11/6 19/18 25/1 27/13
28/12 34/7 42/14 46/6
46/6 79/2 79/13
doesn't [14] 26/5 26/19
27/13 27/14 27/17 34/8
35/17 35/21 41/10
41/11 44/23 66/11
72/11 76/16
doing [15] 10/19 14/20
19/11 26/10 29/2 31/21
35/20 36/14 57/9 61/12
69/14 73/7 74/15 75/13
77/25
don't [41] 4/5 8/25 10/9
10/9 18/12 20/22 21/19
24/5 25/12 26/3 28/18
31/23 31/25 32/10
32/13 33/13 39/2 39/25
40/3 43/9 45/22 47/3
52/20 53/24 55/6 55/7
57/7 57/10 59/24 60/17
60/20 62/15 63/8 63/12
66/14 70/25 72/6 73/18
74/2 77/23 78/17
done [7] 13/4 17/24
21/8 44/23 55/1 55/18
79/20
Donovan [3] 4/14 6/13
48/20
door [4] 36/7 36/13
53/5 57/5
doors [1] 56/6
doubt [7] 11/21 31/12
34/20 45/24 47/8 66/8
66/20
down [5] 29/24 34/5
35/9 36/9 40/24
dozen [1] 22/8
dramatically [1] 14/2
draw [4] 36/25 57/12
64/2 69/17
drawing [4] 41/25
43/12 48/8 75/11
drawn [3] 24/19 37/5
65/6
draws [1] 6/10
drew [1] 64/2
drive [2] 75/1 76/7
drove [1] 77/5
drugs [3] 14/20 35/9
36/9
dual [2] 37/16 37/20
due [2] 9/18 46/16
duking [3] 56/6 56/13
61/17
during [1] 69/4

**E**

each [2] 46/21 55/15
earlier [4] 5/21 56/22
75/24 78/17
early [3] 8/20 9/5 40/22
easier [1] 41/22
easily [2] 13/21 50/15
east [1] 16/6
easy [3] 10/24 20/10
20/13

Edward [1] 3/7
Edwards [3] 3/10 5/12
5/18
effect [2] 29/16 42/24
eight [1] 60/14
either [7] 4/16 45/4
50/13 50/17 54/19
65/18 73/18
element [9] 44/14
44/17 44/24 45/3 45/16
46/3 47/5 51/1 65/20
element's [1] 49/10
elements [2] 45/13
76/19
else [13] 4/17 6/5 17/5
17/20 21/16 25/21
26/13 51/17 58/13
70/12 72/13 74/23
78/15
email [6] 1/16 1/17
1/22 23/5 23/6 78/22
emphasize [1] 71/24
Empire [1] 1/20
en [1] 53/11
en route [1] 53/11
end [3] 15/16 30/18
30/19
ended [1] 35/8
engage [1] 44/5
enough [8] 26/3 26/4
29/4 31/19 67/19 67/20
68/24 72/21
entanglement [1]
34/11
enter [1] 67/4
entire [6] 19/20 19/22
32/22 35/9 38/1 69/23
ergo [1] 33/3
errors [1] 64/12
especially [2] 15/2
27/4 40/21 55/23
essence [1] 3/22
essentially [1] 7/24
establish [3] 15/15
44/14 45/13
established [1] 45/3
et [1] 67/13
et cetera [1] 67/13
evacuated [5] 71/7
71/11 71/21 77/6 77/8
evacuation [1] 71/3
evaluated [1] 46/22
even [24] 5/9 5/15 14/4
20/17 22/20 23/2 23/4
25/3 26/1 26/4 27/6
41/6 50/24 52/4 54/18
57/21 60/19 61/21 64/3
67/11 71/11 71/14
71/21 72/17
evening [3] 4/25 5/17
6/16
event [3] 29/14 54/8
71/2
events [5] 22/24 24/12
25/8 38/18 65/1
ever [2] 29/3 29/24
every [6] 31/3 35/25
36/1 57/11 76/16 77/21

**E**

**everybody [5]** 3/16
17/20 42/14 78/9 79/25
**everyone [7]** 3/4 3/5
3/14 62/15 62/16 74/23
77/3
**everything [4]** 8/25
37/25 43/24 65/1
**evidence [119]**
**evident [1]** 55/2
**evil [4]** 68/15 75/5 75/8
75/19
**exactly [3]** 21/23 22/10
66/3
**example [6]** 22/6 33/18
33/23 39/9 53/10 69/4
**except [1]** 33/14
**exchange [2]** 19/20
19/22
**exchanges [1]** 78/22
**exhibit [8]** 5/2 10/5
10/17 39/21 66/22
66/25 67/1 77/10
**exhibits [1]** 24/1
**existed [2]** 14/10 16/19
**exiting [1]** 69/16
**expertise [2]** 22/1 22/3
**explain [1]** 64/11
**exposure [1]** 21/15
**extensive [1]** 74/14
**extinguishers [2]** 56/8
56/16
**extra [2]** 31/3 31/5

**F**

**F.2d [1]** 48/16
**F.3d [1]** 48/17
**face [4]** 20/7 20/15
29/20 41/20
**Facebook [21]** 4/14
4/22 13/19 19/23 20/25
22/14 25/18 32/19
32/24 33/2 33/4 33/11
34/5 38/19 38/22 38/25
39/14 39/15 39/19
41/21 74/14
**faces [1]** 41/18
**fact [14]** 7/3 18/3 19/9
25/1 26/8 29/6 29/21
32/17 33/9 33/18 41/9
55/7 64/10 77/9
**factors [1]** 76/23
**facts [3]** 15/19 37/6
55/12
**factual [6]** 32/13 37/24
47/21 55/15 55/17 67/8
**fair [6]** 9/13 11/14 12/8
13/15 29/4 44/15
**fairly [1]** 12/10
**falls [1]** 60/9
**far [6]** 23/14 23/16
25/24 27/19 34/16
70/10
**farm [2]** 11/19 24/16
**fault [1]** 72/4
**favor [4]** 37/5 42/1 48/9
75/11
**FBI [28]** 10/9 10/9

14/8 15/11 16/16 22/21
23/8 23/19 23/21 25/7
27/6 28/24 29/2 31/3
34/8 35/2 37/18 40/17
40/23 41/23 43/5 43/14
63/23 64/12
**FBI's [1]** 37/22
**fear [1]** 60/22
**federal [10]** 15/10
15/12 15/15 15/16
16/16 21/24 25/7 27/6
40/17 53/15
**feel [1]** 78/13
**feet [1]** 53/4
**felonies [4]** 28/9 40/25
45/11 49/5
**felonious [4]** 45/10
48/25 49/12 52/20
**felony [14]** 21/7 21/10
21/10 28/3 28/6 37/12
37/13 46/5 56/15 68/3
68/4 68/6 68/7 69/18
**felt [1]** 72/19
**fentanyl [1]** 35/7
**few [2]** 22/11 69/15
**fighting [1]** 56/13
**figure [1]** 79/3
**file [1]** 8/25
**filing [1]** 42/19
**finally [1]** 68/21
**find [6]** 4/20 37/6 66/18
74/9 75/14 76/16
**finder [1]** 33/9
**finding [3]** 32/6 32/8
62/8
**fine [3]** 34/4 37/19
58/21
**finish [1]** 72/1
**fire [2]** 56/8 56/15
**firearm [2]** 58/4 58/6
**firearms [7]** 58/8 58/10
58/16 58/18 58/24
58/25 61/13
**first [23]** 6/15 12/12
21/22 22/11 28/8 28/10
30/22 36/12 42/7 42/13
46/1 51/1 61/23 62/24
62/24 63/3 66/6 67/22
68/3 72/23 75/17 75/22
76/13
**First Amendment [3]**
75/17 75/22 76/13
**Fischer [27]** 1/19 1/19
3/11 4/1 12/6 13/16
14/4 16/21 21/19 27/24
29/6 36/20 36/24 37/24
44/13 44/21 44/24 59/7
62/13 62/14 62/20 69/1
71/25 74/2 74/11 74/20
75/8
**fischerandputzi [1]**
1/22
**five [1]** 5/21
**flag [5]** 50/2 54/12
77/16 78/21 79/4
**flagged [3]** 10/3 59/11
59/12

**flights [1]** 57/3
**floor [1]** 53/12
**Florida [1]** 31/9
**flourishes [2]** 63/16
77/15
**flushed [1]** 35/9
**flushes [1]** 36/9
**focused [1]** 13/3
**fold [1]** 6/11
**folks [2]** 34/7 79/19
**follow [2]** 42/13 42/14
**followed [1]** 69/16
**following [4]** 11/7 11/9
16/21 28/3
**foot [1]** 52/25
**foregoing [1]** 81/3
**foresaw [1]** 4/11
**foresee [2]** 19/7 43/19
**foreseeability [2]** 4/9
27/21
**foreseeable [6]** 6/7
10/12 14/25 41/7 41/13
52/3
**foreseen [1]** 4/16
**forgive [2]** 18/12 39/7
**format [2]** 33/16 33/17
**formed [1]** 31/11
**former [1]** 78/23
**forthcoming [1]** 20/21
**forward [1]** 54/14
**found [17]** 38/5 50/3
50/13 50/15 52/6 52/11
55/12 55/16 58/17 61/1
62/5 64/21 66/7 72/16
74/7 75/12 76/18
**fountain [7]** 56/22 65/4
65/5 65/8 67/2 70/6
77/7
**four [2]** 5/15 59/17
**Fourth [2]** 1/14 35/17
**framing [1]** 45/19
**frankly [1]** 23/21
**free [1]** 78/13
**Friedrich [1]** 68/13
**friends [2]** 26/18 26/25
**front [11]** 10/7 10/8
40/6 53/5 55/5 56/5
59/15 70/9 74/23 76/2
77/9
**full [1]** 69/8
**fundamental [1]** 16/15
**fundamentally [2]** 14/9
14/13
**further [2]** 51/19 60/6
**furtherance [4]** 51/19
52/2 58/11 62/3

**G**

**gas [1]** 54/18
**gears [1]** 44/9
**general [5]** 24/20 25/5
35/2 59/17 68/23
**general-intent [1]**
68/23
**generally [3]** 32/3
40/16 67/10
**get [32]** 5/5 7/24 14/1

27/4 27/10 28/10 33/4
33/4 35/17 35/18 35/22
38/23 43/4 48/4 50/1
52/4 52/13 53/3 57/8
57/21 58/20 60/4 60/6
65/22 70/15 78/9 79/14
79/23
**gets [3]** 16/1 26/18
40/12
**getting [8]** 14/19 34/14
41/23 53/15 57/1 62/8
67/13 75/4
**give [7]** 32/2 36/21
54/24 55/22 62/14
64/14 78/11
**given [5]** 9/14 21/5
35/7 64/5 67/11
**Glen [1]** 1/21
**go [18]** 5/18 5/19 9/23
10/2 10/19 13/21 15/23
16/8 26/18 32/10 40/4
43/1 43/13 70/15 70/15
70/23 70/24 72/5
**Godbold [2]** 74/14
74/14
**goes [4]** 26/8 33/21
36/9 77/21
**going [36]** 9/9 13/10
13/17 14/23 15/1 15/2
15/4 17/25 18/1 19/1
20/14 20/20 21/6 21/7
21/9 25/2 25/11 25/15
27/2 30/5 36/15 41/23
43/5 44/3 48/13 56/15
60/20 61/12 62/10 64/6
70/3 72/13 73/13 75/1
78/4 79/15
**gone [5]** 27/21 39/25
40/7 67/6 75/24
**Good [3]** 3/4 3/6 3/14
**Good morning [2]** 3/4
3/14
**got [10]** 25/17 31/24
38/22 38/25 56/5 64/9
65/8 74/21 74/24 76/4
**gotten [1]** 55/1
**government [59]** 1/13
3/10 3/25 4/1 4/3 11/13
11/17 11/21 11/24
12/12 12/24 13/18
13/20 16/8 16/23 17/10
23/4 23/8 23/16 23/20
25/7 25/16 26/6 28/1
28/8 28/10 28/12 29/22
30/17 31/2 31/16 32/21
35/23 35/25 37/22
42/19 43/21 46/11
48/25 49/9 49/15 55/21
57/16 57/16 62/25 63/7
63/10 64/9 64/18 65/17
67/3 69/21 70/1 70/4
73/21 77/5 77/19 77/20
77/24
**government's [27]**
6/21 7/2 7/5 10/5 10/17
13/10 17/8 23/17 24/9
24/25 29/9 34/2 37/5

