IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 22-cr-15 (APM) |
| : | |
| THOMAS CALDWELL, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Thomas Caldwell's motion to reconsider this Court's denial of his Rule 29 motion to set aside the jury's verdict finding him guilty of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1), should be denied. In addition to the fact that the Court carefully considered this issue over the course of several lengthy hearings and pleadings in 2023, and Caldwell has presented no new case law or facts to suggest that "justice requires" the Court reconsider its ruling, *see United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015), recent case law in this Circuit strongly supports the Court's original conclusion that the government's evidence at trial established a sufficient nexus between Caldwell's obstructive conduct and a foreseeable grand jury proceeding.

I.   Procedural Posture

After the close of the government's case at trial, Caldwell made an oral motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, and the Court deferred briefing and ruling on the motion. In December 2022, Caldwell and his co-defendants filed a joint memorandum of points and authorities in support of their motion. ECF Nos. 432, 435, 439. The government responded, ECF No. 400, and the defense filed a reply, ECF No. 462.

In advance of the omnibus Rule 29 motions hearing and sentencing hearing scheduled for May 24, 2023, the Court scheduled a hearing on May 22, 2023, just for Defendant Caldwell's case, to ask the parties to address, among other issues, the question of whether the government established the requisite nexus between Caldwell's obstructive conduct and a foreseeable grand jury proceeding. ECF No. 590 (citing *United States v. Aguilar*, 515 U.S. 593 (1995), and *United States v. Young*, 916 F.3d 368 (4th Cir. 2019)). The Court heard argument on this issue at the May 22nd hearing. *See* 5/22/23 Tr. at 3-44. At the conclusion of the hearing, the Court vacated Caldwell's sentencing, which had been scheduled for the afternoon of May 24, 2023, and informed the parties that it would accept any supplemental briefing on the specific issues related to the Rule 29 motion that were addressed at the hearing. In June 2023, both parties submitted supplemental pleadings. ECF Nos. 613, 616. The Court then issued its Order denying Caldwell's Rule 29 motion at a hearing on September 19, 2023. Sentencing was then continued several times for unrelated reasons.

On September 9, 2024, Defendant Thomas Caldwell moved this Court to reconsider its Order denying his motion for a judgment of acquittal. On September 19, 2024, the government filed its response. On December 19, 2024, the Court granted the government's request to provide supplemental briefing on the discrete question of whether there was sufficient "evidence to satisfy *Arthur Andersen's* requirement that the Government prove a nexus between the obstructive conduct and a foreseeable particular federal proceeding to establish a conviction" under 18 U.S.C. § 1512(c)(1).  22-cr-152, 12/18/24 Tr. (citing *United States v. Young*, 916 F.3d 368 (4th Cir. 2019) (quotation marks and internal citations omitted)).

2

II.     Legal Argument

The Court should deny Caldwell's motion for reconsideration. At the outset, the government maintains its position that, for this Court to reconsider its thoughtful and well-informed decision denying his Rule 29 motion, Caldwell must establish that "justice requires" reconsideration because, for example, the Court "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." ECF No. 895 (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted)). Caldwell has alleged none of those factors and has therefore failed to meet his burden to demonstrate that reconsideration is warranted. *See Hassanshahi*, 145 F. Supp. 3d at 80.

Rather, Caldwell challenges the Court's factual findings and argues that the Court applied an incorrect standard in assessing that there was sufficient evidence for a rational trier of fact to find a nexus between Caldwell's obstructive conduct and a grand jury proceeding. The government incorporates by reference its arguments in its original response to the motion to reconsider, ECF No. 895. The record well supports the Court's factual findings, and the Court applied the appropriate legal standard.

Additionally, taking the evidence in the light most favorable to the government, there was sufficient evidence from which a rational trier of fact could have found a nexus between Caldwell's destruction of evidence and a grand jury proceeding. The government introduced evidence that, prior to Caldwell's deleting of evidence (much of which occurred on January 14, 2021), Caldwell was aware that individuals were being charged in connection with January 6, and might in the future be charged with crimes (including by indictment) for participating in the attack on the

3

Capitol, and that there was evidence in the media implicating co-conspirators Jessica Watkins and Donovan Crowl in the attack (suggesting that law enforcement would soon be closing in), including but not limited to:

- Caldwell's messages to Crowl, from January 7, 2021, sending him the link to the "News2Share" site and acknowledging that the video captured Watkins and Crowl at the Capitol at the 3:21-minute mark. Gov. Exh. 9079 at 1-7. As Special Agent John Moore testified, that portion of the video showed "Mr. Crowl and Ms. Watkins going up the steps to the Capitol." 11/2/22 Tr. at 6531-32; *see also* Gov. Exh. 1051.1. Importantly, this exchange between Caldwell and Crowl not only referenced video evidence showing Watkins and Crowl at the Capitol, but it also contained the following messages from Caldwell to Crowl that implicated Caldwell, Crowl, and Watkins: (1) Caldwell acknowledged that the News2Share video "starts out with early happenings on our side of the building then moves to yours," Gov. Exh. 9079 at 3, and Caldwell told Crowl, "We stormed the gates of corruption together (although on opposite sides of the building) . . . ," Gov. Exh. 9079 at 9. These were among the items of evidence that Caldwell destroyed a week later on January 14, 2021.
- Stewart Rhodes' January 8, 2021 message warning the "OLD Leadership CHAT," which included Watkins, to destroy incriminating evidence, because individuals involved in the attack on the Capitol might be "accused and indicted." Gov. Ex. 9061 (Msg. 54.S.125.2874).
- The next day, January 9, 2021, Watkins messaged Caldwell complaining that her "face [was] associated with dead cops." Gov. Exh. 9079 at 11. From the

4

conversation that followed, it is clear that they were referencing some type of news article, and that Watkins was afraid that such articles could result in her being charged with crimes. Caldwell responded, "I think you should download and photoshop out the *headline*. Or I will. It's a nice pic otherwise." Gov. Exh. 9079 at 12 (emphasis added). And then Watkins said, "I know, I'm just terrified that I'll be *wanted* after a *title* like that." Gov. Exh. 9079 at 15 (emphasis added). Caldwell assured Watkins, "Fear not. . . . If any shit should ever come down, you were with me all the time and I'll *swear* to it." Gov. Exh. 9079 at 16-18. Watkins declined the offer, noting, "Perjury bad." Gov. Exh. 9079 at 19. These messages confirm (1) Caldwell was aware that there was evidence in the media associating Watkins with the attack on the Capitol, (2) that she was afraid she might be "wanted" for that conduct, and (3) that Caldwell was contemplating the need for someone to provide false testimony at a court proceeding to help Watkins.

- On the night of January 10, 2021, Caldwell sent a link to a Facebook friend to a CNN article, dated January 8, 2021, and the article contained the URL: https://www.cnn.com/2021/01/08/politics/us-capitol-riots-arrest-pelosi-desk/index.html. Gov. Exh. 2001.T.1 at 89. As the link suggests, the article was about arrests in connection with the attack on the Capitol.

- That same night, Caldwell sent this same link to Donovan Crowl, and then sent another message in which he said, "Read down, past the read more part. They are READING OUR EMAILS AND JUST LOCKED UP A GUY WE SAID IN A PERONSAL TEXT MSG HE WANTED TO KILL PELOSI. WATCH WHAT

YOU SAY IN TEXTS." Gov. Exh. 2002.T.61 at 32. Crowl responded with a thumbs-up emoji. *Id.* The next page contains a reproduction of the exhibit:



```
    Author  Donovan Crowl (Facebook: 100003473512615)
      Sent  2021-01-11 09:51:43 UTC
      Body  You: 👍
Attachments sticker (369239263222822)
              Type  image/png
              Size
              URL   https://interncache-frc.fbcdn.net/v/t39.1997-6/3
                    9178562 1505197616293642 54113442810948
                    48512 n.png?ccb=2& nc sid=0572db&efg=eyJ
                    1cmxnZW4iOiJwaHBfdXJsZ2VuX2NsaWVudC9bn
                    RpdHkvc3RpY2tlcnMifQ%3D%3D& nc ad=z-m&
                    nc cid=0& nc ht=interncache-frc&oh=44da49
                    01d7bd0c74a95e4935888cbd5b&oe=602B688B
```



```
          Photo ID  369239263222822
```

These messages show that Caldwell and Crowl were aware that law enforcement had begun arresting people in connection with the January 6 attack and that evidence from social media—such as messages—could be used as evidence to support such arrests.

- The government introduced evidence that a federal grand jury in the District of Columbia was impaneled and sworn in on January 8, 2021, to investigate the events

that occurred on January 6th of 2021. Gov. Exh. 3012 (stipulation introduced during the government's case in chief).

- On January 11, 2021, Watkins messaged Crowl to complain that "the video you took was on the news as is." Gov. Exh. 9079 at 23. Given the timing and context, it seems likely that Watkins was referencing the video Crowl took inside the Rotunda in which he said he "took over the Capitol, overran the Capitol." *See* Gov. Exhs. 200.V.1, 1504 (at 5:51).