37/6 43/22 45/2 45/8
48/9 63/17 64/17 64/18
64/22 65/6 66/12 66/23
71/7 77/10
**Governor [1]** 1/20
**grabbed [1]** 54/12
**grade [1]** 30/11
**grand [57]** 4/16 4/21
11/22 12/1 13/24 14/12
15/7 15/12 15/16 15/21
16/13 16/18 16/19 19/1
19/7 21/6 21/11 21/25
22/1 22/3 22/8 26/6
26/22 27/4 27/8 27/16
28/13 30/21 31/4 31/25
32/2 32/5 32/10 32/15
32/16 33/15 34/10
34/14 34/19 34/22
35/18 37/21 38/14 40/8
40/9 40/16 40/18 41/6
41/10 41/11 41/14
41/17 41/24 42/1 43/6
43/18 43/19
**grand jury [1]** 27/16
**grant [2]** 12/19 78/1
**grass [2]** 57/6 76/2
**great [2]** 5/9 78/11
**Grimes [2]** 6/5 74/15
**ground [4]** 45/7 49/6
49/9 77/12
**grounds [2]** 9/15 46/3
46/8 49/3 57/11 60/19
61/8 62/6 65/12 65/14
68/6 69/12 70/14 70/20
70/21 71/6 71/8 71/9
71/10 71/11 74/13
74/16
**Guardian [2]** 7/8 27/19
**guarding [1]** 69/8
**guess [7]** 8/1 28/20
33/13 39/7 72/4 72/6
75/16
**guilt [3]** 18/14 18/25
77/21
**guilty [4]** 43/23 52/11
64/21 72/17
**gun [2]** 14/19 14/19

**H**

**had [56]** 3/20 6/6 9/2
9/5 12/11 12/13 14/15
17/9 17/18 17/24 19/16
19/23 19/23 20/23 21/8
23/3 23/7 23/11 23/14
24/1 26/4 31/2 31/5
34/22 34/23 34/24
34/25 35/7 35/13 38/20
39/12 40/5 42/24 42/25
45/10 49/21 50/3 50/10
50/13 52/6 53/2 55/18
55/18 56/9 57/14 59/11
62/24 68/11 68/13
70/18 70/23 70/24 71/4
71/16 71/16 71/19
**hadn't [2]** 27/24 44/7
**hang [2]** 7/15 54/15
**happen [2]** 36/16 77/17
**happened [3]** 64/25

H

**happened...** [2] 65/1
65/7
**happening** [1] 67/11
**happenings** [1] 9/6
**happens** [2] 26/17
30/13
**happy** [2] 46/10 79/3
**hard** [2] 15/18 53/15
**Harmon** [1] 33/1
**has** [41] 4/13 5/18 6/4
6/12 15/12 16/21 18/18
19/7 22/1 22/3 22/8
25/21 26/7 26/9 26/21
26/24 28/11 31/22
32/14 32/17 32/17 34/2
35/23 40/3 40/3 41/6
41/12 44/5 51/18 63/10
65/17 68/15 68/15 69/3
70/4 71/5 72/20 73/21
78/10 79/1 79/4
**hasn't** [1] 67/25
**have** [129]
**having** [11] 6/25 13/18
15/18 16/13 21/14
25/21 51/4 55/1 60/13
64/11 79/13
**he** [191]
**he didn't** [2] 34/1 40/7
**he said** [2] 55/7 63/20
**he's** [18] 13/22 30/8
30/12 34/7 35/1 38/7
38/9 57/5 60/1 71/5
71/6 71/9 71/11 71/12
76/2 77/9 77/13 78/19
**head** [1] 53/16
**headline** [1] 21/1
**hear** [4] 21/19 46/10
59/25 62/13
**heard** [3] 44/21 71/23
73/22
**hearing** [3] 1/9 78/23
79/11
**heavily** [1] 31/24
**heavy** [2] 18/3 21/7
**help** [1] 73/19
**helpful** [1] 78/10
**her** [11] 11/5 11/15
11/16 11/18 12/2 20/7
25/11 29/20 41/20
68/12 71/17
**here** [49] 3/16 3/22
5/19 6/5 8/18 9/14 9/19
14/1 14/2 14/25 15/19
18/18 21/7 22/9 28/24
29/2 33/16 37/7 37/15
37/16 37/19 39/20
40/20 41/10 44/11 45/8
45/15 49/17 54/10 55/7
57/16 57/23 58/13
59/14 60/16 60/20
61/15 64/16 70/16 74/8
74/11 75/5 75/8 76/17
76/20 78/17 79/2 79/12
79/19
**here's** [1] 10/21
**hey** [1] 30/12
**hide** [2] 7/15 55/25

**high** [1] 55/17
**higher** [1] 77/12
**highlight** [1] 40/13
**Highway** [1] 1/20
**Hill** [3] 77/14 77/19
77/22
**him** [37] 6/11 9/25
13/12 15/7 15/11 16/9
16/9 16/24 17/11 18/8
19/12 19/20 19/21
19/22 23/20 23/22
33/19 34/9 37/18 37/19
40/1 41/13 54/17 57/1
60/1 60/1 60/3 61/7
61/23 64/6 65/3 70/9
70/12 71/9 72/21 76/7
78/17
**himself** [10] 13/23
20/19 34/5 49/19 56/9
56/13 58/5 58/14 61/21
63/18
**hindering** [1] 35/21
**his** [109]
**holding** [1] 15/18
**Honor** [70] 3/6 4/4 4/18
5/7 5/20 8/15 9/20 10/3
12/9 21/17 21/22 22/11
22/20 22/25 23/13
24/18 25/20 27/12
27/22 29/15 30/7 30/22
32/12 32/20 35/4 35/25
36/19 36/23 36/25
40/13 42/4 43/11 43/20
44/6 46/12 46/17 46/17
48/13 53/25 54/6 55/13
55/16 55/20 55/22
56/20 58/21 59/12
60/14 60/24 62/7 62/21
64/17 65/11 67/17
68/25 69/17 69/21
70/17 71/24 72/23 74/1
74/3 74/5 74/9 75/13
76/16 76/25 77/1 77/25
78/16
**Honor's** [3] 49/24
52/13 53/20
**HONORABLE** [2] 1/10
3/2
**hopefully** [1] 60/4
**hot** [1] 67/25
**hotel** [8] 17/20 17/20
35/7 57/20 58/4 58/4
58/8 59/1
**hotmail.com** [1] 1/22
**hour** [2] 6/15 64/10
**hours** [1] 5/21
**house** [8] 7/15 7/20 8/6
8/8 11/10 36/6 36/7
71/8
**housed** [1] 13/20
**how** [18] 9/20 10/25
12/23 12/23 12/25 14/2
22/3 23/8 31/6 34/19
41/5 52/14 54/23 55/6
65/3 71/13 71/20 73/5
**huge** [1] 77/10
**Hughes** [1] 3/10

**humble** [1] 15/10
**hundreds** [2] 57/2
74/22
**hypothetically** [1]
61/22

I

**I am** [1] 20/14
**I assume** [1] 70/22
**I believe** [11] 24/19
59/4 62/23 63/21 64/1
67/1 68/11 68/12 70/7
71/8 72/23
**I can** [2] 5/5 45/22
**I cannot** [1] 47/7
**I did** [1] 40/2
**I don't** [7] 26/3 31/23
31/25 32/13 45/22
66/14 74/2
**I don't have** [1] 47/3
**I guess** [5] 8/1 39/7
72/4 72/6 75/16
**I just** [5] 5/2 40/13
53/15 70/22 78/17
**I know** [5] 3/25 13/16
43/7 43/21 79/5
**I mean** [19] 7/22 11/20
15/9 15/10 17/2 18/17
28/17 31/7 31/19 43/21
50/20 50/22 53/8 53/9
55/3 62/2 66/14 71/1
72/8
**I think** [33] 4/6 6/15
14/16 24/19 25/4 25/5
26/9 27/3 28/23 30/9
31/8 32/3 32/5 33/11
35/22 36/1 36/24 42/19
42/23 44/15 45/12
55/16 57/25 59/6 61/25
67/8 67/10 68/9 68/19
69/2 70/18 75/20 77/19
**I thought** [1] 39/8
**I understand** [1] 19/5
19/15 31/20 63/11
65/24
**I want** [4] 3/25 5/5 24/6
62/14
**I wanted** [2] 3/18 50/2
**I was** [3] 16/5 39/8
79/15
**I will** [1] 74/11
**I won't** [1] 30/3
**I would** [2] 24/23 73/15
**I'd** [9] 35/4 40/2 43/11
43/20 44/2 63/9 64/16
70/17 79/18
**I'll** [19] 10/23 20/5
20/23 24/4 27/25 29/17
29/25 30/13 36/21
38/23 42/13 48/4 50/1
50/19 72/2 73/17 78/9
78/21 78/21
**I'm** [23] 12/18 15/18
22/23 27/23 30/13
31/18 32/8 33/19 35/2

45/20 47/4 51/3 52/14
52/20 53/8 60/3 68/17
71/25 73/5 78/4
**I'm not** [3] 12/18 44/25
53/8
**I'm not sure** [1] 31/18
33/19 73/5
**I'm sorry** [3] 32/8
68/17 71/25
**I've** [3] 3/22 25/17
73/22
**idea** [3] 48/13 53/16
65/7
**identical** [1] 50/21
**identified** [4] 6/25
17/16 19/25 24/13
**identify** [3] 9/18 63/12
66/13
**identifying** [2] 13/3
40/23
**impact** [1] 79/17
**impair** [1] 11/25 13/23
32/14 37/21 42/1
**impairing** [2] 34/17
34/18
**impaneled** [4] 15/12
41/6 41/10 41/11
**impending** [2] 10/12
41/4
**implicate** [1] 25/18
**implicated** [1] 24/17
**important** [2] 10/21
31/17
**impression** [1] 23/19
**improper** [11] 49/23
50/3 50/14 58/20 58/21
59/3 59/8 59/15 59/18
61/2 65/20
**inaugural** [5] 53/3 57/1
57/4 65/10 75/25
**including** [4] 17/19
38/3 45/12 78/23
**inconsistent** [2] 47/13
48/21
**incorrectly** [1] 45/20
**increase** [1] 26/9
**incredibly** [1] 13/2
**independent** [12] 46/8
47/6 47/9 48/1 48/25
53/17 53/22 65/19 66/8
66/19 68/4 69/5
**independently** [10]
44/17 45/4 45/9 45/21
46/1 57/18 57/20 57/23
58/18 69/6
**indicate** [5] 21/22
27/13 27/14 29/8 68/8
**indicated** [10] 24/24
30/11 32/3 42/20 42/24
56/17 63/19 68/12
71/15 71/16
**indicates** [1] 32/22
**indicted** [3] 10/16
10/22 20/15
**indictment** [3] 22/12
22/18 66/6
**indictments** [5] 20/21