- On January 14, 2021, The New Yorker published an article that identified Watkins and Crowl as having been in the United States Capitol on January 6th. 10/4/22 Tr. at 1626 (testimony during government's case in chief); Gov. Exh. 9337 (rebuttal exhibit).

- Also on January 14, 2021, at 9:10 a.m., Watkins messaged Holden Haney, "The Washington Post re-posted the Guardian's story about Zello." Gov. Exh. 9079 at 40. Journalist Micah Loewinger testified at trial that he published an article in The Guardian on January 13, 2021, regarding his recording of the "Stop the Steal J6" Zello channel, which included incriminating statements by Watkins en route to and while inside the Capitol. *See, e.g.*, 10/17/22 Tr. at 3775-79; Gov. Exhs. 1073, 5116.

- A little over three hours later, on January 14, 2021, at 12:29 p.m., Crowl messaged Caldwell, "We will be leaving here at 1430 That will put us at your place between 2030 and 2100."

- Caldwell offered Crowl that he and Watkins could "Bring full battle rattle to stash here if you want." Gov. Exh. 9079 at 45. It is difficult to imagine from whom Crowl and Watkins would have needed to hide their battle rattle other than law

enforcement. The media were certainly not going to be able to obtain search warrants to enter Watkins' and Crowl's homes to find this "battle rattle." Similarly, before they departed Ohio, Watkins warned Crowl to "leave the phone," and Caldwell also cautioned Crowl: "Don't forget to double back an exit or two at least twice to make sure not followed." Gov. Exh. 9079 at 46. These messages could have reasonably been inferred by the jury to have suggested efforts to evade law enforcement.

- Finally, the Facebook records introduced as Government Exhibits 2001.T.1 and 2002.T.64, along with the testimony of the Facebook custodian of records (*see* testimony of Tyler Harmon, 11/1/22 Tr. at 6178-6223), show that the bulk of Facebook records deleted by Caldwell were deleted on the evening of January 14, 2021, the same day the New Yorker article was published and Watkins and Crowl fled from Ohio to Caldwell's residence in Virginia.

Drawing all reasonable inferences from this evidence, a reasonable jury could have concluded that Caldwell's decision to delete this evidence from Facebook was related to a foreseeable court proceeding that he anticipated would result from the criminal charges that he and his co-conspirators had already discussed were being brought against some rioters and might soon be brought against rioters like themselves.

Recent case law from this Circuit affirmed obstruction/tampering convictions in other January 6-related cases with similar facts. In the case of *United States v. Riley*, Riley challenged his Section 1512(c)(1) conviction on the ground that "there was insufficient evidence of either a foreseeable official proceeding or a nexus between that proceeding and his deletion of Facebook messages." 115 F.4th 604, 612 (D.C. Cir. 2025). In September 2024, the U.S. Court of Appeals

9

for the District of Columbia Circuit held "that the evidence, considered in the light most favorable to the government, readily supports the jury verdict." *Riley*, 115 F.4th at 612-614. That evidence showed that, the day after the attack on the Capitol, Riley, a veteran U.S. Capitol Police officer, sent a message to one of the rioters (who was a friend of his) that "everyone who was in the [Capitol] building is going to be charged" and urged that friend/rioter to "take down" a Facebook post acknowledging that he had been inside the building. *Id.* at 607-608. When the friend was arrested and told Riley that "[t]he FBI was very curious that I had been speaking to you," Riley deleted from his Facebook account all of his direct messages with that friend. *Id.* The jury convicted Riley of one count of in violation of Section 1512(c)(1) based on Riley's deletions of his own Facebook messages. *Id.* The Circuit found the evidence to be sufficient for a jury to find that the requisite "official proceeding" was foreseeable to Riley.

Similarly, here, on January 10, 2021, Caldwell, a retired lieutenant commander in the U.S. Navy, 10/4/22 Tr. at 1649, who also had worked for the FBI doing background checks, 11/15/22 Tr. at 8769, sent Crowl a link to a news article about law enforcement arresting Capitol rioters. He warned Crowl: "They are READING OUR EMAILS AND JUST LOCKED UP A GUY WE SAID IN A PERONSAL TEXT MSG HE WANTED TO KILL PELOSI. WATCH WHAT YOU SAY IN TEXTS." Gov. Exh. 2002.T.61 at 32. In the days that followed, Caldwell, Watkins, and Crowl discussed photographs and videos circulating in news articles that captured Crowl and Watkins' participation in the attack. When they learned on January 14, 2021, that the New Yorker article explicitly identified Watkins and Crowl by name, Watkins and Crowl fled to Virginia to hide out at Caldwell's residence, and Caldwell deleted from his Facebook account evidence that incriminated himself, Watkins, and Crowl. This evidence clearly provided a reasonable basis to infer that Caldwell deleted the evidence from his Facebook account to obstruct law enforcement.