28/12 28/14 41/12
41/13
**individual** [1] 65/22
**individuals** [3] 13/3
26/2 56/11
**indulgence** [2] 12/5
35/24
**infer** [4] 8/2 15/19
17/24 18/6
**inference** [12] 7/18
9/13 17/23 20/10 36/25
37/13 39/22 40/5 41/25
77/21 77/21 77/22
**inferences** [9] 37/5
37/11 41/25 43/12 48/8
57/12 65/6 75/11 77/20
**inferred** [1] 8/4
**information** [4] 16/23
27/7 64/4 79/4
**initial** [2] 40/1 64/5
**innocent** [1] 30/13
**inside** [5] 11/16 33/5
52/25 63/24 69/7
**insofar** [1] 78/7
**instructed** [1] 50/7
**instruction** [1] 50/22
**instructions** [2] 37/20
66/16
**insufficient** [1] 15/14
**integrity** [4] 11/25
13/24 34/18 34/24
**intend** [3] 31/15 31/16
79/2
**intended** [7] 38/14
51/1 51/8 52/7 52/17
59/19 75/12
**intending** [2] 37/3 51/4
**intent** [43] 19/17 19/19
24/7 25/24 31/11 31/19
32/21 33/10 33/14
33/21 33/23 34/5 34/21
38/10 38/13 48/15 49/1
49/21 49/22 50/4 50/10
51/4 51/5 51/18 52/18
53/23 58/19 59/3 63/4
68/14 68/23 70/7 71/13
71/22 71/23 72/9 73/9
73/16 74/20 76/5 76/14
76/17 76/19
**interesting** [2] 15/8
31/7
**intermediate** [1] 31/9
**Internet** [1] 29/19
**interrupt** [2] 13/6 27/23
**introduced** [12] 7/3 7/4
7/5 7/23 12/24 30/18
30/25 38/25 56/21
56/25 66/23 74/13
**investigated** [3] 25/2
27/3 41/19
**investigating** [3] 40/18
41/14 41/17
**investigation** [46] 4/9
4/10 4/16 4/21 9/12
9/14 9/19 9/20 9/25
10/14 12/23 12/25 13/2
13/24 14/21 15/13 17/2
17/3 17/9 17/25 18/9

**I**

investigation... [25]
18/21 19/1 19/8 21/6
22/4 23/19 24/14 24/22
24/22 25/16 26/2 26/5
26/11 29/2 29/13 34/19
35/12 35/21 36/12
37/22 37/22 41/1 41/4
43/5 64/5
investigations [3] 9/21
13/1 41/2
involve [1] 22/6
involved [2] 5/3 6/25
involvement [3] 6/1
18/7 55/25
is [194]
is there [2] 7/16 59/2
isn't [7] 25/13 37/1
37/1 37/2 71/14 72/21
73/1
issue [11] 32/1 32/13
32/13 32/14 32/21
33/14 35/1 36/22 62/6
67/25 79/15
issued [6] 28/14 41/12
41/13 44/12 46/24
47/13
issues [3] 24/7 32/1
69/9
it [156]
it would be [3] 69/6
69/10 75/20
it's [50] 3/25 4/23 5/20
5/21 7/25 8/1 9/13 12/8
13/15 14/16 17/13
18/13 18/17 20/10
20/13 21/4 25/13 31/7
31/8 32/25 33/4 33/13
33/16 34/14 34/25 35/5
35/18 36/24 37/12
37/16 38/23 38/23
39/22 39/25 41/24 44/15
48/15 55/2 59/6 66/9
66/9 68/18 68/19 70/3
71/7 73/9 73/19 73/23
75/19 77/13
items [1] 41/21
its [10] 11/25 12/25
27/8 27/8 30/18 32/14
34/21 42/19 46/22 64/5
itself [9] 6/19 34/17
57/7 57/18 69/2 69/3
69/13 75/5 75/6

**J**

January [27] 4/13 4/24
4/25 5/20 5/23 6/12
6/16 7/1 7/4 7/12 9/9
10/17 11/9 11/10 16/2
22/13 22/13 22/16
24/12 28/13 28/14 28/14
33/6 39/24 39/25 55/24
55/24
January 2nd [1] 39/24
January 6th [7] 7/1
22/13 22/16 24/12 28/3
33/6 55/24
January 7th [3] 9/9

**K**

Kathryn [2] 1/13 3/9
Kathryn Rakoczy [1]
3/9
kathryn.rakoczy [1]
1/16
Katsas's [1] 59/7
keep [7] 5/4 31/4 32/21
34/10 34/21 34/21 35/2
Keepers [11] 10/18
17/15 17/17 17/19
17/24 18/2 18/8 61/11
63/24 64/1 64/7
Keepers' [1] 18/7

Jeffrey [2] 1/13 3/9
jeffrey.nestler [1] 1/17
Jessica [2] 6/13 11/3
Jessica Watkins [1]
11/3
job [1] 21/25
Johnson [4] 14/17
78/24 79/1 79/7
Johnson's [1] 78/25
join [4] 72/9 73/5 73/18
75/9
joined [1] 73/4
joining [2] 73/9 75/10
joke [1] 30/10
judge [19] 1/10 15/11
15/12 15/15 15/17
16/17 21/24 27/6 27/9
31/21 40/17 43/4 43/5
45/7 49/2 59/7 60/19
68/11 68/13
Judge Friedrich [1]
68/13
Judge Katsas's [1]
59/7
Judge Kollar-Kotelly
[1] 68/11
Judge Pillard [1] 45/7
Judge Pillard's [2]
49/2 60/19
judges [2] 47/17 67/23
judicial [1] 10/8
juror [3] 37/6 55/12
67/14
jury [101]
jury's [7] 37/21 45/16
46/22 49/16 49/18 50/6
55/11
just [54] 5/2 6/20 10/13
11/14 11/20 12/19
14/13 16/9 17/3 17/7
18/24 20/18 20/18
22/11 24/6 24/7 24/20
24/22 24/25 26/23
28/18 28/19 29/5 31/13
31/20 32/3 33/13 34/4
34/6 34/14 36/21 40/13
41/1 44/11 50/19 52/24
53/15 54/11 56/17
56/20 57/4 59/22 62/7
64/7 67/10 68/15 70/22
73/17 76/15 76/25 78/8
78/17 79/11 79/24

**K**

Kathryn [2] 1/13 3/9
Kathryn Rakoczy [1]
3/9
kathryn.rakoczy [1]
1/16
Katsas's [1] 59/7
keep [7] 5/4 31/4 32/21
34/10 34/21 34/21 35/2
Keepers [11] 10/18
17/15 17/17 17/19
17/24 18/2 18/8 61/11
63/24 64/1 64/7
Keepers' [1] 18/7

keeps [1] 69/22
Kelly [1] 17/21
Kelly Meggs [1] 17/21
kept [1] 31/15
kidding [1] 37/9
kinds [2] 38/15 41/2
knew [14] 9/24 11/16
14/22 15/4 15/15 15/23
15/25 17/8 17/24 41/19
43/5 43/6 66/3 67/14
knocking [1] 36/7
know [46] 3/25 7/16
7/24 13/9 13/16 16/17
18/12 20/5 20/20 22/23
23/4 27/9 27/23 28/2
28/12 28/18 29/17
31/19 32/21 33/13
33/17 38/19 39/21
39/25 40/3 40/9 41/11
41/11 43/7 43/21 43/23
44/11 44/21 45/15
53/14 55/6 56/14 63/15
65/21 70/25 72/7 72/8
72/12 78/13 78/22 79/5
knowing [5] 17/14
37/18 69/8 72/9 73/19
knowledge [13] 6/6 6/7
8/10 11/15 18/16 23/9
25/21 26/4 34/3 44/5
51/17 65/25 73/7
known [3] 23/2 41/22
67/15
knows [2] 16/7 17/18
Kollar [1] 68/11
Kotelly [1] 68/11

**L**

lack [1] 12/17
language [2] 74/21
75/18
lapse [1] 57/1
large [1] 40/20
larger [1] 46/19
last [2] 14/16 42/19
later [2] 9/9 38/5
law [13] 34/20 46/21
47/14 47/15 47/16
48/22 53/13 53/15
57/25 66/18 73/21
78/12 79/14
layers [1] 53/1 53/2
Leadership [2] 11/1
11/4
leading [1] 77/13
leap [3] 26/6 26/24
27/3
least [2] 10/12 46/1
leave [3] 16/9 17/1
44/19
leaving [1] 58/12
led [1] 63/24
left [4] 11/18 65/7
71/16 71/20
legal [1] 32/13
les [1] 61/17
let [10] 16/20 38/21
46/2 46/19 47/24 59/22

let's [14] 3/24 4/1 5/18
8/21 17/1 17/7 33/24
34/2 44/9 54/13 54/14
70/15 70/15 70/15
letter [1] 23/5
level [9] 18/17 35/5
40/15 42/8 42/11 42/12
57/9 72/9 72/11
liability [8] 45/17 45/18
50/8 50/9 51/24 61/3
72/24 75/7
lie [1] 16/17
lies [1] 15/16
Lieutenant [1] 78/23
light [4] 45/14 45/16
47/22 60/18
like [18] 8/16 10/4 22/9
25/10 27/19 30/10
30/10 36/6 41/3 48/13
55/2 58/21 61/18 70/19
73/22 77/13 77/14
79/18
likely [5] 24/14 25/16
34/4 34/6 37/2
limited [2] 17/2 17/3
line [10] 5/1 5/23 24/20
29/16 29/22 55/14
55/15 69/17 77/11
77/11
link [4] 6/20 23/1 23/2
23/10
listened [2] 46/15
67/23
literal [1] 30/14
literally [4] 30/8 30/9
30/12 37/9
little [2] 40/18 70/19
locating [1] 37/18
logical [1] 26/24
LOL [2] 20/11 20/12
30/2 40/2
long [3] 45/9 52/1
60/25
longer [1] 78/19
longstanding [2] 46/20
48/20
look [13] 4/6 4/23
12/18 14/15 30/7 30/24
31/15 33/14 46/23
46/25 65/21 74/19
74/20
looking [3] 37/8 43/22
48/14
looks [2] 30/9 30/10
lose [1] 30/19
lost [1] 72/2
lot [6] 39/17 42/16
42/21 55/23 78/5 78/5
Louis [1] 3/10
Lower [4] 53/5 55/4
55/5 57/5
Lower West Terrace
[2] 53/5 55/4
lying [3] 14/8 15/11
16/16

**M**

made [16] 11/1 13/16
26/7 26/24 27/8 27/8
31/22 32/3 35/13 42/25
50/4 64/12 64/12 71/17
76/4 78/11
major [1] 28/9
make [7] 18/8 20/11
22/11 31/8 37/14 42/4
55/4
makes [4] 10/24 12/19
18/19 78/8
making [5] 3/17 32/5
32/8 34/8 79/12
malign [2] 68/14 68/14
malum [9] 68/10 68/10
68/16 68/17 68/17
68/18 69/19 75/4 75/4
many [5] 17/18 26/23
53/1 53/2 69/9
Manzo [1] 3/10
marching [1] 18/2
massive [5] 28/25
29/11 42/18 43/2 43/25
match [1] 55/7
materialize [1] 64/8
Matt [1] 40/1
matter [4] 34/20 66/18
72/18 81/4
matters [1] 79/21
Matthews [1] 14/17
may [10] 5/5 11/12
21/21 28/1 35/18 42/4
53/12 54/7 60/23 81/7
maybe [7] 5/15 7/25
33/12 45/19 54/3 66/2
70/24
MD [1] 1/21
me [36] 4/12 8/1 11/20
15/9 15/19 16/20 18/12
18/13 18/23 20/2 20/5
22/6 23/7 29/17 29/25
30/10 30/14 31/13
31/20 38/21 39/7 45/22
46/2 46/6 46/19 47/6
47/24 51/3 56/5 59/22
62/13 65/15 73/3 75/20
78/8 79/25
mean [34] 7/22 11/13
11/20 15/8 15/9 15/10
17/2 18/17 20/13 25/2
26/19 28/17 31/7 31/14
31/19 32/7 43/6 43/21
44/19 47/19 50/20
50/22 53/8 53/9 54/23
55/3 62/2 65/17 66/12
66/14 67/10 67/19 71/1
72/8
meaning [2] 46/24
56/13
meanings [1] 57/24
means [21] 21/13
26/20 37/11 45/4 49/13
49/22 50/1 50/14 52/7
52/7 52/18 52/19 52/24
56/1 58/18 58/22 61/2
65/19 65/20 66/9 75/17
meant [1] 37/9