This evidence also provided a reasonable basis for the jury to find a nexus between the obstructive conduct and a foreseeable grand jury proceeding. "That a grand jury had not been commenced or specifically discussed with [a defendant] at the time of the destruction does not render a grand jury proceeding unforeseeable. Indeed, to conclude otherwise would undermine the statute's provision that 'an official proceeding need not be pending or about to be instituted at the time of the offense,' 18 U.S.C. § 1512(f)(1)." *United States v. Binday*, 804 F.3d 558, 591 (2d Cir. 2015). Similarly, "[T]he existence of a nexus between [a defendant's obstructive] action and the proceeding does not depend on the defendant's knowledge. . . . Rather, the existence of a nexus, for obstruction-of-justice purposes, is determined by whether the defendant's acts have a relationship in time, causation, or logic with the judicial proceedings." *United States v. Martinez*, 862 F.3d 223, 237 (2d Cir. 2017), *vacated on other grounds by Rodriguez v. United States*, ––– U.S. ––––, 139 S. Ct. 2772, 204 L.Ed.2d 1154 (2019) (internal citations and quotation marks omitted). To distinguish between "obstruction of an official proceeding with obstruction of a mere criminal investigation unconnected with an official proceeding," courts should "look for specific evidence in the record, beyond mere speculation, that a defendant reasonably foresaw an 'official proceeding' when he committed obstructive acts." *United States v. Wellman*, 26 F.4th 339, 348 (6th Cir. 2022).

In this case, there was specific evidence introduced at trial, beyond mere speculation, that Caldwell reasonably foresaw an official proceeding at the time he destroyed evidence. As evidenced by his forwarding and commenting on the CNN article from January 8, Caldwell was aware of the massive law enforcement investigation into the attack on the Capitol and that arrests had been made, and, as a result, that court cases—official proceedings—had begun. Caldwell's message to Crowl in which he forwarded the CNN article shows that Caldwell was aware that

evidence on social media was being used to support the arrest of individuals who participated in the January 6 attack. This is direct evidence—not mere speculation—from which a reasonable jury could have concluded that Caldwell's decision to delete evidence of messages and images incriminating himself and Watkins and Crowl was motivated by a desire to avoid having those messages used to support the arrest (and subsequent court proceedings) of himself, Watkins, or Crowl.

Additionally, on January 9, five days before Caldwell deleted the evidence from his Facebook account, Watkins conveyed to Caldwell her fear that she would be "wanted" for having her face associated with "dead cops." Gov. Exh. 9079 at 11. Caldwell then explicitly referenced testifying in court when he told Watkins that if "any shit should ever come down," he would "swear" that she was with him the whole time on January 6. Gov. Exh. 9079 at 16-18. Watkins' response of "Perjury bad," Gov. Exh. 9079 at 19, suggests she also understood Caldwell to be referencing lying under oath—at a court proceeding. This is additional evidence from which the jury could have concluded, without speculating, that court proceedings were foreseeable to Caldwell at the time he destroyed evidence, and that there was a nexus between those foreseeable court proceedings and Caldwell's decision to delete evidence from his Facebook account.

In October 2024, the Honorable Timothy J. Kelly of this Court found similar evidence in another January 6 case to be sufficient to sustain a Section 1512(c)(1) violation in the case of *United States v. William Pepe*, No. 21-cr-52-TJK. In that case, the defendant deleted incriminating messages and photographs from his cell phone prior to his arrest on January 12, 2021—even earlier than Defendant Caldwell. 10/23/14 Tr. at 43-67 (transcript attached here as Exhibit 1). There was no evidence that Pepe was aware of a grand jury proceeding or that he had been approached by law enforcement prior to deleting evidence. Rather, the nexus evidence in *Pepe* was: (1)

12

immediately upon returning to his hotel on the evening of January 6, the defendant had a conversation with someone who told him that that he (Pepe) was in the newspapers for "breaching the Capitol," *id.* at 59; (2) following that conversation, Pepe said he was "going to lay low a week or two" because he feared he was "going to go to jail or get doxed," *id.*; (3) the next day, Pepe told his father he was "a wanted man" and sent a message stating that there was a "$1,000 reward for me. Unlawful trespassing. Class A," *id.* at 59-60; and (4) a short while later, the defendant circulated a URL link to a New York Post article that prominently featured his picture in the Capitol building and that mentioned "suspects in U.S. Capitol siege," describing them as "persons of interest," *id.* at 60.