**M**

meat [1]  22/16
mechanical [1]  2/6
mechanisms [1]  52/10
media [4]  7/25 15/22
24/10 28/5
medical [1]  33/7
medium [1]  33/20
meet [2]  45/13 46/3
meeting [1]  24/23
Meggs [1]  17/21
MEHTA [3]  1/10 3/3
32/23
member [2]  61/23
63/25
members [4]  10/18
17/19 61/10 74/8
mens [7]  50/11 50/20
51/12 51/15 51/23
51/25 72/12
mens rea [7]  50/11
50/20 51/12 51/15
51/23 51/25 72/12
mention [1]  52/4
mentioned [2]  27/12
27/17
mere [6]  18/21 29/6
54/11 56/21 57/8 65/21
Merit [1]  2/2
message [6]  4/14
10/25 39/12 39/23
39/24 40/2
messages [43]  11/7
13/11 19/21 29/18 33/4
33/11 33/12 34/5 35/13
37/9 38/1 38/1 38/2
38/4 38/6 38/8 38/10
38/15 38/17 39/2 39/3
39/5 39/5 39/9 39/13
39/14 39/15 39/17 40/7
40/8 44/1 54/16 55/14
63/16 63/19 63/21
63/23 64/4 64/8 64/9
64/14 64/15 74/14
messed [1]  34/24
met [2]  4/8 76/19
Meta [1]  32/23
might [7]  16/24 17/10
37/8 37/9 37/10 43/18
62/9
mind [3]  32/21 45/19
54/18
minimum [6]  11/18
15/3 19/16 44/16 66/2
68/9
minute [3]  16/10 48/5
49/25
minutes [3]  36/21
62/14 65/5
misdemeanor [9]
27/16 29/7 37/10 52/21
53/9 53/17 53/21 68/5
68/22
misdemeanors [1]
52/19
mistakes [1]  64/12
mitigates [1]  30/5
moment [5]  17/1 21/19

months [1]  60/5
Moore [2]  42/23 42/24
more [28]  3/20 4/19
6/10 9/10 13/21 14/25
18/24 18/24 19/9 20/23
26/14 29/1 37/2 41/3
43/4 46/1 46/2 48/4
52/8 53/12 53/19 54/2
54/5 54/10 67/21 68/15
68/23 69/19
Morissette [1]  57/25
morning [6]  3/4 3/6
3/14 3/17 3/22 79/11
most [2]  13/23 78/3
motion [9]  4/1 37/7
37/23 50/6 61/4 62/7
74/10 75/14 78/1
motions [1]  75/23
motives [2]  37/16
37/21
move [2]  24/4 24/5
moves [1]  9/6
movie [2]  29/15 30/11
Mr [2]  21/16 71/25
Mr. [128]
Mr. Caldwell [71]  3/15
3/19 4/13 4/20 5/22 6/3
6/10 7/17 8/2 11/1 11/2
11/22 13/11 13/17
15/19 17/8 22/2 22/20
23/3 23/10 23/14 23/18
24/1 24/10 26/24 27/18
27/18 27/20 28/8 29/10
29/13 29/16 29/21
29/23 30/11 30/20 31/2
32/22 33/25 37/2 37/8
37/25 43/12 43/16
43/21 43/23 44/1 44/2
45/17 45/24 60/13
63/11 63/20 63/23
64/13 64/21 65/13 66/6
67/5 67/12 69/14 69/23
70/11 71/4 71/17 74/6
77/2 77/5 77/7 77/14
77/24
Mr. Caldwell's [16]
7/23 11/19 25/24 28/22
30/8 31/23 33/7 33/9
42/20 59/24 63/1 63/15
63/19 63/22 65/25 78/4
Mr. Crowl [3]  7/19
24/13 25/11
Mr. Edwards [2]  5/12
5/18
Mr. Fischer [18]  4/1
12/6 13/16 14/4 16/21
21/19 27/24 29/6 36/20
36/24 37/24 62/13
62/14 62/20 74/2 74/11
74/20 75/8
Mr. Harmon [1]  33/1
Mr. Johnson [2]  79/1
79/7
Mr. Johnson's [1]
78/25
Mr. Nestler [8]  4/2
24/24 27/13 28/21 42/8

Mr. Rhodes [1]  10/24
Mr. Shipley [4]  78/16
78/22 79/3 79/6
Mr. Weisinger [1]  35/7
Ms. [15]  11/13 11/15
11/23 11/25 12/11
12/17 20/2 23/6 24/23
25/11 29/18 30/1 43/15
64/10 76/15
Ms. Rakoczy [4]  20/2
23/6 64/10 76/15
Ms. Watkins [11]  11/13
11/15 11/23 11/25
12/11 12/17 24/13
25/11 29/18 30/1 43/15
much [9]  6/10 26/23
27/3 30/2 41/2 48/4
54/23 55/6 60/20
multiple [4]  23/12 24/2
34/16 57/3
must [3]  18/19 37/5
37/7
my [25]  3/19 5/5 10/23
15/10 20/15 21/23
25/18 25/18 28/8 31/18
32/25 35/2 44/5 45/19
46/10 49/2 53/16 59/5
59/15 60/22 67/10 72/2
72/4 73/15 75/16
myself [2]  8/18 45/21

**N**

name [3]  6/18 63/5
63/12
names [1]  6/13
narrow [4]  49/6 49/9
78/3
narrowest [4]  45/7
49/3 60/19 62/6
national [1]  34/3
nature [3]  9/14 9/19
69/11
necessarily [2]  19/12
25/2
necessary [4]  18/11
49/1 60/18 72/20
need [12]  37/13 41/6
41/10 41/11 49/16
50/13 51/22 51/25
52/20 54/3 68/3 76/16
needed [1]  51/8
needs [7]  4/7 18/23
19/3 46/22 49/21 74/9
75/14
Neither [1]  50/9
Nestler [11]  1/13 3/9
4/2 21/16 24/24 27/13
28/21 42/8 42/12 74/4
77/2
never [1]  73/22
New [14]  5/16 5/17 6/9
6/9 6/12 6/24 8/9 8/13
15/4 20/1 24/24 27/1
33/25 34/1
New Yorker [14]  5/16
5/17 6/9 6/9 6/12 6/24
8/9 8/13 15/4 20/1

news [11]  5/14 18/4
21/8 23/1 24/23 25/1
25/10 34/4 41/18 42/14
42/14
News2Share [1]  9/3
newspaper [2]  25/22
26/16
next [4]  7/6 35/22 60/4
60/5
nexus [5]  4/7 4/8 14/7
16/24 31/25
night [5]  5/20 14/16
39/24 55/24 57/13
nine [1]  55/16
no [39]  1/4 3/7 12/16
19/5 19/15 19/15 21/17
22/2 22/23 23/18 24/5
24/5 25/25 27/17 27/20
30/1 30/22 43/7 43/15
44/3 46/1 46/2 52/16
52/16 53/8 65/6 65/7
66/12 69/24 70/11
70/12 71/4 71/5 71/7
71/12 72/6 77/2 77/3
78/19
none [1]  67/5
not [122]
notably [1]  13/23
noted [1]  25/1
nothing [12]  20/12
22/9 26/21 27/1 27/2
33/6 43/19 53/12 68/23
69/14 70/6 70/9
notice [8]  3/18 23/15
27/10 35/11 35/13 36/2
36/11 36/14
now [12]  5/13 10/15
17/1 34/9 35/5 35/11
48/24 52/13 54/1 73/11
78/6 78/17
number [5]  30/23
42/10 43/2 43/3 55/17
numbers [1]  45/11
NW [2]  1/14 2/4

**O**

Oath [12]  10/18 17/15
17/17 17/19 17/24 18/2
18/7 18/8 61/11 63/24
64/1 64/7
Oath Keepers [11]
10/18 17/15 17/17
17/19 17/24 18/2 18/8
61/11 63/24 64/1 64/7
Oath Keepers' [1]  18/7
observed [1]  55/19
obstruct [5]  31/15
31/16 59/3 71/13 71/21
obstructed [2]  23/17
49/19
obstruction [9]  3/24
11/5 12/16 14/14 18/20
18/21 50/23 50/25 51/2
obstructive [5]  44/16
69/3 69/6 69/10 69/13
obvious [1]  35/18
obviously [15]  4/7 10/7

4/16 21/2 21/7 22/9
25/22 26/10 45/2 70/8
71/3 71/19 77/16 78/10
78/13
occurred [1]  42/21
odd [2]  11/20 12/19
off [7]  13/19 13/19
29/22 32/19 35/2 59/24
70/20
offense [9]  11/23 12/14
47/6 47/19 56/15 69/19
75/5 75/6 75/7
OFFICE [1]  1/17
officer [3]  22/7 45/12
53/11
officers [2]  22/6 29/20
56/14 69/7
official [8]  2/3 4/11
18/20 18/22 36/16
50/23 50/25 51/2
oh [2]  32/9 79/9
Ohio [1]  43/14
okay [27]  3/14 8/17
8/24 9/1 9/22 13/25
28/16 28/17 29/23
33/24 36/18 39/15
40/11 42/3 44/8 48/6
48/11 52/16 62/12
62/20 73/24 76/11
76/21 78/3 78/14 78/20
79/8
Old [2]  11/1 11/4
Old Leadership [2]
11/1 11/4
omnibus [2]  78/23
79/11
once [1]  43/17
one [30]  5/14 8/25
12/12 18/5 25/15 29/21
30/23 33/2 33/2 33/4
40/12 42/10 43/2 45/2
45/21 49/19 53/20 55/9
55/14 55/21 57/22 59/4
60/1 64/23 68/12 68/13
68/18 73/11 77/15
77/22
only [7]  19/21 29/5
29/7 41/6 60/1 70/12
73/17
open [4]  23/1 40/21
65/12 65/14
open-source [1]  23/1
operate [1]  22/4
operations [1]  79/24
opinion [1]  15/10
opinions [1]  68/12
opportunity [4]  64/19
64/23 65/2 70/4
opposed [2]  17/11
68/10
opposition [1]  48/19
oral [4]  44/21 44/25
59/6 67/24
order [8]  9/17 49/25
57/15 60/16 74/9 75/14
79/23 79/24
ordered [1]  71/3
organization [1]  63/24

**O**

**original [2]** 32/18
34/25

**originals [1]** 32/17

**other [45]** 9/25 11/7
12/16 12/21 13/1 15/22
17/22 25/12 26/1 29/3
32/15 33/17 33/19
34/11 35/13 38/2 38/17
45/11 45/11 47/16
47/20 47/22 48/12
48/23 51/25 52/10
54/25 56/1 60/8 60/10
60/14 61/10 61/15
61/16 61/19 62/8 64/1
64/23 70/8 73/25 74/7
74/8 76/22 79/5 79/20