In finding this evidence sufficient to establish that a grand jury investigation was reasonably foreseeable to the defendant, Judge Kelly explained, "the defendant had the possibility that he might go to jail clearly on his mind. He repeatedly showed his awareness that he could face charges, and as a result, criminal prosecution. He referenced he was a wanted man and a person of interest in a large-scale law enforcement investigation of people who had breached the Capitol. His prosecution in a court was thus foreseeable." *Id.* at 61.

So too, here, was "prosecution in a court foreseeable" where Caldwell and his confederates clearly had the possibility arrest and prosecution on their minds at the time they circled up together at Caldwell's farm in Virginia and Caldwell deleted evidence from his Facebook account. Caldwell is thus similarly situated to the defendant in *Binday*, who "conspired to destroy documents relevant to a massive fraud once [he and his accomplice] learned that the fraud had become the subject of an FBI investigation." 804 F.3d at 591. Caldwell made his decision to destroy evidence after he had learned that the FBI had started arresting people in connection with the investigation and that Watkins and Crowl had been publicly identified as having participated in the attack. Caldwell also

13

made this decision to destroy evidence on the day that Watkins and Crowl fled to his house, a day he also told Crowl that he and Watkins could hide evidence of the crimes—their "battle rattle"—at his house and warned Crowl to take evasive measures to make sure he wasn't being followed. Given this evidence, and all the reasonable inferences that could be drawn from it, this Court was correct to find that a reasonable jury could have found a sufficient nexus between Caldwell's destruction of evidence and a grand jury proceeding, and the interests of justice do not require the Court to re-consider its ruling.

Finally, to the extent that the Court has any lingering questions about how Caldwell's case can be distinguished from the situations in *Aquilar* and *Young,* where the Supreme Court and Fourth Circuit respectively found insufficient evidence of a nexus, the government reiterates the arguments it made in its June 2023 supplement, ECF No. 613, about how the destruction of evidence is inherently more foreseeably damaging to a grand jury investigation than lying to a federal agent. While lies to a federal agent may not necessarily be repeated to a grand jury, the destruction of evidence necessarily renders that evidence unavailable to the grand jury. *See United States v. Johnson*, 655 F.3d 594, 606 (7th Cir. 2011) ("[The government] simply needed to provide enough evidence that [defendant] foresaw that the contraband might be used in an official proceeding and destroyed it with the intent of preventing that use. But why else would [defendant] aggressively destroy contraband while authorities were attempting to exercise a search warrant, other than to prevent the discovery of that evidence? And why would she want to prevent that discovery, if not to minimize or eliminate the evidence that could be used against her in a criminal prosecution?"); *United States v. Matthews*, 505 F.3d 698, 710-11 (7th Cir. 2007) (holding that evidence of a defendant's awareness that judicial proceedings would be more likely if he did not dispose of certain evidence was sufficient to support a 1512(c)(1) conviction).

III.    Conclusion

The defendant had a high burden when he made his initial Rule 29 motion, and he faces an even higher burden now: he needs to show that this Court made a gross error that undermined the interests of justice when the Court concluded that, taking all the evidence, and all reasonable inferences from that evidence, in the light most favorable to the government, a reasonable jury could find a sufficient nexus between Caldwell's destruction of evidence and a grand jury proceeding. He simply has not met that burden. There was more than sufficient evidence in the record, viewing that evidence in the light most favorable to the government, for a reasonable jury to find Caldwell destroyed evidence to frustrate the future court proceedings that he and his confederates feared would follow the arrests that had already begun—and that Caldwell knew had begun and that Caldwell knew had been based at least in part on incriminating digital evidence—in the law enforcement investigation into the attack on the Capitol.

WHEREFORE, Defendant Caldwell's motion should be denied.

                              Respectfully submitted,

                              MATTHEW M. GRAVES
                              United States Attorney
                              DC Bar No. 481052

By:    /s/_____
       Kathryn L. Rakoczy
       D.C. Bar No. 994559
       Assistant United States Attorney
       U.S. Attorney's Office for the District of Columbia
       601 D Street NW
       Washington, D.C. 20530