**others [19]** 3/21 13/12
13/22 18/15 21/3 45/23
45/25 50/16 50/17
54/20 56/11 57/14 58/8
58/15 58/25 61/7 62/25
72/17 74/12

**otherwise [1]** 68/4

**ought [3]** 37/23 48/14
61/4

**our [10]** 9/6 10/3 41/25
48/19 54/2 58/4 60/25
66/22 75/11 76/17

**ourselves [1]** 45/20

**out [60]** 7/15 7/15 7/20
9/5 11/15 14/1 14/11
15/3 16/7 20/15 20/23
20/25 23/1 23/9 23/24
24/24 27/5 29/22 32/20
34/10 35/4 35/5 35/17
37/20 37/24 41/18
41/23 43/11 43/20 44/2
56/6 56/13 57/22 59/16
60/3 61/17 62/9 63/2
63/9 63/10 63/13 63/15
63/22 64/6 64/16 65/11
69/1 69/21 70/16 70/17
70/23 73/19 74/23 76/7
76/15 77/3 77/6 77/14
79/3 79/23

**outed [3]** 25/21 26/16
26/25

**outset [1]** 25/7

**outside [3]** 42/15 44/4
57/5

**over [7]** 12/13 38/2
55/3 70/18 70/23 70/24
77/18

**overdose [1]** 35/8

**oversee [1]** 21/25

**overwhelming [1]**
23/25

**own [19]** 10/2 11/5
18/14 18/25 19/4 21/15
26/12 40/9 44/1 45/19
46/22 54/12 54/23
55/25 56/10 57/13
61/17 63/17 77/10

**P**

**P. [1]** 3/3
**P.A [1]** 1/19

**page [9]** 4/23 5/1 5/19
6/23 8/21 8/22 38/23
39/12 39/20

**pages [3]** 33/3 33/11
33/12

**Palian [8]** 8/14 29/1
42/18 42/20 63/18 64/3
64/11 64/11 64/13

**Palian's [2]** 29/9 29/9

**panel [3]** 44/13 44/16
44/22

**paragraph [1]** 22/12

**parapet [8]** 53/3 56/5
56/12 57/1 57/4 74/22
74/24 75/25

**part [8]** 14/21 21/25
22/6 33/8 43/25 67/3
72/16 75/9

**participated [1]** 25/8

**participating [2]** 65/23
74/15

**participation [2]** 22/15
22/18

**particle [1]** 27/20

**particular [7]** 10/25
21/24 22/3 23/2 32/11
33/16 73/11

**party [2]** 26/9 28/1

**passed [1]** 74/22

**passing [1]** 35/8

**past [2]** 53/1 55/1

**pause [1]** 54/22

**peace [7]** 56/22 65/4
65/5 65/8 67/2 70/5
77/7

**Pelosi's [1]** 5/24

**people [36]** 5/3 5/25
6/7 9/15 9/18 10/7 10/9
12/12 14/20 15/4 15/6
15/22 15/23 19/25 21/3
21/8 24/11 25/8 25/19
34/11 35/13 38/3 40/23
41/3 54/13 56/5 57/2
57/3 59/20 63/5 70/8
74/23 76/7 76/9 76/9
79/12

**pepper [1]** 67/13

**per [7]** 23/4 44/1 65/5
69/3 69/6 69/10 69/13

**percent [1]** 65/12

**percentage [1]** 55/17

**perhaps [1]** 3/21

**perjury [9]** 10/4 10/8
10/10 20/3 20/6 21/12
21/12 30/2 41/19

**person [11]** 17/4 17/5
25/15 25/17 35/12
37/19 44/4 44/19 65/23
72/14 73/12

**person's [2]** 45/4
63/12

**personally [2]** 30/9
56/10

**perspective [3]** 46/18
47/4 49/16

**phase [1]** 12/15

**phone [12]** 10/17 13/18

**33/19 39/18 41/23
43/13 56/18 77/8

**photograph [1]** 31/4

**photographs [12]** 6/13
22/14 22/17 23/14
23/16 24/2 31/16 33/18
34/18 54/16 57/10 65/9

**photos [4]** 31/5 32/18
40/23 56/18

**physical [2]** 30/24 31/1

**picking [1]** 77/16

**piece [3]** 7/25 8/3 34/4

**pieces [2]** 9/24 56/19

**pigs [2]** 56/6 56/13

**Pillard [1]** 45/7

**Pillard's [2]** 49/2 60/19

**Pinkerton [2]** 72/24
73/1

**place [8]** 22/21 22/22
23/23 26/5 26/21 54/15
72/17 72/19

**Plaintiff [1]** 1/4

**planning [1]** 61/11

**platforms [1]** 13/20

**plausible [1]** 37/2

**pleading [1]** 66/14

**pleadings [1]** 58/1

**please [3]** 3/5 21/21
79/25

**pleases [1]** 62/21

**plugging [1]** 5/12

**plus [1]** 33/10

**point [46]** 10/21 11/5
14/1 20/23 23/24 24/23
25/24 27/24 29/14
29/21 29/22 31/18
32/20 35/4 37/16 37/19
37/24 40/19 43/11
43/18 43/20 43/22 44/2
44/7 53/24 54/5 57/21
59/16 63/1 63/8 63/9
63/13 63/22 64/16
65/11 67/21 69/1 69/21
70/5 70/17 71/10 71/12
72/5 76/17 77/11 77/14

**pointed [4]** 27/5 37/24
63/10 63/15

**points [9]** 21/20 22/11
40/12 42/5 42/10 44/25
74/12 76/15 76/25

**police [14]** 9/17 14/21
22/6 29/20 36/5 36/6
45/12 53/11 56/14 67/4
67/6 69/7 77/11 77/11

**politician [1]** 26/18

**Politics [1]** 5/24

**portion [2]** 67/3 68/13

**pose [1]** 3/23

**position [8]** 45/2 45/8
47/2 48/24 60/25 61/19
65/24 68/22

**possession [1]** 31/2

**possibility [1]** 15/20

**possible [4]** 15/22
37/17 63/8 78/3

**possibly [3]** 24/15 27/8
43/19

**Post's [1]** 7/7

**postings [1]** 4/14

**posture [1]** 37/4

**potato [1]** 67/25

**potential [2]** 18/8
72/19

**potentially [5]** 26/2
35/20 46/7 58/9 60/10

**Potomac [3]** 38/4 40/4
58/24

**Powell [1]** 48/20

**practical [1]** 59/22

**predication [2]** 64/4
64/6

**prefer [1]** 60/12

**preponderance [1]**
12/15

**presence [4]** 52/22
74/25 76/6 76/6

**present [1]** 13/3

**presented [5]** 23/18
24/1 71/7 72/24 77/24

**presenting [1]** 41/24

**presiding [1]** 3/3

**pretty [1]** 55/2

**Prettyman [1]** 2/4

**prevent [3]** 14/11
16/13 37/17

**preview [1]** 10/23

**previously [2]** 17/22
59/12

**primarily [1]** 13/4

**primary [1]** 40/21

**principal [2]** 12/16
51/23 63/10

**principals [1]** 61/16

**principles [1]** 46/20

**prior [1]** 23/12

**probability [1]** 15/21

**probably [2]** 44/15
65/22

**problem [4]** 27/11
34/15 35/22 54/2

**procedural [1]** 37/4

**proceed [1]** 60/2

**proceeding [18]** 4/11
10/8 10/13 15/21 18/21
18/22 21/13 32/15 36/4
36/16 49/20 50/24 51/1
51/2 69/18 71/10 71/21
71/22

**proceedings [5]** 1/9
2/6 3/13 80/2 81/4

**process [1]** 22/1

**procuring [4]** 17/20
38/3 39/10 39/17

**produce [1]** 32/16

**produced [1]** 2/7

**prohibitum [5]** 68/11
68/16 68/19 69/19 75/5

**proof [1]** 49/10

**proper [1]** 37/14

**property [1]** 25/5

**proposition [1]** 25/5

**prosecute [2]** 16/9
16/12

**protect [1]** 13/22

**protected [1]** 76/13

**provably [1]** 71/12

**prove [1]** 34/20

**proved [2]** 12/15 64/6

**proven [1]** 66/19

**provide [3]** 60/20
60/23 79/14

**providing [1]** 51/18

**province [1]** 27/16

**prudent [1]** 60/6

**public [1]** 7/7

**publicity [13]** 28/25
29/1 29/11 29/12 40/15
42/8 42/12 42/15 42/16
42/18 42/21 43/2 43/4

**publicized [1]** 28/22

**publicly [4]** 17/17
19/25 20/7 20/15

**published [5]** 5/17
6/12 6/24 7/4 7/8

**pull [1]** 8/15

**pulling [1]** 5/6

**purely [1]** 58/22

**purpose [16]** 33/10
34/8 35/21 45/5 49/23
50/3 50/14 58/20 58/21
59/3 59/8 59/8 59/15
59/18 61/2 72/10

**purposes [2]** 79/5
79/12

**push [1]** 57/2

**pushed [2]** 74/23 77/3

**put [8]** 30/23 46/2 47/7
47/24 52/8 55/6 59/24
71/9

**puts [3]** 8/9 30/6 36/9

**PUTZI [1]** 1/19

**Q**

**QRF [11]** 17/21 39/23
57/19 58/3 58/8 59/1
69/22 69/23 69/25
72/17 72/18

**quarterback [1]** 63/18

**question [23]** 11/12
12/8 25/25 28/20 29/5
30/15 31/14 33/24 45/6
45/14 45/19 46/4 46/7
49/3 49/24 52/14 53/20
59/11 59/23 60/19
62/24 65/15 67/19

**questions [6]** 3/20
3/23 54/7 59/5 62/9
73/25

**quickly [1]** 13/21

**quintessential [1]**
31/14

**quite [2]** 21/5 23/21

**R**

**raise [1]** 46/7

**raised [3]** 27/24 29/5
29/6

**Rakoczy [6]** 1/13 3/9
20/2 23/6 64/10 76/15

**ran [1]** 56/7

**rea [7]** 50/11 50/20
51/12 51/15 51/23

rea... [2] 51/25 72/12
reached [2] 48/8 48/9
reaches [1] 7/19
reaction [4] 21/20
21/23 21/23 24/9
read [6] 6/4 25/14 30/8
30/12 34/1 50/23
reading [2] 21/2 30/14
reads [1] 33/25
Realistically [1] 53/6
realize [1] 73/12
really [9] 27/25 31/17
31/24 32/1 42/10 44/3
45/22 54/24 55/7
Realtime [1] 2/3
reason [1] 59/25
reasonable [21] 7/18
11/21 17/23 31/12
34/20 36/25 37/1 37/4
37/11 37/12 39/22 40/5
41/25 45/24 47/8 55/12
57/12 66/8 66/19 67/14
75/11
reasonably [17] 4/16
4/20 8/2 8/4 10/12
14/25 15/20 18/25 19/7
20/20 41/7 41/12 43/17
52/2 58/17 62/5 76/18
reasons [1] 26/15
rebuttal [3] 7/2 24/25
74/4
recall [1] 42/18
recalls [1] 73/15
received [2] 43/13 79/1
recess [3] 62/18 62/19
80/1
recessed [2] 71/8
71/11
record [9] 6/20 42/11
42/15 42/17 43/1 52/5
55/18 55/19 81/3
recorded [2] 2/6
recording [2] 7/9 7/22
records [7] 4/22 20/25
33/5 33/11 38/19 38/25
39/2
recovered [1] 39/18
redacted [1] 20/25
reference [1] 20/13
referenced [3] 5/2 39/9
70/18
regarding [1] 69/25
Registered [1] 2/2
related [1] 39/23
relates [1] 3/19
relationship [1] 17/14
relevant [1] 38/17
relied [1] 64/8
rely [2] 45/22 62/25
relying [1] 79/6
remark [1] 71/16
remember [2] 64/10
71/15
remind [2] 23/24 56/20
reminded [1] 20/2
repeat [1] 16/17
repeatedly [1] 36/25

request [1] 68/10
requested [1] 66/15
require [9] 15/19 18/24
21/10 49/10 50/10
51/11 51/12 51/14
72/11
required [2] 44/14
49/12
requirement [4] 16/25
50/11 66/12 66/15
requires [4] 19/10
51/17 72/8 72/12
requisite [1] 31/11
resolve [1] 67/9
respect [4] 44/24 46/16
57/19 65/25
respectfully [2] 42/7
77/1
responds [2] 30/1 40/1
response [1] 49/2
responsible [1] 45/25
rest [1] 20/24
restricted [4] 46/3 46/8
52/22 52/25
result [1] 43/10
resume [1] 62/15
retaining [1] 70/19
returns [1] 38/22
reveals [1] 16/22
review [1] 3/20
rhetorical [2] 63/16
77/15
Rhodes [3] 10/15
10/24 17/22
rid [1] 14/19
right [33] 3/16 4/5 5/12
7/10 7/21 9/1 16/4
16/11 20/9 28/1 31/14
33/22 34/13 36/18
38/12 39/13 41/8 44/8
44/9 49/7 51/10 53/25
55/5 56/24 58/2 62/2
66/21 67/7 71/17 74/18
76/24 78/15 79/24
riot [11] 6/1 6/8 7/1
56/7 56/14 61/18 64/25
65/23 67/13 75/9 75/10
rioters [1] 71/3
Riots [1] 5/4
rise [2] 3/2 62/17
risk [2] 10/16 10/21
Ritchie [1] 1/20
RMR [2] 81/2 81/8
Roberts [1] 67/24
Robertson [11] 44/22
46/4 46/13 49/4 49/4
49/5 58/1 59/6 59/16
60/18 62/10
role [3] 6/8 21/4 31/18
room [2] 35/8 35/9
rotation [1] 21/8
route [1] 53/11
rows [1] 56/4
RULE [16] 1/9 3/18
10/24 12/19 37/7 37/23
46/23 48/19 49/17 50/6

Rule 1 [2] 54/4
2/3 2/3
Rule 29 [12] 10/24
12/19 37/7 37/23 46/23
49/17 55/10 57/17 61/4
62/7 74/10 75/14
rules [1] 78/8
ruling [1] 62/7

S
said [19] 9/5 21/2 21/5
21/12 28/24 31/10
35/16 48/24 54/13
54/14 55/7 55/18 56/3
63/20 64/13 65/17 67/4
69/24 71/15
same [9] 7/12 7/19
17/12 17/13 19/25 24/2
31/5 40/15 51/22
sat [2] 65/4 65/4
satisfied [3] 16/25
59/18 65/20
satisfy [2] 44/17 45/15
saturated [1] 77/22
save [5] 5/7 26/12
37/25 38/5 40/7
saw [5] 7/17 8/2 27/20
78/16 78/22
say [16] 14/15 24/18
25/20 25/23 25/23
31/18 32/12 33/14
33/25 44/15 53/9 59/24
61/20 61/22 68/2 74/11
saying [9] 20/14 30/9
30/12 43/24 45/1 56/9
69/15 76/16
says [16] 7/23 15/14
16/5 16/21 18/19 20/5
23/13 27/1 27/2 29/16
29/23 29/23 30/4 31/16
55/23 70/1
scaffolding [3] 53/2
54/14 57/4
scale [1] 40/20
scared [2] 75/2 76/8
scene [2] 35/10 35/15
scepticism [1] 65/21
schedule [1] 79/10
scheduling [1] 79/5
screamed [1] 74/24
screen [2] 39/20 64/16
se [8] 68/10 68/17
68/17 69/3 69/6 69/10
69/13 75/4
search [2] 36/8 36/13
seated [1] 3/5
second [13] 5/16 5/18
6/9 9/20 37/16 38/21
38/24 50/2 53/24 55/13
55/22 56/17 57/11
Secondly [1] 63/9
secret [1] 40/17
security [1] 69/9
seditious [2] 58/12
72/18
see [7] 5/11 5/19 8/21
39/5 54/4 73/22 78/17
seeing [1] 26/25

seem [3] 44/23 46/6
73/3
seems [9] 11/20 15/9
18/23 31/13 31/20
45/22 47/6 51/3 75/20
seen [1] 29/3
seize [1] 65/3
seized [4] 64/20 64/23
65/2 70/4
self [1] 26/11
self-serving [1] 26/11
Senate [1] 53/12
sending [4] 5/22 6/3
6/5 39/22
sends [2] 16/2 39/23
sense [3] 18/19 41/2
78/8
sent [9] 9/2 9/8 14/16
16/1 16/21 22/6 39/17
39/21 54/16
sentence [4] 18/10
19/4 60/3 60/11
sentenced [1] 60/13
sentences [1] 60/14
sentencing [3] 12/15
59/24 78/4
separate [2] 66/7 66/10
Separately [1] 50/7
separation [1] 68/20
sequence [1] 22/23
serve [2] 46/8 65/18
serving [1] 26/11
set [2] 12/19 44/11
setting [1] 52/15
Seventh [1] 14/15
14/17 41/3
several [1] 59/19
shake [1] 64/6
share [2] 51/22 51/25
shared [1] 7/11
shares [1] 4/24
sharing [1] 21/3
she [20] 11/4 11/6 11/6
11/7 11/10 11/16 11/16
11/17 11/18 12/10
12/12 12/13 12/15
21/14 30/4 41/19 41/19
71/15 71/16 71/17
she's [1] 20/5
shields [4] 56/8 56/14
61/18 67/13
shift [1] 44/9
Shipley [4] 78/16 78/22
79/3 79/6
shit [1] 29/24
short [2] 3/18 79/17
should [8] 29/24 31/21
41/15 46/23 46/25
55/22 57/8 64/14
shouldn't [2] 50/20
67/15
show [9] 5/7 5/10
11/10 26/3 26/4 39/2
39/3 61/23 70/7
showed [8] 9/3 53/4
66/23 67/2 67/3 70/10

showing [6] 4/7 4/8
4/9 10/10 56/18 77/24
shows [2] 19/24 34/17
side [7] 9/6 16/5 16/6
16/9 18/2 30/23 44/20
Signal [1] 11/18
significantly [1] 9/21
signs [1] 67/4
similar [1] 11/23
similarly [1] 44/3
simple [1] 53/12
simply [3] 4/8 69/12
72/12
since [4] 44/3 44/12
44/21 70/23
site [1] 23/1
sitting [1] 27/6
situated [2] 44/4 60/8
situation [1] 67/15
Sixth [1] 48/15
skin [1] 26/12
slide [1] 64/17
slightly [1] 47/5
Smoot [1] 40/3
so [140]
so I think [9] 4/6 27/10
30/5 43/20 68/6 68/16
69/17 70/4 71/22
so it's [5] 20/10 33/4
34/14 34/25 77/13
so this investigation
[1] 41/1
so this is [3] 5/20 5/25
13/2
solely [2] 60/2 61/6
some [31] 3/21 5/6
18/17 21/8 23/24 24/7
26/2 33/8 34/2 35/1
39/4 39/5 39/18 39/18
40/20 42/25 46/19
48/12 48/22 55/6 55/17
57/22 57/25 60/6 62/8
64/1 65/21 72/16 72/20
75/23 77/11
somebody [16] 6/5
25/10 25/21 25/23
26/13 26/15 26/16 36/5
51/17 53/10 59/17
63/13 67/14 72/12
72/12 76/1
somehow [1] 26/19
someone [11] 4/17
14/9 14/18 17/5 24/20
24/23 25/1 25/14 57/6
57/9 59/9
someone's [3] 18/24
19/8 24/22
something [12] 9/16
18/5 29/16 29/19 30/10
30/13 31/21 42/24
68/16 69/19 71/15
79/15
sometimes [1] 22/7
SoRelle's [1] 10/17
sorry [10] 5/5 7/13
13/6 27/23 32/8 39/16
39/22 52/14 68/17

**sorry...** [1] 71/25
**sort** [13] 30/5 30/5 31/7 44/11 46/19 56/22 57/22 57/24 58/23 59/7 60/15 67/25 77/14
**sounds** [1] 58/21
**source** [1] 23/1
**speak** [2] 43/14 79/3
**speaking** [2] 4/2 67/11
**Special** [2] 8/14 29/1
**specific** [10] 12/22 19/21 24/21 36/2 38/1 48/23 63/4 63/12 73/9 73/16
**specific-intent** [2] 63/4 73/9
**specifically** [8] 10/15 24/13 27/9 32/1 64/18 66/13 67/22 67/25
**specify** [1] 42/25
**speculation** [1] 18/24
**spent** [1] 64/10
**splintered** [1] 44/13
**spray** [1] 67/13
**squarely** [1] 46/5
**squaring** [1] 15/18
**Sr** [1] 1/19
**stack** [2] 18/2 63/25
**stage** [7] 44/11 46/23 52/15 53/3 55/4 65/10 69/16
**stages** [1] 40/22
**stairs** [2] 53/2 65/9
**standard** [4] 26/13 37/15 49/17 55/10
**standing** [2] 57/6 76/1
**stands** [2] 62/18 80/1
**start** [8] 3/24 4/1 4/22 5/5 11/4 11/6 23/21 46/19
**started** [4] 54/13 55/24 56/6 56/7
**starting** [1] 11/9
**starts** [2] 6/14 9/5
**statement** [1] 30/8
**statements** [7] 30/6 32/2 55/21 61/6 76/12 79/14 79/18
**STATES** [5] 1/1 1/3 1/10 3/7 63/25
**statutes** [1] 46/8
**stay** [1] 17/20
**stealing** [3] 56/7 56/14 61/18
**stenography** [1] 2/6
**step** [2] 19/6 35/22
**steps** [1] 56/4
**stick** [1] 17/7
**still** [2] 38/5 63/10
**stood** [1] 65/4
**stop** [2] 35/19 71/2
**stopping** [1] 71/6
**stories** [3] 15/22 24/10 25/10
**storm** [1] 54/14
**storming** [2] 54/17 55/1

**strict** [1] 75/7
**strike** [1] 53/10
**struck** [1] 53/11
**stuff** [1] 31/17
**subject** [6] 5/1 5/23 24/14 25/25 34/3 35/12
**submit** [5] 34/16 66/5 68/2 68/8 78/13
**subpoena** [1] 79/2
**substance** [1] 20/23
**substantial** [1] 72/14
**substantive** [2] 47/19 72/22
**such** [4] 15/8 25/14 66/14 69/19
**suffice** [1] 53/9
**sufficient** [15] 4/20 14/6 18/11 19/9 30/16 30/17 30/18 45/13 46/3 47/25 49/1 59/14 66/20 72/15 74/9
**suggest** [3] 25/23 33/9 59/25
**suggested** [1] 77/15
**suggesting** [4] 6/4 12/18 49/8 53/8
**Suite** [1] 1/20
**support** [26] 18/15 19/13 19/17 19/19 20/18 20/18 37/6 49/1 49/13 49/15 50/1 50/8 50/18 52/18 52/23 53/22 54/19 55/11 57/16 57/16 57/20 58/19 59/1 63/1 76/17 76/19
**supported** [6] 47/21 49/18 55/18 55/19 56/16 58/18
**supports** [2] 41/16 52/11
**suppose** [4] 13/9 18/17 28/1 75/19
**supposed** [2] 45/20 66/3
**Supreme** [6] 15/14 27/7 46/21 47/14 48/21 57/24
**Supreme Court** [4] 15/14 27/7 47/14 48/21
**sure** [16] 8/19 13/8 14/20 31/18 33/14 33/19 34/8 37/14 39/11 40/3 42/6 49/11 51/3 52/20 73/5 79/12
**surging** [1] 54/13
**surprised** [1] 73/23
**surrely** [1] 10/3
**surrounding** [2] 36/5 36/7
**suspect** [2] 19/1 22/20
**suspects** [1] 40/24
**sustain** [2] 60/10 61/1
**swear** [6] 10/4 10/7 10/9 20/5 29/17 29/25
**sweep** [1] 52/8
**swipe** [3] 33/2 33/3

**T**

**T.K** [1] 78/24
**take** [5] 4/2 26/5 45/1 54/13 77/20
**taken** [2] 32/19 67/13
**takes** [1] 65/17
**taking** [6] 26/21 34/5 47/4 68/5 77/16 78/3
**talk** [9] 5/15 9/19 12/23 21/18 23/7 23/8 24/6 34/9 44/9
**talked** [3] 49/21 68/13 76/23
**talking** [19] 5/2 5/4 6/6 6/17 10/10 17/21 20/3 24/8 26/13 37/18 38/11 40/20 42/12 52/5 54/16 58/22 62/6 76/1 77/19
**talks** [3] 41/5 42/8 47/15
**tampering** [2] 22/17 32/9
**tangential** [1] 26/25
**tantamount** [1] 53/14
**target** [8] 16/23 17/9 18/8 23/15 23/19 25/15 26/1 26/11
**tear** [1] 54/18
**tear gas** [1] 54/18
**technically** [1] 61/25
**tell** [3] 4/12 30/13 42/13
**telling** [3] 20/6 20/14 36/24
**tells** [2] 15/11 20/4
**ten** [1] 55/16
**Tenth** [1] 48/17
**term** [1] 60/5
**terms** [7] 12/22 21/9 24/7 56/1 61/11 67/12 75/17
**Terrace** [3] 53/5 55/4 57/5
**testified** [7] 22/8 28/25 29/12 30/21 32/1 32/11 35/14
**testimony** [15] 6/22 6/23 6/24 8/12 8/23 23/4 29/10 30/21 30/23 31/24 32/23 33/1 63/21 65/5 65/7
**text** [3] 35/13 39/13 39/18
**than** [20] 3/21 4/19 14/10 14/25 16/18 18/24 18/24 19/9 29/2 32/5 41/23 46/2 46/2 50/12 53/12 54/2 54/10 68/15 68/23 69/19
**thank** [17] 3/17 36/19 36/20 36/23 42/3 44/6 44/8 46/12 62/11 62/16 62/21 74/2 74/3 76/24 78/1 78/2 79/22
**thank you** [11] 3/17 36/20 42/3 44/6 44/8

78/2 79/22
**Thanks** [1] 79/25
**that** [553]
**that's** [54] 3/21 4/25 8/17 10/5 10/20 11/1 12/3 12/18 16/15 17/1 18/22 25/22 26/6 26/11 26/21 27/11 28/18 31/13 31/18 31/19 32/5 33/20 35/1 35/1 35/22 36/15 37/19 38/13 39/12 43/8 43/9 43/25 47/4 49/16 51/6 52/5 52/14 52/16 53/25 54/2 54/5 58/12 59/4 62/2 63/8 67/19 68/16 68/22 71/21 72/4 72/7 75/3 75/7 75/13
**their** [15] 5/25 10/13 14/23 18/25 19/2 19/4 25/13 26/18 41/18 57/24 61/11 61/13 63/17 74/25 74/25
**them** [16] 14/21 14/23 24/17 26/3 26/19 26/20 30/13 38/5 39/4 39/4 40/24 40/25 60/9 65/9 74/23 75/2
**themselves** [1] 26/16
**then** [32] 9/2 9/6 9/23 10/2 16/17 19/6 19/10 30/1 30/3 30/19 32/9 35/9 36/8 36/22 38/1 40/6 41/24 45/6 47/1 56/5 56/7 56/25 58/8 58/20 61/3 62/15 69/15 71/13 72/13 73/13 78/6 79/19
**theories** [2] 50/9 59/17
**theory** [7] 13/10 24/9 37/7 41/17 54/2 54/3 72/22
**there** [98]
**there's** [46] 4/9 4/19 4/24 6/11 7/18 7/22 12/16 17/23 22/2 22/9 27/3 27/17 27/19 29/19 30/1 30/2 30/16 30/17 36/1 36/2 36/3 36/12 36/13 41/4 41/24 43/15 47/16 48/15 48/16 48/21 52/20 54/19 55/10 65/9 66/12 66/14 66/14 72/15 77/3 77/18 78/5 78/12
**therefore** [7] 6/4 18/8 24/14 24/15 50/3 50/4 73/9
**these** [14] 3/13 7/6 22/5 34/7 40/7 40/8 48/23 52/4 52/9 55/11 55/12 56/18 64/12 64/12
**they** [50] 6/18 10/5 10/8 10/9 10/16 13/21 13/14 14/22 14/24 15/7

20/17 20/19 25/2 28/25 35/16 36/1 36/6 38/5 40/7 42/23 42/25 43/14 43/22 43/23 43/24 47/20 52/20 57/23 61/11 61/12 64/2 64/8 64/15 65/7 65/8 65/18 67/14 67/15 70/2 70/12 71/9 71/19 72/19 74/25 75/3 75/3 79/19
**they'd** [1] 60/9
**they'll** [1] 79/19
**they're** [13] 7/24 24/16 26/19 27/2 27/2 36/7 36/12 36/14 36/15 56/16 63/6 76/13 79/20
**thing** [2] 57/22 68/18
**things** [12] 13/17 13/19 14/22 33/5 43/24 50/17 53/20 55/6 55/9 56/10 69/25 77/25
**think** [71] 4/6 4/6 4/12 6/15 13/15 14/16 19/8 20/19 24/19 25/4 25/5 25/14 26/9 26/10 27/3 27/10 28/23 30/5 30/9 31/8 32/1 32/3 32/5 32/10 33/11 35/22 36/1 36/24 37/14 41/16 42/19 42/23 43/20 43/23 43/23 44/3 44/15 44/23 45/12 45/22 46/17 47/12 47/23 47/25 53/6 55/16 57/25 59/6 61/25 63/13 63/18 65/18 66/14 67/8 67/10 68/6 68/9 68/16 68/19 69/2 69/17 70/4 70/18 71/22 72/5 73/15 74/5 75/20 77/19 78/5 78/8
**thinking** [2] 44/1 49/14
**thinks** [1] 34/6
**third** [1] 26/8
**this** [69] 3/6 3/16 3/22 5/6 5/18 5/20 5/20 5/25 6/3 9/20 10/3 11/12 12/13 12/23 12/25 13/2 13/16 15/16 17/16 18/1 18/14 24/19 25/5 25/6 25/17 25/23 28/1 29/1 29/7 29/23 31/8 31/10 32/22 33/15 36/17 36/21 37/20 40/6 40/15 40/22 41/1 41/4 41/15 41/16 43/1 43/23 43/25 45/1 46/6 46/17 47/17 48/13 53/14 62/18 64/17 66/22 68/18 69/2 69/23 73/1 73/1 73/5 75/5 75/6 75/14 75/23 78/10 78/11 79/23 80/1
**THOMAS** [3] 1/6 1/19 3/7
**thornier** [1] 62/8
**those** [44] 3/20 7/11 9/24 13/11 14/22 15/6 19/11 19/25 22/7 25/15

**T**

those... [34] 27/20 28/21 32/1 33/5 33/8 36/11 37/9 38/4 38/6 38/8 38/9 38/15 39/13 39/14 40/14 40/15 40/16 41/2 46/10 50/9 50/17 52/19 56/10 57/3 57/3 57/17 58/16 58/17 59/19 67/5 67/8 68/6 77/25 79/18

though [3] 31/6 40/4 61/21

thought [10] 25/25 26/1 27/25 39/8 41/19 66/1 72/1 72/2 78/11 79/4

thoughts [2] 46/10 59/23

thousand [2] 57/2 74/22

thread [4] 32/22 33/2 33/8 38/2

threat [1] 69/4

three [5] 5/14 20/19 23/22 31/3 31/5

through [16] 8/12 10/17 12/24 13/4 23/11 24/1 53/2 55/14 55/14 56/6 56/8 56/12 56/16 57/2 57/3 57/4

throwing [2] 56/8 56/15

thwart [1] 34/9

time [11] 5/8 15/18 17/16 26/17 29/25 53/15 56/25 65/12 71/10 75/24 76/4

times [3] 22/8 69/15 79/13

titled [1] 81/4

today [2] 49/25 79/16

together [1] 7/13

toilet [2] 35/10 36/9

told [4] 10/15 19/23 36/24 40/17

ton [1] 33/5

too [4] 26/23 26/23 27/3 30/2

took [3] 22/21 23/22 43/16

top [1] 75/25

topic [4] 36/21 41/5 47/17 48/22

touch [4] 11/8 11/11 15/25 78/25

towards [3] 27/21 33/21 77/21

Towers [1] 1/20

track [1] 40/24

trail [1] 35/3

traitors [1] 54/15

transcript [4] 1/9 2/6 8/16 81/3

transcription [1] 2/7

transcripts [1] 6/23

transport [2] 38/3 58/8

transportation [3]

trespass [10] 29/6 29/7 53/14 53/17 53/21 54/12 57/9 65/22 76/17 76/19

trespassed [1] 76/1

trespasser [2] 56/21 57/8

trespassing [5] 27/15 27/15 68/19 69/20 75/7

trial [9] 8/23 14/13 35/5 36/16 44/12 47/17 55/13 55/22 56/18

trial-court [1] 35/5

trouble [4] 24/21 26/18 34/7 34/7

Troy [1] 3/10

Troy Edwards [1] 3/10

trust [1] 63/19

truthful [2] 63/20 64/14

try [3] 14/8 17/10 25/16

trying [17] 7/24 8/17 13/22 13/23 16/24 31/4 32/4 34/9 34/10 35/19 37/17 37/21 47/17 48/14 55/25 71/20 74/16

tunnel [2] 55/5 57/5

turn [1] 36/22

turned [2] 23/1 23/9

turning [1] 68/5

turns [1] 60/3

TV [1] 77/18

two [15] 3/19 3/23 14/16 19/25 25/16 42/10 43/3 44/25 45/25 50/17 53/20 54/7 55/9 55/13 56/4

type [1] 34/2

types [2] 26/15 36/11

**U**

U.S [4] 1/14 5/24 44/13 44/22

U.S.A [1] 69/15

U.S.C [2] 52/23 58/9

ultimate [1] 59/3

ultimately [7] 14/24 15/6 45/6 48/3 49/9 54/1 67/9

unconnected [1] 18/22

under [8] 17/25 23/18 24/21 24/22 26/11 53/13 53/15 69/11

underlying [1] 61/24

understand [8] 19/5 19/15 31/20 43/9 49/24 58/13 63/11 65/24

understanding [3] 28/8 72/20 73/15

Understood [2] 67/17 79/22

unfair [1] 11/12

unfortunate [1] 65/1

unidentified [1] 61/7

unique [1] 9/18

UNITED [5] 1/1 1/3 1/10 3/7 63/25

United States [1] 63/25

United States of [1] 3/7

unknown [1] 61/16

unlawful [29] 44/17 45/4 45/21 46/1 47/6 47/9 48/1 49/13 49/22 50/1 50/14 52/7 52/7 52/18 52/19 52/23 53/18 53/22 56/1 57/18 57/20 57/23 58/18 61/2 65/19 66/9 66/9 66/13 72/10

unlawfully [1] 9/15

unprecedented [1] 42/11

unreasonable [1] 25/14

unrebutted [1] 31/1

unsent [2] 4/14 9/9

until [7] 22/21 23/3 23/10 23/22 59/24 65/8 78/7

unto [2] 75/5 75/6

up [30] 4/5 5/6 5/18 8/15 10/25 11/10 15/16 18/2 35/8 35/9 35/10 35/15 38/21 39/20 41/5 65/8 65/10 69/14 69/22 70/6 70/21 70/24 74/22 77/12 77/14 77/16

upon [5] 24/10 31/10 45/6 65/2 65/3

us [3] 16/21 79/12 79/20

usdoj.gov [2] 1/16 1/17

use [9] 16/8 34/19 34/25 38/11 52/7 52/18 69/25 72/19 75/18

used [10] 10/4 14/11 14/23 15/6 36/15 50/14 52/6 56/2 58/10 58/23

using [4] 9/17 40/24 52/23 75/3

UTC [1] 5/20

**V**

vacate [1] 78/4

valid [2] 54/5 54/9

various [1] 4/13

verdict [7] 46/22 46/24 47/13 49/16 49/18 50/6 55/11

verdicts [2] 45/16 48/21

versa [1] 47/19

versus [3] 3/7 44/13 44/22

very [11] 8/9 12/19 14/17 24/15 38/13 40/20 49/6 51/21 59/22 78/10 79/18

via [1] 39/18

viable [1] 58/14

vice [1] 47/19

victims [1] 79/13

video [22] 9/3 9/8 9/10 9/14 13/3 13/4 16/2 18/3 19/24 22/25 23/2 23/9 25/11 55/8 57/1 57/10 65/9 70/10 71/17 77/23 77/23 77/24

videos [2] 40/23 70/9

view [7] 17/8 25/25 43/22 61/6 65/17 67/10 75/16

violate [1] 58/9

violated [1] 50/5

violation [3] 46/7 52/23 65/18

violence [1] 44/5

violent [2] 21/9 61/13

Virginia [1] 35/6

virtually [1] 35/25

vis [2] 22/4 22/4

voice [1] 71/23

vs [1] 1/5

**W**

wait [3] 60/6 78/7 79/25

waiting [4] 60/17 60/21 79/20

walked [1] 65/13

walkway [2] 66/24 67/2

wall [3] 55/3 70/19 70/19

want [11] 3/25 5/5 14/20 24/3 24/6 26/15 30/8 57/21 62/14 74/19 78/13

wanted [10] 3/18 40/13 43/14 50/2 74/25 75/3 76/5 76/6 78/11 78/17

wants [4] 16/13 60/24 75/8 77/20

warrant [2] 36/8 36/13

was [240]

Washington [7] 1/5 1/15 2/5 7/7 7/8 7/17 27/19

wasn't [10] 32/3 42/10 46/4 46/15 49/8 52/24 56/20 64/14 66/3 66/15

Watkins [49] 6/13 6/25 7/11 7/13 7/14 8/7 8/10 9/3 9/8 10/2 10/4 10/11 11/3 11/8 11/11 11/13 11/15 11/23 11/25 12/11 12/17 13/22 15/2 16/2 16/12 17/11 17/16 19/12 19/25 20/2 20/4 20/4 20/6 20/13 20/14 20/18 21/5 21/12 22/22 24/13 25/11 29/18 30/1 34/3 41/18 41/19 43/13 43/15 74/7

Watkins' [1] 21/15

way [16] 10/13 27/1 27/8 27/8 46/2 52/8 55/4 57/3 70/20 70/21 70/23 70/24 72/14

ways [2] 49/14 49/17

we [116]

we believe [8] 4/19 12/10 19/18 28/14 52/11 55/10 57/18 75/22

we'd [1] 79/4

we'll [4] 21/18 36/22 54/4 79/23

we're [6] 26/17 37/4 37/14 38/11 40/20 46/13 49/14 52/14 56/9 58/22 58/22 60/13 75/25 76/15 77/19 79/3

we've [3] 38/22 38/25 78/25

weapons [1] 38/4

Wednesday [2] 78/5 79/2

Wednesday's [2] 78/23 79/9

weeks [2] 11/9 28/3

weight [2] 54/23 64/15

Weisinger [3] 35/5 35/6 35/7

well [27] 5/17 19/14 24/18 25/20 29/8 31/23 33/21 37/8 39/16 45/7 45/9 46/25 47/17 47/24 52/9 53/1 53/20 55/9 66/5 66/11 69/3 69/9 70/22 73/3 78/14 78/21 79/10

Wellman [5] 14/4 16/20 18/10 18/19 23/13

went [7] 43/14 55/13 55/14 56/17 57/2 75/24 77/12

were [74] 6/7 9/17 10/5 10/16 12/12 13/3 13/17 14/20 14/22 14/22 14/24 15/2 15/4 15/7 15/21 15/25 16/6 19/25 20/5 20/18 20/19 21/6 21/7 21/14 22/17 22/22 24/11 24/13 26/25 27/14 27/15 29/17 29/24 30/13 33/5 35/14 35/16 36/6 39/4 39/5 39/8 39/13 39/14 39/18 40/14 40/23 41/12 41/18 42/25 43/24 46/5 46/13 47/17 53/1 55/17 55/19 59/23 60/2 60/15 61/7 61/12 61/17 61/22 64/1 67/3 67/6 69/8 70/8 70/8 71/19 74/8 75/1 75/3 77/23

weren't [2] 38/5 67/18

west [6] 16/5 18/2 53/5 55/4 55/5 57/5

Western [1] 35/6

what [78] 4/12 4/15 6/18 9/24 10/20 11/15 11/16 13/9 14/15 15/3 17/24 18/15 18/19 21/5 21/8 23/9 24/18 25/12

**W**

**what... [60]** 27/14 29/2
30/8 30/12 31/19 32/18
35/1 36/14 36/24 37/3
42/18 42/25 43/25
44/14 45/15 45/21
47/14 47/19 47/20
47/20 49/9 49/25 52/5
54/11 54/25 55/2 55/18
55/23 56/3 57/9 57/12
57/14 59/19 59/23
61/12 62/2 62/9 64/25
65/7 65/23 65/24 66/13
67/11 67/12 70/3 70/6
71/22 72/9 73/7 74/15
74/24 75/3 75/7 75/9
75/13 75/17 76/5 76/6
76/13 79/12
**what's [6]** 10/23 24/8
30/4 45/7 59/10 60/19
**whatever [2]** 33/3
33/10
**whatsoever [1]** 70/7
**when [27]** 4/13 10/4
10/10 11/10 14/18
14/23 15/7 16/15 20/2
22/22 26/8 26/12 31/3
34/11 34/22 37/3 40/22
41/21 43/13 44/16
57/14 65/7 67/5 71/6
71/8 71/14 71/17
**Whenever [1]** 26/17
**where [19]** 14/5 22/2
29/16 36/6 39/25 40/21
41/3 47/17 52/25 53/3
55/5 58/14 61/11 65/13
65/25 67/3 69/10 75/6
76/4
**where's [1]** 38/16
**whether [10]** 7/16
16/16 28/5 32/14 40/17
46/7 62/25 66/1 78/7
78/8
**which [44]** 4/22 7/23
9/3 9/9 9/19 15/19
16/18 20/19 23/1 23/9
24/9 27/1 31/9 41/22
44/13 45/8 45/16 46/20
47/5 47/25 48/2 48/4
49/3 49/16 51/11 51/12
52/10 52/17 54/1 56/12
56/14 57/22 57/25
58/10 59/9 59/17 64/5
64/15 65/20 66/7 71/3
72/9 74/25 76/7
**while [5]** 57/13 70/13
74/12 74/15 74/17
**who [28]** 5/3 8/12
12/12 13/3 14/20 15/11
17/4 19/25 25/8 28/24
35/8 37/18 40/3 40/18
41/4 44/4 56/7 56/11
57/6 60/14 61/7 61/17
63/5 63/10 63/13 69/7
74/8 76/1
**who's [8]** 10/21 15/11
21/25 26/16 27/6 60/1
65/23 73/12

while [3] APM 20/1
37/19
**whom [1]** 17/5
**why [19]** 3/21 4/5 8/5
11/12 12/4 21/19 25/13
26/15 31/20 43/9 44/2
46/24 59/24 62/15
64/11 65/22 72/7 72/21
76/5
**wife [9]** 7/24 54/17
65/3 65/13 70/12 70/14
71/14 74/21 77/7
**wife's [2]** 33/7 74/21
**will [3]** 36/3 54/1 74/11
**William [4]** 1/19 2/2
81/2 81/8
**windows [2]** 56/8
56/16
**wins [1]** 37/23
**wish [1]** 40/2
**wishes [1]** 75/18
**within [3]** 6/15 27/16
28/3
**without [2]** 13/18 75/4
**witness [1]** 63/17
**witnesses [1]** 35/14
**witnessing [1]** 67/12
**woman [1]** 35/7
**won't [3]** 30/3 30/4
40/4
**word [1]** 52/21
**words [13]** 10/4 32/15
33/17 54/12 54/17
54/25 56/5 56/10 57/13
61/17 61/19 64/24 75/2
**worked [2]** 15/24 40/16
**world [3]** 11/16 14/11
16/19
**worry [2]** 30/3 30/4
**would [130]**
**wouldn't [6]** 15/5 34/4
34/6 34/9 50/20 60/5
**wrong [3]** 46/18 60/4
74/11
**wrongdoing [1]** 44/19
**wrongful [2]** 57/23
75/6
**wrote [1]** 10/16

**Y**

**yard [1]** 52/25
**Yeah [1]** 24/3
**year [3]** 23/3 23/10
68/6
**yes [10]** 4/4 4/18 28/23
32/22 36/23 48/4 48/7
53/20 62/1 79/17
**yesterday [1]** 14/5
**yet [2]** 41/5 77/23
**Yorker [14]** 5/16 5/17
6/9 6/9 6/12 6/24 8/9
8/13 15/4 20/1 24/24
27/1 33/25 34/1
**you [107]**
**you'll [3]** 4/2 18/12
39/7
**you're [14]** 24/8 24/21
26/10 26/10 26/11

wons [4] APM 26/12
35/20 51/18 68/5 73/8
73/13 73/19
**you've [5]** 11/13 27/24
31/6 31/14 73/4
**Young [4]** 9/21 14/3
35/16 40/14
**your [91]**
**Your Honor [69]** 3/6
4/4 4/18 5/7 5/20 8/15
9/20 10/3 12/9 21/17
21/22 22/11 22/20
22/25 23/13 24/18
25/20 27/12 27/22
29/15 30/7 30/22 32/12
32/20 35/4 35/25 36/19
36/23 36/25 40/13 42/4
43/11 43/20 44/6 46/12
46/17 46/17 48/13
53/25 54/6 55/13 55/16
55/20 55/22 56/20
58/21 59/12 60/14
60/24 62/21 64/17
65/11 67/17 68/25
69/17 69/21 70/17
71/24 72/23 74/1 74/3
74/5 74/9 75/13 76/16
76/25 77/1 77/25 78/16
**Your Honor's [3]** 49/24
52/13 53/20
**yours [2]** 9/7 54/2
**yourself [3]** 34/10
35/19 35/20
**yourselves [1]** 3/17

**Z**

**Zaremba [3]** 2/2 81/2
81/8
**Zello [3]** 7/7 7/9 8/3
**zero [1]** 64/15